# Exhibit 1

EXHIBIT 1
10

```
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5   MARCELLUS MCMILLIAN,            )

 6                    Plaintiff,    )

 7        VS.                       )  NO. 2:19-CV-02121

 8   GOLDEN STATE FC LLC, et al.,   )     MWF (JCx)

 9                    Defendant.    )

10   _____)

11

12

13   DEPOSITION OF:

14              MARCELLUS MCMILLIAN

15              THURSDAY, NOVEMBER 7, 2019

16              10:27 A.M.

17

18

19

20   REPORTED BY:

21              Sari M. Knudsen

22              CSR No. 13109

23

24   JOB NO . 3604285

25   PAGES 1 - 191
```

Page 1

```
 1              Deposition of MARCELLUS MCMILLIAN, taken on

 2              behalf of the DEFENDANT, at 1888 Century

 3              Park East, Suite 1700, Los Angeles,

 4              California, on THURSDAY, NOVEMBER 7, 2019,

 5              before Sari M. Knudsen, CSR No. 13109.

 6

 7

 8    APPEARANCES OF COUNSEL:

 9

10    FOR THE PLAINTIFF:

11              RODRIGUEZ & TRAN

12              BY:  GRISELDA RODRIGUEZ, ESQ.

13              631 South Olive Street, Suite 820

14              Los Angeles, California  90014

15              213-325-3024

16

17    FOR THE DEFENDANT:

18              PERKINS COIE LLP

19              BY:  ANDREW MORIARTY, ESQ.

20              1201 Third Avenue, Suite 4900

21              Seattle, Washington  98101

22              206-359-8629

23

24    ALSO PRESENT:

25              SOSEH KEVORKIAN, VIDEOGRAPHER

                                              Page  2
```

| | | |
|---|---|---|
| 1 | and all present please identify themselves for the | 10:29:08 |
| 2 | record. | 10:29:08 |
| 3 | MR. MORIARTY:  Andrew Moriarty of Perkins Coie | 10:29:11 |
| 4 | representing defendants. | 10:29:13 |
| 5 | MS. RODRIGUEZ:  Griselda Rodriguez representing | 10:29:14 |
| 6 | plaintiff. | 10:29:15 |
| 7 | THE VIDEOGRAPHER:  Thank you. | 10:29:17 |
| 8 | | 10:29:17 |
| 9 | MARCELLUS MCMILLIAN, | 10:29:17 |
| 10 | having been first duly sworn, was | 10:29:17 |
| 11 | examined and testified as follows: | 10:29:31 |
| 12 | | 10:29:31 |
| 13 | EXAMINATION | 10:29:31 |
| 14 | | 10:29:31 |
| 15 | BY MR. MORIARTY: | 10:29:31 |
| 16 | Q    Would you state and spell your full name. | 10:29:34 |
| 17 | A    Marcellus, M-A-R-C-E-L-L-U-S, | 10:29:38 |
| 18 | M-C-M-I-L-L-I-A-N. | 10:29:42 |
| 19 | Q    Mr. McMillian, have you ever been deposed | 10:29:44 |
| 20 | before? | 10:29:45 |
| 21 | A    No. | 10:29:45 |
| 22 | Q    You were just placed under oath.  Do you | 10:29:47 |
| 23 | understand the significance of being placed under | 10:29:50 |
| 24 | oath? | 10:29:51 |
| 25 | A    Yes. | 10:29:51 |

Page 11

| | | | |
|---|---|---|---|
| 1 | | now? | 10:35:48 |
| 2 | A | Ontario. | 10:35:50 |
| 3 | Q | And where is Blue Fox Drive? | 10:35:53 |
| 4 | A | Ontario. | 10:35:59 |
| 5 | Q | Are you renting a room from somebody you | 10:36:00 |
| 6 | | know? | 10:36:01 |
| 7 | A | No. | 10:36:02 |
| 8 | Q | Just a Craig's List type thing? | 10:36:04 |
| 9 | A | Well, it was a referral from a friend. | 10:36:11 |
| 10 | Q | When did you start -- let's talk about | 10:36:14 |
| 11 | | terminology real quick.  One of the defendants in | 10:36:16 |
| 12 | | this case is Golden State FC LLC? | 10:36:19 |
| 13 | A | Uh-huh. | 10:36:19 |
| 14 | Q | Which was probably your employer at the | 10:36:22 |
| 15 | | time that you worked in ONT3? | 10:36:26 |
| 16 | A | Uh-huh. | 10:36:27 |
| 17 | Q | But I'm going to call it Amazon.  Okay? | 10:36:30 |
| 18 | A | Right. | 10:36:30 |
| 19 | Q | Because it's since merged with Amazon and | 10:36:33 |
| 20 | | you probably think of it as Amazon.  Is that right? | 10:36:36 |
| 21 | A | Yes.  Amazon. | 10:36:36 |
| 22 | Q | Okay.  When did you start working with | 10:36:39 |
| 23 | | Amazon? | 10:36:42 |
| 24 | A | Well, I am -- I don't remember the exact | 10:36:46 |
| 25 | | year.  I want to say 2017.  Maybe January. | 10:36:54 |

Page 17

```
 1    jobs.                                              10:37:47

 2        Q    What was your job at Amazon?             10:37:52

 3        MS. RODRIGUEZ:   Objection.   Vague as to time.  10:37:56

 4    You can go ahead and answer if you know.           10:37:58

 5        THE WITNESS:   What was my -- what was my job?  10:38:00

 6    BY MR. MORIARTY:                                   10:38:00

 7        Q    Yes.                                       10:38:00

 8        A    I don't know what my official title was.  I  10:38:03

 9    just know I worked on -- in the Make On Demand      10:38:10

10    Department.                                         10:38:10

11        Q    And so when I say MOD 3 or MOD, that means  10:38:15

12    "Make On Demand."   Right?                          10:38:17

13        A    That is correct.                           10:38:17

14        Q    And ONT 3 is the facility at which you     10:38:21

15    worked?                                             10:38:22

16        A    ONT 2 was the facility I worked.           10:38:24

17        Q    Got it.   Okay.                            10:38:26

18             And that's in San Bernardino?             10:38:32

19        A    Yes.                                        10:38:32

20        Q    All right.   So when you started working   10:38:34

21    with Amazon, you were working part time on the      10:38:40

22    weekends.   Is that right?                          10:38:43

23        A    Yes.                                        10:38:43

24        Q    So two full shifts each weekend or were    10:38:48

25    they short shifts?                                  10:38:54

                                                   Page 19
```

| | | |
|---|---|---|
| 1 | A    They were just -- I think I was working | 10:38:55 |
| 2 | two -- I guess it would be considered two full | 10:38:59 |
| 3 | shifts. | 10:38:59 |
| 4 | Q    Ten-hour shifts? | 10:39:04 |
| 5 | A    Well, once every -- I think with the lunch | 10:39:07 |
| 6 | and all that, it ended up being like 12 hours. | 10:39:10 |
| 7 | Yeah. | 10:39:11 |
| 8 | Q    All right.  And you had -- you were | 10:39:14 |
| 9 | involved in an automobile accident in early August, | 10:39:16 |
| 10 | 2017.  Right? | 10:39:19 |
| 11 | A    That is correct. | 10:39:19 |
| 12 | Q    Between the time that you started working | 10:39:21 |
| 13 | at Amazon and the time that you were involved in the | 10:39:24 |
| 14 | automobile accident, did anything happen at work | 10:39:28 |
| 15 | that concerned you? | 10:39:30 |
| 16 | A    At Amazon? | 10:39:32 |
| 17 | Q    Yes. | 10:39:34 |
| 18 | A    As relates to what?  What would -- I don't | 10:39:37 |
| 19 | understand the question. | 10:39:40 |
| 20 | Q    Did you have -- did you complain about | 10:39:42 |
| 21 | anything relating to your employment? | 10:39:46 |
| 22 | A    Not to my recollection, no, sir. | 10:39:49 |
| 23 | Q    Were things seemingly going pretty well for | 10:39:52 |
| 24 | you at Amazon? | 10:39:53 |
| 25 | A    You are saying from the beginning? | 10:39:55 |

Page 20

```
 1        THE WITNESS:  You -- happy as in just -- I mean,    10:47:58

 2   how would you define --                                  10:48:01

 3   BY MR. MORIARTY:                                         10:48:01

 4      Q    Well, earlier you said that you were not         10:48:04

 5   head over heels happy working at Amazon?                 10:48:06

 6      A    Right.                                           10:48:07

 7      Q    Okay.  So now I'm asking were you                10:48:09

 8   affirmatively unhappy?                                   10:48:12

 9      MS. RODRIGUEZ:  Same objections.                      10:48:12

10      THE WITNESS:  I think gradually, I became more        10:48:14

11   and more and more unhappy.  So that's how I would        10:48:18

12   answer that.                                             10:48:20

13   BY MR. MORIARTY:                                         10:48:20

14      Q    Prior to your automobile accident, had you       10:48:29

15   thought at all about how long you wanted to work at      10:48:33

16   Amazon?                                                  10:48:37

17      A    I'm sure I probably thought about it.            10:48:39

18      Q    Were you thinking that working at Amazon         10:48:41

19   was something that you were going to make a career       10:48:42

20   out of?                                                  10:48:46

21      A    I hadn't really given it any thought.  Not       10:48:48

22   in that -- in that way.                                  10:48:55

23      Q    Okay.  In early August of 2017, you were        10:48:59

24   involved in an automobile accident.  Is that right?     10:49:03

25      A    That is correct.                                 10:49:07
```

Page 27

```
 1              Do you see that?                      10:58:53

 2      A    Uh-huh.                                  10:58:53

 3      Q    Yes?                                     10:58:55

 4      A    Yes.                                     10:58:57

 5      Q    And is that the first time you saw       10:58:59

 6  Dr. Ramirez?                                      10:59:00

 7      A    That I can recall at this point.  Uh-huh. 10:59:04

 8      Q    And then this reflects that you saw      10:59:09

 9  Dr. Ramirez all the way up through July 17, 2018. 10:59:14

10  Does that sound right to you?                     10:59:17

11      A    It sounds correct to the best of my      10:59:19

12  recollection.                                     10:59:21

13      Q    Do you have any reason to doubt the      10:59:23

14  accuracy of this record?                          10:59:27

15      A    Not that I'm aware of.  I mean, I don't -- 10:59:30

16  I didn't -- no, sir.  I don't -- I didn't keep the 10:59:34

17  records or -- you know...                         11:00:03

18              Thank you.                            11:00:04

19      Q    Mr. McMillian, you've been handed Exhibit 2 11:00:07

20  to your deposition.  Do you recognize Exhibit 2 as 11:00:09

21  an e-mail that you sent?                          11:00:16

22      A    It looks like an e-mail that I sent, yes, 11:00:18

23  sir.                                              11:00:19

24              (Whereupon Defendants' Exhibit 2      11:00:19

25              was marked for identification)        11:00:20
```

Page 36

| | | |
|---|---|---|
| 1 | still when I spoke with them.  So they might have | 11:01:25 |
| 2 | given me a general kind of process.  So yeah.  They | 11:01:29 |
| 3 | probably gave me something general and I probably | 11:01:31 |
| 4 | had to follow up, you know, with them.  So yeah. | 11:01:34 |
| 5 | Q    Okay.  In any event, you sent this e-mail | 11:01:37 |
| 6 | to accommodations on August 11, 2017.  Right? | 11:01:44 |
| 7 | A    It says Friday, August 11, 2017.  Yes. | 11:01:47 |
| 8 | Q    Okay.  And you were sending along what is | 11:01:53 |
| 9 | called a disability statement from Dr. Ramirez. | 11:01:55 |
| 10 | Right? | 11:01:58 |
| 11 | A    Yes, sir. | 11:01:58 |
| 12 | Q    Okay.  You sent Exhibit 2 from an e-mail | 11:02:03 |
| 13 | address MarcellusMcMillian@gmail.com.  Right? | 11:02:11 |
| 14 | A    Yes, sir. | 11:02:11 |
| 15 | Q    How long have you had that e-mail address? | 11:02:13 |
| 16 | A    I have no idea. | 11:02:15 |
| 17 | Q    Do you use it for both business and | 11:02:17 |
| 18 | personal e-mail? | 11:02:21 |
| 19 | A    I would say maybe so, yes. | 11:02:23 |
| 20 | Q    Do you have any other e-mail addresses? | 11:02:31 |
| 21 | A    I've got marcellusmcmillian@msn.com.  I | 11:02:37 |
| 22 | think I've had that a long time.  So that's | 11:02:40 |
| 23 | primarily my e-mail address.  Those two. | 11:02:43 |
| 24 | Q    Do you have any others? | 11:02:45 |
| 25 | A    Not that I can recall. | 11:02:53 |

Page 38

```
 1        Q     All right.  If we look at the note that was    11:10:04

 2   attached to your August 11, 2017 e-mail, it says          11:10:11

 3   "total temporary disability from August 4, 2017 to        11:10:16

 4   September 1, 2017."                                        11:10:18

 5           Do you see that?                                   11:10:20

 6        A     Uh-huh.                                         11:10:21

 7        Q     Yes?                                            11:10:22

 8        A     Yes.                                            11:10:22

 9        Q     And did Dr. Ramirez ever talk to you about     11:10:29

10   what he meant by "total temporary disability"?            11:10:36

11        A     Yeah.  I guess it would just simply mean        11:10:39

12   that I was totally temporarily disabled.                  11:10:44

13        Q     Totally temporarily unable to work?            11:10:47

14        A     Correct.                                       11:10:48

15        Q     And at the time that this note was written,    11:10:51

16   August 10, 2017, did you feel that you were unable        11:10:55

17   to work at all?                                           11:10:59

18           MS. RODRIGUEZ:  I'm going to object that it       11:11:00

19   calls for speculation.  It's argumentative.               11:11:04

20           THE WITNESS:  Yeah.  I was in pain.  So I would   11:11:07

21   probably say I probably wasn't available for work.        11:11:10

22   BY MR. MORIARTY:                                          11:11:10

23        Q     Do you -- do you recall disagreeing with       11:11:15

24   Dr. Ramirez about whether you were temporarily            11:11:17

25   totally disabled?                                         11:11:20
```

Page 45

| | | |
|---|---|---|
| 1 | MS. RODRIGUEZ:   Same objections. | 11:11:20 |
| 2 | THE WITNESS:   I don't recall.   I don't think | 11:11:21 |
| 3 | I -- I don't know.   I don't think I ever disagreed | 11:11:25 |
| 4 | with the doctor. | 11:11:27 |
| 5 | BY MR. MORIARTY: | 11:11:27 |
| 6 | Q    I mean, this is -- this is right after your | 11:11:30 |
| 7 | accident.   Right? | 11:11:32 |
| 8 | A    I believe so, yes, sir. | 11:11:36 |
| 9 | Q    And I mean the note says "pain and | 11:11:38 |
| 10 | medication he's undertaking due to the car accident | 11:11:41 |
| 11 | he was involved in August 3, 2017." | 11:11:44 |
| 12 | Do you see that? | 11:11:44 |
| 13 | A    Correct, uh-huh. | 11:11:45 |
| 14 | Q    Okay.   So the day after your accident, were | 11:11:48 |
| 15 | you in pain? | 11:11:50 |
| 16 | A    Yeah. | 11:11:51 |
| 17 | Q    And the week after your accident, were you | 11:11:52 |
| 18 | in pain? | 11:11:53 |
| 19 | A    Oh, yeah. | 11:11:54 |
| 20 | Q    You really couldn't work at that time. | 11:11:58 |
| 21 | Right? | 11:11:58 |
| 22 | MS. RODRIGUEZ:   Objection.   It's argumentative. | 11:12:02 |
| 23 | THE WITNESS:   I don't know if I could say I | 11:12:05 |
| 24 | couldn't work.   I don't really know.   I can't go -- | 11:12:08 |
| 25 | I know I was in a lot of pain.   So that I can | 11:12:12 |

Page 46

```
 1       Q    Okay.  Well, so let's look at page 2 of        11:16:26

 2   Exhibit 3.  So on page 2 at the top, it says            11:16:32

 3            "Amazon reviewed your eligibility for          11:16:35

 4        other types of leaves including FMLA," and         11:16:38

 5   it says                                                 11:16:39

 6            "The leave will not be designated as           11:16:42

 7        FMLA because you have not worked 1,250             11:16:44

 8        hours in the previous 12 months."                  11:16:46

 9        Do you see that?                                   11:16:47

10       A    Yes, I do.                                     11:16:48

11       Q    Is that what you were talking about when       11:16:49

12   you --                                                  11:16:49

13       A    No.  I got another letter that was -- that     11:16:52

14   just said "denied."  So I didn't get this first.  I     11:16:57

15   got something else that told me "denied."  That's       11:16:59

16   why I said I probably called.                           11:17:00

17       Q    Okay.                                          11:17:01

18       A    Because I -- I got a letter saying I was       11:17:03

19   denied.                                                 11:17:04

20       Q    Okay.                                          11:17:05

21            This leave of absence that is approved as      11:17:13

22   reflected in Exhibit 3, that was a leave of absence     11:17:16

23   that you had requested.  Right?                         11:17:21

24       A    Yeah.  I'm pretty sure it is.                  11:17:23

25       Q    Okay.  You didn't tell Amazon that you         11:17:28
```

                                                         Page 50

| | | |
|---|---|---|
| 1 | Q    All right.  And it was on November 2 that | 11:26:23 |
| 2 | Dr. Ramirez recommended that you go back out on a | 11:26:26 |
| 3 | leave of absence.  Right? | 11:26:27 |
| 4 | A    Correct. | 11:26:31 |
| 5 | Q    Do you recall why that -- why Dr. Ramirez | 11:26:34 |
| 6 | made that recommendation? | 11:26:36 |
| 7 | A    Probably because I was in an extreme amount | 11:26:40 |
| 8 | of pain. | 11:26:41 |
| 9 | Q    All right. | 11:26:59 |
| 10 | A    Thank you. | 11:27:00 |
| 11 | (Whereupon Defendants' Exhibit 4 | 11:27:00 |
| 12 | was marked for identification) | 11:27:01 |
| 13 | BY MR. MORIARTY: | 11:27:01 |
| 14 | Q    Looking at Exhibit 4, Mr. McMillian, do you | 11:27:08 |
| 15 | recognize this as an e-mail that you sent on or | 11:27:11 |
| 16 | about November -- well, on November 3, 2017? | 11:27:14 |
| 17 | A    Yes, sir. | 11:27:15 |
| 18 | Q    And you sent it to that accommodations | 11:27:17 |
| 19 | address again.  Right? | 11:27:20 |
| 20 | A    Correct. | 11:27:25 |
| 21 | Q    And you attached a disability statement | 11:27:26 |
| 22 | from Dr. Ramirez.  Right? | 11:27:29 |
| 23 | A    Yes, sir. | 11:27:29 |
| 24 | Q    And that stated that you were totally | 11:27:32 |
| 25 | temporarily disabled from November 5 to November 19, | 11:27:37 |

Page 57

| | | |
|---|---|---|
| 1 | 2017.  Right? | 11:27:40 |
| 2 | A     Yes, sir. | 11:27:42 |
| 3 | Q     And the note also says that you were | 11:27:45 |
| 4 | estimated to return to work full duty on | 11:27:47 |
| 5 | November 20, 2017.  Right? | 11:27:49 |
| 6 | A     Right. | 11:27:50 |
| 7 | Q     All right.  And like we talked about with | 11:27:52 |
| 8 | the other disability statement, you didn't disagree | 11:27:56 |
| 9 | with Dr. Ramirez that you were totally temporarily | 11:27:59 |
| 10 | disabled.  Right? | 11:28:00 |
| 11 | A     I didn't disagree. | 11:28:02 |
| 12 | Q     All right.  Did you -- did you think as of | 11:28:05 |
| 13 | November 3, that you would be able to return to work | 11:28:09 |
| 14 | full duty on November 20? | 11:28:16 |
| 15 | MS. RODRIGUEZ:  I'm going to object.  That calls | 11:28:17 |
| 16 | for speculation.  It's argumentative.  And calls for | 11:28:20 |
| 17 | an expert opinion. | 11:28:22 |
| 18 | THE WITNESS:  So you are asking me on November | 11:28:25 |
| 19 | the 3rd, did I think I was going to be able to go | 11:28:28 |
| 20 | back to work? | 11:28:30 |
| 21 | BY MR. MORIARTY: | 11:28:30 |
| 22 | Q     Right.  So when you sent the e-mail to | 11:28:33 |
| 23 | accommodations, it was November 3.  Right?  When you | 11:28:35 |
| 24 | sent it? | 11:28:36 |
| 25 | A     Uh-huh. | 11:28:37 |

Page 58

```
 1      Q    And as of November 3, 2017, did you think     11:28:39

 2   that you would be able to return to work full duty    11:28:42

 3   November 20, 2017?                                     11:28:44

 4      MS. RODRIGUEZ:  Same objection.                     11:28:46

 5      THE WITNESS:  Whatever is listed here.  We kind     11:28:52

 6   of took it on a, you know, meeting-by-meeting basis    11:28:55

 7   and pain level, et cetera.  So I mean, I didn't make   11:28:59

 8   estimations as far as the future.  So I didn't         11:29:03

 9   really guess.                                          11:29:06

10   BY MR. MORIARTY:                                       11:29:06

11      Q    Would it be fair to say that -- that this     11:29:09

12   return to work date of November 20, 2017 -- that was   11:29:13

13   a target return-to-work date, but you weren't sure     11:29:15

14   whether you were going to be able to return that       11:29:17

15   day?                                                   11:29:18

16      A    I would say that probably would be more       11:29:20

17   accurate of a statement.                               11:29:23

18      Q    Okay.  So as we've looked at these two        11:29:30

19   disability statements, I've asked you about total      11:29:34

20   temporary disability and the return-to-work date.      11:29:38

21   There are lots of these disability statements.         11:29:40

22      A    Uh-huh.                                        11:29:42

23      Q    I'm not going to ask you those same           11:29:44

24   questions over and over again.  So I'm just going to   11:29:46

25   ask you once.  Every time Dr. Ramirez said that you    11:29:50
```

Page 59

| | | |
|---|---|---|
| 1 | were totally temporarily disabled, you agreed with | 11:29:52 |
| 2 | him.  Right? | 11:29:53 |
| 3 |     A     Yes. | 11:29:54 |
| 4 |     Q     And the return-to-work dates that | 11:29:56 |
| 5 | Dr. Ramirez put as estimated return-to-work dates, | 11:29:59 |
| 6 | those were target dates that might or might not work | 11:30:02 |
| 7 | out.  Right? | 11:30:03 |
| 8 |     A     Target dates, yes. | 11:30:05 |
| 9 |     Q     Okay.  All right.  So we can save some time | 11:30:10 |
| 10 | then by not going through all of -- not asking those | 11:30:14 |
| 11 | same questions as to all of the notes. | 11:30:16 |
| 12 |         Let's take five. | 11:30:29 |
| 13 |     MS. RODRIGUEZ:  Sure. | 11:30:31 |
| 14 |     THE VIDEOGRAPHER:  We are going off the record | 11:30:33 |
| 15 | at 11:30 A.M.  This is the end of media one. | 11:30:36 |
| 16 |         (Whereupon a recess was taken) | 11:36:50 |
| 17 |     THE VIDEOGRAPHER:  We are on the record at 11:36 | 11:36:52 |
| 18 | A.M.  This is the beginning of media two in the | 11:36:55 |
| 19 | deposition of Marcellus McMillian. | 11:36:59 |
| 20 | BY MR. MORIARTY: | 11:36:59 |
| 21 |     Q     Mr. McMillian, we just took a break.  You | 11:37:02 |
| 22 | understand that you are still under oath? | 11:37:06 |
| 23 |     A     Yes, sir. | 11:37:06 |
| 24 |     Q     Looking at the disability statement that is | 11:37:08 |
| 25 | page 2 of Exhibit 4, did Dr. Ramirez give you these | 11:37:15 |

Page 60

```
 1      A    Uh-huh.                                    11:40:57

 2      Q    So I just want to let you and counsel know 11:40:59

 3  that I did that to save a twig and some weight in   11:41:05

 4  the exhibits.  And so that's what is going on there. 11:41:09

 5      MS. RODRIGUEZ:  That's just to the extent       11:41:15

 6  because we wouldn't know if Mr. McMillian actually  11:41:17

 7  received the attachments.                           11:41:20

 8      MR. MORIARTY:  Well --                          11:41:20

 9      MS. RODRIGUEZ:  Correct.                        11:41:21

10      MR. MORIARTY:  In most cases, I'm using         11:41:23

11  documents from Mr. McMillian's production.          11:41:25

12      MS. RODRIGUEZ:  Okay.                           11:41:26

13      MR. MORIARTY:  So I think we do know that he got 11:41:29

14  the attachments.                                    11:41:31

15      MS. RODRIGUEZ:  Okay.                           11:41:32

16      MR. MORIARTY:  But we can work that out after if 11:41:34

17  we need to.                                         11:41:35

18      MS. RODRIGUEZ:  Yeah.  Okay.                    11:41:38

19          (Whereupon Defendants' Exhibit 6           11:41:51

20          was marked for identification)             11:41:52

21  BY MR. MORIARTY:                                    11:41:52

22      Q    Mr. McMillian, you've been handed Exhibit 6 11:42:09

23  to your deposition.                                 11:42:11

24      A    Uh-huh.                                    11:42:13

25      Q    Do you recognize Exhibit 6 as a letter that 11:42:17
```

                                              Page 64

```
 1    you received on or about November 8, 2017 regarding      11:42:20
 2    your leave of absence claim?                             11:42:24
 3         A    Okay.  Yes.                                    11:42:26
 4         Q    All right.  And Exhibit 6 says in that         11:42:29
 5    claims status summary chart that you had been            11:42:32
 6    approved for Amazon Medical Leave of Absence and         11:42:36
 7    Amazon STD Medical.                                      11:42:38
 8              Do you see that?                               11:42:39
 9         A    Yes, sir.                                      11:42:39
10         Q    And you were approved through November 19,     11:42:42
11    2017.  Right?                                            11:42:49
12         A    Yes, sir.                                      11:42:50
13         Q    Do you have any reason to doubt that you       11:42:52
14    received Exhibit 6, either in the mail or via e-mail     11:42:56
15    or both?                                                 11:43:08
16         A    No.                                            11:43:20
17         Q    And at the time that you -- that you           11:43:24
18    received Exhibit 6, you understood that your             11:43:28
19    approved leave of absence would last until               11:43:31
20    November 19, 2017.  Right?                               11:43:35
21         A    Right.  Yes.                                   11:43:36
22         Q    And you understood that if you wanted to       11:43:39
23    continue on approved leave of absence after that         11:43:41
24    date, you would need to submit an extension request.     11:43:46
25    Right?                                                   11:43:47
```

Page 65

```
 1       A    I'm not aware of what an extension request    11:43:50

 2   was or is.                                             11:43:51

 3       Q    Okay.  So my terminology is bad.  You would   11:43:53

 4   have to ask for additional leave if you wanted to      11:43:56

 5   have additional approved leave?                        11:44:00

 6       A    Yes.                                          11:44:00

 7       Q    Okay.                                         11:44:01

 8            Mr. McMillian, looking at Exhibit 7 to your   11:44:21

 9   deposition, it appears to be a note from a             11:44:26

10   disability statement from Dr. Ramirez dated            11:44:28

11   November 16, 2017.                                     11:44:31

12            (Whereupon Defendants' Exhibit 7              11:44:31

13            was marked for identification)                11:44:31

14   BY MR. MORIARTY:                                       11:44:31

15       Q    Is this a document that you submitted to      11:44:34

16   Amazon in order to extend your leave of absence?       11:44:39

17       A    It looks as if that would have been the       11:44:42

18   note that I would have sent.  Yes, sir.                11:45:12

19       Q    Mr. McMillian, looking at Exhibit 8, is       11:45:21

20   this a document that you've ever seen before?  And     11:45:25

21   well, let me rephrase the question.                    11:45:26

22            Outside of anything that your lawyer might    11:45:28

23   have shown you in connection with this lawsuit, have   11:45:31

24   you ever seen Exhibit 8 before?                        11:45:32

25       MS. RODRIGUEZ:  You want to look at the whole      11:45:35
```

Page 66

| | | |
|---|---|---|
| 1 | Q    Do you recall talking to Dr. Ramirez on | 11:46:41 |
| 2 | your November 16 visit about whether he expected | 11:46:45 |
| 3 | significant clinical improvement in your functional | 11:46:48 |
| 4 | capacity? | 11:46:52 |
| 5 | A    Do I -- | 11:46:53 |
| 6 | MS. RODRIGUEZ:  I'm going to object that that | 11:46:54 |
| 7 | calls for a medical opinion.  That was kind of a | 11:46:57 |
| 8 | loaded question. | 11:46:58 |
| 9 | THE WITNESS:  Do I recall talking to him about | 11:47:01 |
| 10 | functional capacity clinical improvement, no. | 11:47:04 |
| 11 | BY MR. MORIARTY: | 11:47:04 |
| 12 | Q    Okay.  Mr. McMillian, you have been handed | 11:47:38 |
| 13 | Exhibit 9 to your deposition. | 11:47:41 |
| 14 | Do you recognize Exhibit 9 as a letter that | 11:47:46 |
| 15 | you received on or about November 25, 2017? | 11:47:49 |
| 16 | A    To the best of my recollection, yes, sir. | 11:47:52 |
| 17 | (Whereupon Defendants' Exhibit 9 | 11:47:52 |
| 18 | was marked for identification) | 11:47:52 |
| 19 | BY MR. MORIARTY: | 11:47:52 |
| 20 | Q    All right.  And if you look at that claim | 11:47:56 |
| 21 | status summary chart, your Amazon medical leave of | 11:47:59 |
| 22 | absence and Amazon STD medical leave of absence are | 11:48:04 |
| 23 | approved through November 29, 2017.  Right? | 11:48:07 |
| 24 | A    Yes. | 11:48:07 |
| 25 | Q    Which is what you had requested in your | 11:48:11 |

Page 68

```
 1   ended?                                             11:51:09

 2       A    If I was ready.                           11:51:10

 3       Q    But yes, what I said is accurate if you   11:51:12

 4   were ready?                                        11:51:13

 5       A    If I was ready.                           11:51:14

 6       Q    Okay.  So Mr. McMillian, looking at what  11:51:32

 7   has been marked as Exhibit 10 to your deposition, do  11:51:35

 8   you recognize this as an e-mail that you sent on   11:51:39

 9   November 30, 2017?                                 11:51:43

10       A    Yes, sir.                                 11:51:44

11            (Whereupon Defendants' Exhibit 10         11:51:44

12            was marked for identification)            11:51:44

13   BY MR. MORIARTY:                                   11:51:44

14       Q    And you attached a disability statement   11:51:47

15   dated November 30.  Right?                         11:51:56

16       A    Yes, sir.                                 11:51:59

17       Q    Your approved leave -- your leave of      11:52:02

18   absence ends -- strike that.  Let me start again.  11:52:12

19            When we looked at Exhibit 9, we saw that  11:52:16

20   you had been approved for Amazon medical leave of  11:52:19

21   absence through November 29.  Right?               11:52:25

22       MS. RODRIGUEZ:  It's Exhibit 9.  It's right    11:52:26

23   underneath this one.                               11:52:29

24       THE WITNESS:  This one?                        11:52:30

25       MS. RODRIGUEZ:  No.  It's right underneath the 11:52:32
```

Page 71

| | | |
|---|---|---|
| 1 | one that's in front of you. | 11:52:33 |
| 2 | THE WITNESS:  Oh, this one.  Right. | 11:52:38 |
| 3 | MS. RODRIGUEZ:  Right underneath it.  That one. | 11:52:39 |
| 4 | THE WITNESS:  Yes.  29.  Yes, sir. | 11:52:41 |
| 5 | BY MR. MORIARTY: | 11:52:41 |
| 6 | Q    All right.  So you sent an update approving | 11:52:45 |
| 7 | additional leave on November 30.  Right? | 11:52:50 |
| 8 | A    Okay. | 11:52:50 |
| 9 | Q    Is there some reason you didn't send a | 11:52:54 |
| 10 | request for an extension before November 30? | 11:52:58 |
| 11 | A    Yes. | 11:52:59 |
| 12 | Q    What was the reason? | 11:53:01 |
| 13 | A    It's going to be based on doctors' | 11:53:02 |
| 14 | appointments and the scheduling of those I'm quite | 11:53:12 |
| 15 | sure. | 11:53:14 |
| 16 | Q    So if we look back at Exhibit 1, which is | 11:53:17 |
| 17 | the billing statement from Dr. Ramirez -- very first | 11:53:24 |
| 18 | thing that -- | 11:53:28 |
| 19 | A    Uh-huh. | 11:53:31 |
| 20 | Q    If you go to the third page of Exhibit 1, | 11:53:38 |
| 21 | it looks like you had had an appointment on | 11:53:41 |
| 22 | November 28, 2017? | 11:53:43 |
| 23 | A    Okay. | 11:53:45 |
| 24 | Q    Is there -- is there any reason you | 11:53:48 |
| 25 | couldn't have gotten extension paperwork from | 11:53:50 |

Page 72

| | | |
|---|---|---|
| 1 | Dr. Ramirez on the 28th as opposed to the 30th? | 11:53:54 |
| 2 | MS. RODRIGUEZ:   Objection.   That call for | 11:53:56 |
| 3 | speculation.   You can answer if you know, but again, | 11:54:05 |
| 4 | I don't want you to guess. | 11:54:05 |
| 5 | THE WITNESS:   I have -- I have -- I have no | 11:54:07 |
| 6 | idea. | 11:54:08 |
| 7 | BY MR. MORIARTY: | 11:54:08 |
| 8 | Q      Do you recall why you haven't sent your | 11:54:12 |
| 9 | November 30 e-mail to the accommodations@amazon.com | 11:54:17 |
| 10 | e-mail address? | 11:54:19 |
| 11 | A      Probably -- well, do I recall why I did | 11:54:22 |
| 12 | that? | 11:54:22 |
| 13 | Q      Yes. | 11:54:23 |
| 14 | A      I have no idea to tell you the truth.   I | 11:54:25 |
| 15 | don't know. | 11:54:25 |
| 16 | Q      Do you recall why you copied Reuben Smith? | 11:54:31 |
| 17 | A      My -- I would be -- I'd be guessing, but -- | 11:54:35 |
| 18 | or you know, just putting it out there.   I don't | 11:54:37 |
| 19 | know.   I remember talking to Reuben at some point in | 11:54:43 |
| 20 | time.   So he might have asked me to cc him.   I | 11:54:46 |
| 21 | don't -- you know, I don't remember.   So that's -- | 11:54:50 |
| 22 | might be the reason why. | 11:54:52 |
| 23 | BY MR. MORIARTY: | 11:54:52 |
| 24 | Q      Who is Reuben Smith? | 11:54:57 |
| 25 | A      I think he was somebody that worked with | 11:55:01 |

Page 73

```
 1    the ERC and all those other people.  I don't know.    11:55:06

 2        Q    Okay.  And the disability statement that is   11:55:11

 3    the second page of Exhibit 10 said that you were       11:55:17

 4    totally temporarily disabled from November 30          11:55:21

 5    through December 16 and that you were estimated to     11:55:25

 6    return to work full duty on December 16, 2017.         11:55:29

 7    Right?                                                 11:55:30

 8        A    Right.                                        11:55:52

 9        Q    Looking at Exhibit 11 to your deposition,     11:56:33

10    Mr. McMillian, do you recognize Exhibit 11 as an       11:56:36

11    e-mail that you received from Reuben Smith?            11:56:40

12        A    To the best of my recollection, yes, sir.    11:56:44

13             (Whereupon Defendants' Exhibit 11            11:56:44

14             was marked for identification)               11:56:44

15    BY MR. MORIARTY:                                       11:56:44

16        Q    And Mr. Smith wrote "Thanks for sending      11:56:47

17    this over" -- well, actually, let's look at page 2    11:56:52

18    of Exhibit 11.                                         11:56:54

19             Do you see the numbers in the bottom right   11:56:57

20    corner "MM" and then there are a bunch of numbers?    11:57:01

21        A    Uh-huh.                                       11:57:02

22        Q    Sometimes I'm going to refer to the pages    11:57:03

23    by those numbers just to sort of help us track        11:57:06

24    through the record.  Okay?                             11:57:07

25        A    Okay.                                         11:57:08
```

Page 74

| | | |
|---|---|---|
| 1 | MS. RODRIGUEZ:  You can put everything aside so | 11:58:48 |
| 2 | you don't get confused. | 11:59:06 |
| 3 | (Whereupon Defendants' Exhibit 12 | 11:59:06 |
| 4 | was marked for identification) | 11:59:06 |
| 5 | BY MR. MORIARTY: | 11:59:06 |
| 6 | Q    Looking at what's been marked as Exhibit 12 | 11:59:11 |
| 7 | to your deposition, Mr. McMillian, do you recognize | 11:59:18 |
| 8 | Exhibit 12 as an e-mail you received on December 14, | 11:59:21 |
| 9 | 2017? | 11:59:24 |
| 10 | A    Yes, sir. | 11:59:24 |
| 11 | Q    And it came from an e-mail address | 11:59:27 |
| 12 | AmazonAM@ReedGroup.com. | 11:59:31 |
| 13 | Do you see that? | 11:59:31 |
| 14 | A    Okay. | 11:59:32 |
| 15 | Q    Is that the e-mail address for the leave | 11:59:41 |
| 16 | team? | 11:59:41 |
| 17 | A    Well, that's who I thought they were.  I | 11:59:44 |
| 18 | mean, that's who I thought all these -- yes. | 11:59:49 |
| 19 | Q    Okay.  And if you go three pages in, you | 11:59:54 |
| 20 | see that there is a letter dated December 14, 2017 | 11:59:58 |
| 21 | with a claims status summary.  Right? | 12:00:03 |
| 22 | A    Yes, sir. | 12:00:04 |
| 23 | Q    And that approved your -- or reflects | 12:00:07 |
| 24 | approval of your Amazon medical leave of absence | 12:00:09 |
| 25 | through December 15, 2017.  Right? | 12:00:13 |

Page 76

1      A    Yes, sir.                                      12:00:14

2      Q    And then a denial of your continued Amazon     12:00:20

3   STD medical.  Right?                                   12:00:28

4      A    It says "denied."  Yes, sir.                   12:00:30

5      Q    At the time you received this December 14      12:00:33

6   letter, did you still believe you were on an           12:00:36

7   approved leave of absence?                             12:00:49

8      A    Yes.                                           12:01:11

9      Q    All right.  Let's go off the record            12:01:34

10  momentarily here.                                      12:01:35

11     THE VIDEOGRAPHER:  We are going off the record      12:01:36

12  at 12:01 P.M.  This is the end of media two.           12:01:40

13          (Whereupon a recess was taken)                 12:14:03

14     THE VIDEOGRAPHER:  We are on the record at 12:14     12:14:08

15  P.M.  This is the beginning of media three in the      12:14:10

16  deposition of Marcellus McMillian.                     12:14:14

17  BY MR. MORIARTY:                                       12:14:14

18     Q    Let's mark an exhibit.                         12:14:27

19          (Whereupon Defendants' Exhibit 13              12:14:27

20          was marked for identification)                 12:14:28

21  BY MR. MORIARTY:                                       12:14:28

22     Q    Mr. McMillian, looking at Exhibit 13 to        12:14:31

23  your deposition, do you recognize Exhibit 13 as an     12:14:35

24  e-mail that you wrote on December 15, 2017?            12:14:40

25     A    Yes.                                           12:14:41

                                              Page 77

| | | | |
|---|---|---|---|
| 1 | Q | And you attached another disability | 12:14:45 |
| 2 | statement from Dr. Ramirez.   Right? | | 12:14:47 |
| 3 | A | Uh-huh. | 12:14:47 |
| 4 | Q | Yes? | 12:14:49 |
| 5 | A | Yes. | 12:14:49 |
| 6 | Q | And you wrote to the accommodations alias. | 12:14:53 |
| 7 | Do you see that? | | 12:14:54 |
| 8 | A | Yes. | 12:14:54 |
| 9 | Q | Why were you still writing to the | 12:14:56 |
| 10 | accommodations alias in -- on December 15, 2017? | | 12:15:01 |
| 11 | A | Because that's what I thought I was | 12:15:03 |
| 12 | supposed to do. | | 12:15:05 |
| 13 | Q | And in your e-mail, you write | 12:15:11 |
| 14 | | "I will also be requesting from the | 12:15:14 |
| 15 | | doctor to forward information regarding | 12:15:16 |
| 16 | | treatment to the Reed Group that is taking | 12:15:20 |
| 17 | | care of the claim, I guess." | 12:15:21 |
| 18 | | Do you see that? | 12:15:21 |
| 19 | A | Yes. | 12:15:22 |
| 20 | Q | Did you ask Dr. Ramirez to forward | 12:15:24 |
| 21 | information to the Reed Group? | | 12:15:27 |
| 22 | A | Yes. | 12:15:27 |
| 23 | Q | What did you ask Dr. Ramirez to forward? | 12:15:43 |
| 24 | A | I guess it would have been the -- | 12:15:48 |
| 25 | Q | Exhibit 8? | 12:15:49 |

Page 78

| | | |
|---|---|---|
| 1 | December 20 was that you had gotten these calls and | 12:20:54 |
| 2 | you wanted to make sure that everybody had the | 12:20:56 |
| 3 | updated paperwork? | 12:21:00 |
| 4 | A    Correct. | 12:21:06 |
| 5 | Q    And the request in the December 12 | 12:21:11 |
| 6 | disability statement is for an extension of your | 12:21:15 |
| 7 | leave of absence until December 29.  Right? | 12:21:21 |
| 8 | A    I believe this one says December 30. | 12:21:24 |
| 9 | Q    It says "Your estimated to return to work | 12:21:27 |
| 10 | on December 30"? | 12:21:28 |
| 11 | A    Oh, yeah. | 12:21:28 |
| 12 | Q    So the leave would be extended to the 29th? | 12:21:31 |
| 13 | A    To the 29th.  Okay. | 12:21:32 |
| 14 | Q    And so that was what you were requesting, | 12:21:34 |
| 15 | was to extend your leave of absence -- | 12:21:36 |
| 16 | A    Yes. | 12:21:36 |
| 17 | Q    -- to December 29. | 12:21:38 |
| 18 | Mr. McMillian, looking at Exhibit 16 to | 12:22:02 |
| 19 | your deposition, do you recognize Exhibit 16 as an | 12:22:07 |
| 20 | e-mail you received from AmazonAM@reedgroup.com on | 12:22:11 |
| 21 | December 26, 2017? | 12:22:14 |
| 22 | A    Yes. | 12:22:15 |
| 23 | (Whereupon Defendants' Exhibit 16 | 12:22:15 |
| 24 | was marked for identification) | 12:22:15 |
| 25 | BY MR. MORIARTY: | 12:22:15 |

Page 83

```
 1        A    I just feel he was e-mailing me and          12:27:21

 2   letting -- you know, telling me what to do as far as   12:27:24

 3   making sure the paperwork was sent over.               12:27:27

 4        Q    All right.  And after this e-mail exchange,  12:27:30

 5   you understood that -- that at least from Reuben       12:27:34

 6   Smith's perspective, he expected you to be notifying   12:27:37

 7   the LOA team of your extension needs.  Right?          12:27:40

 8        A    Right and -- yes.                            12:28:05

 9        Q    Exhibit 18.                                  12:28:27

10             (Whereupon Defendants' Exhibit 18            12:28:27

11             was marked for identification)               12:28:40

12   BY MR. MORIARTY:                                       12:28:40

13        Q    Mr. McMillian, looking at Exhibit 18 to      12:28:44

14   your deposition, do you recognize this as a -- an      12:28:48

15   e-mail that you sent on December 28, 2017?             12:28:54

16        A    Yes.                                         12:28:54

17        Q    And December 28, 2017 was one day before     12:28:57

18   your approved leave of absence was set to expire.      12:29:02

19   Right?                                                 12:29:14

20        A    Yes.                                         12:29:15

21        Q    And this e-mail you sent to both             12:29:16

22   accommodations and AmazonAM@reedgroup.  Right?         12:29:22

23        A    Yes.                                         12:29:22

24        Q    And did you understand at this point that    12:29:26

25   AmazonAM@reedgroup was what Reuben referred to as      12:29:30
```

Page 87

```
 1        A    I don't remember.  I don't recall.  But     12:37:08

 2   it's a possibility.  The best of my recollection,      12:37:12

 3   it's a possibility.                                    12:37:16

 4        Q    22.                                          12:37:16

 5             (Whereupon Defendants' Exhibit 22            12:37:16

 6             was marked for identification)               12:37:30

 7   BY MR. MORIARTY:                                       12:37:30

 8        Q    Looking at Exhibit 22, Mr. McMillian, do     12:37:36

 9   you recognize Exhibit 22 as an e-mail you received     12:37:38

10   on January 9, 2018?                                    12:37:44

11        A    Yes.                                         12:37:45

12        Q    And if you look at the fourth page of        12:37:47

13   Exhibit 22, at the claims status summary chart, you    12:37:54

14   see that it reflects an Amazon medical leave of        12:37:56

15   absence was approved through January 27, 2018.         12:38:00

16   Right?                                                 12:38:01

17        A    Uh-huh.                                      12:38:03

18        Q    And that was what Dr. Ramirez was            12:38:07

19   requesting in his latest disability note.  Right?      12:38:11

20        A    He was requesting what?  I'm sorry.          12:38:13

21        Q    He requested an extension of the leave of    12:38:16

22   absence through January 27?                            12:38:31

23        A    Yes.                                         12:38:55

24        Q    Looking at Exhibit 23 to your deposition,    12:38:58

25   Mr. McMillian, do you recognize Exhibit 23 as an       12:39:02
```

Page 93

1    e-mail you wrote on January 31, 2018?              12:39:05

2         A    Looks familiar, yes.                     12:39:07

3              (Whereupon Defendants' Exhibit 23        12:39:07

4              was marked for identification)           12:39:07

5    BY MR. MORIARTY:                                   12:39:07

6         Q    And you attached a disability statement  12:39:09

7    changing your estimated return-to-work date to     12:39:15

8    February 11, 2018.  Right?                          12:39:20

9         A    Yes, sir.                                12:39:21

10        Q    On the first page of Exhibit 23, it says "I   12:39:25

11   also have the other form."                         12:39:28

12             Do you know what that refers to?         12:39:40

13        A    At this present moment, do I know what it   12:39:43

14   refers to?                                         12:39:43

15        Q    Yes.                                     12:39:44

16        A    No.  No.  I don't remember.              12:39:48

17        MS. RODRIGUEZ:  Remember, don't guess.        12:39:48

18        THE WITNESS:  Right.                          12:39:49

19   BY MR. MORIARTY:                                   12:39:49

20        Q    Okay.  All right.  As of January 31, how   12:39:56

21   many times had you requested to extend your leave of   12:40:00

22   absence?                                           12:40:00

23        A    Okay.  Ask the question again.  I'm sorry.   12:40:03

24   From what?                                         12:40:03

25        Q    As of January 31, 2018 --               12:40:05

Page 94

```
 1      A    Yes, sir.                                12:40:07

 2      Q    -- this e-mail that we are looking at    12:40:08

 3   here --                                          12:40:08

 4      A    Uh-huh.                                  12:40:09

 5      Q    -- how many times had you requested to   12:40:10

 6   extend your leave of absence?                    12:40:12

 7      A    I don't know.  I don't know the specific 12:40:15

 8   number.                                          12:40:15

 9      Q    Did you ever have a conversation with    12:40:19

10   Dr. Ramirez about maybe putting you out on a longer  12:40:21

11   leave of absence?                                12:40:26

12      A    For like a longer period of time?        12:40:28

13      Q    Longer than two or three weeks?          12:40:30

14      A    No.  I don't think I had that conversation. 12:40:35

15   Could have been a possibility, but to the best of my 12:40:38

16   recollection, I don't remember that.             12:40:39

17      Q    After Dr. Ramirez had estimated your     12:40:41

18   return-to-work date several times and you had not  12:40:46

19   been able to return to work as of those dates, did  12:40:50

20   you start to have doubts about whether you could  12:40:53

21   ever return to work?                             12:40:56

22      A    Did I have doubts?  No.                   12:40:59

23      Q    So throughout this time, even though none  12:41:03

24   of the predictions had turned out to be true or the  12:41:06

25   estimations had turned out to be true, you still  12:41:08
```

Page 95

```
 1    thought that you would be able to return to work      12:41:10
 2    at --                                                 12:41:11
 3         A    At some point, oh, yeah.                    12:41:13
 4         Q    Based on your conversations with            12:41:15
 5    Dr. Ramirez, did you have any sense of when that      12:41:17
 6    point might be?                                       12:41:18
 7         A    No.  Not -- no.                             12:41:22
 8         Q    Okay.  24 please.                           12:41:40
 9              (Whereupon Defendants' Exhibit 24           12:41:40
10              was marked for identification)              12:41:54
11    BY MR. MORIARTY:                                      12:41:54
12         Q    Looking at Exhibit 24, Mr. McMillian, do    12:42:02
13    you recognize Exhibit 24 as an e-mail you received    12:42:05
14    on February 1, 2018?                                  12:42:09
15         A    Yes.                                        12:42:10
16         Q    What is it?  What is Exhibit 24?            12:42:14
17         A    It looks like a letter from one of the      12:42:21
18    ONT's that says                                       12:42:21
19              "According to the attendance records,       12:42:25
20              you have not worked the last two days."     12:42:27
21              So I hadn't worked in two days.  So they    12:42:29
22    were sending me an e-mail.                            12:42:32
23         Q    Did you understand -- were you surprised to 12:42:36
24    get this e-mail?                                      12:42:37
25         A    Absolutely.                                 12:42:38
```

Page 96

```
 1      Q    Because you thought you were on an approved   12:42:40

 2   leave of absence?                                     12:42:42

 3      A    Absolutely.                                   12:42:43

 4      Q    And this entire time you've been sending      12:42:44

 5   update notices and telling people "I need another     12:42:48

 6   extension.  I need another extension"?                12:42:56

 7      A    Yes.                                           12:43:08

 8      Q    25 please.                                     12:43:20

 9           (Whereupon Defendants' Exhibit 25             12:43:20

10           was marked for identification)               12:43:27

11   BY MR. MORIARTY:                                       12:43:27

12      Q    Mr. McMillian, looking at Exhibit 25, this   12:43:33

13   appears to be -- well, is this an e-mail that you     12:43:37

14   received on February 3?                               12:43:39

15      A    Yes.                                           12:43:39

16      Q    From ONT2?                                     12:43:40

17      A    Uh-huh.                                        12:43:41

18      Q    And that's 2018.  Right?                       12:43:50

19      A    Yes.                                           12:43:51

20      Q    Okay.  And I have another exhibit.            12:44:08

21   Exhibit 26.                                            12:44:09

22           (Whereupon Defendants' Exhibit 26             12:44:09

23           was marked for identification)               12:44:11

24   BY MR. MORIARTY:                                       12:44:11

25      Q    Exhibit 26, Mr. McMillian, appears to be     12:44:17
```

Page 97

| | | | |
|---|---|---|---|
| 1 | | your response to the February 1 e-mail. | 12:44:22 |
| 2 | | Is that what Exhibit 26 is? | 12:44:35 |
| 3 | A | It looks as if that is my response, yes. | 12:44:39 |
| 4 | Q | Okay.  And you said that you would contact | 12:44:45 |
| 5 | | the ERC? | 12:44:46 |
| 6 | A | Uh-huh. | 12:44:47 |
| 7 | Q | Did you contact the ERC? | 12:44:48 |
| 8 | A | I'm sure I did if I said so, yes. | 12:44:52 |
| 9 | Q | Do you recall anything about the | 12:44:53 |
| 10 | | conversation you had with the ERC on or about | 12:44:57 |
| 11 | | February 2, 2018? | 12:44:59 |
| 12 | A | Do I recall the conversation? | 12:45:01 |
| 13 | Q | Yes. | 12:45:02 |
| 14 | A | No, I do not. | 12:45:03 |
| 15 | Q | Okay.  All right.  And then the response | 12:45:06 |
| 16 | | that you got on February 4, 2018 was "Sorry for any | 12:45:12 |
| 17 | | confusion."  You see that? | 12:45:13 |
| 18 | A | Uh-huh. | 12:45:16 |
| 19 | Q | And it says that | 12:45:18 |
| 20 | | "Your leave case is showing approved | 12:45:21 |
| 21 | | through January 27 with an expected | 12:45:23 |
| 22 | | return-to-work date of January 28." | 12:45:25 |
| 23 | | Do you see that? | 12:45:26 |
| 24 | A | Uh-huh. | 12:45:28 |
| 25 | Q | When you read the February 4 response, did | 12:45:32 |

Page 98

```
 1        Q    Did you make an effort to keep records of      12:50:06

 2   your communications with Amazon regarding your leave     12:50:09

 3   of absence?                                              12:50:10

 4        A    Did I make an effort to do so?                 12:50:12

 5        Q    Yeah.  A conscious effort.                     12:50:14

 6        A    I don't think I really did to tell you the     12:50:16

 7   truth.  No.                                              12:50:17

 8        Q    Do you recall ever going into your sent        12:50:28

 9   mail in your gmail account and deleting certain          12:50:31

10   communications with Amazon but not others?               12:50:37

11        A    My sent mail?  Well, no.  Because I think      12:50:40

12   they delete your e-mails after a certain amount of       12:50:43

13   time.  So I don't think so, no.                          12:50:48

14        Q    Okay.  Can we mark this as Exhibit 28          12:50:49

15   please.                                                  12:50:55

16             (Whereupon Defendants' Exhibit 28              12:50:55

17             was marked for identification)                 12:50:55

18   BY MR. MORIARTY:                                         12:50:55

19        Q    Looking at Exhibit 28, do you recognize the   12:51:05

20   exhibit as an e-mail that you wrote on February 19,      12:51:08

21   2018?                                                    12:51:11

22        A    Yes.                                           12:51:12

23        Q    And you attached two disability statements    12:51:14

24   from Dr. Ramirez.  Right?  Well, wait a minute.  I       12:51:22

25   only see one.                                            12:51:27
```

| | | |
|---|---|---|
| 1 | Okay.  So you attached one disability | 12:51:31 |
| 2 | statement from Dr. Ramirez.  Right? | 12:51:35 |
| 3 | A    It has one here. | 12:51:36 |
| 4 | Q    Okay.  And that is a disability statement | 12:51:40 |
| 5 | dated February 13, 2018.  Right? | 12:51:44 |
| 6 | A    February -- I'm sorry.  What was the date | 12:51:46 |
| 7 | you said? | 12:51:47 |
| 8 | Q    February 13. | 12:51:49 |
| 9 | A    Yes. | 12:51:50 |
| 10 | Q    And it estimates a return to work full duty | 12:51:53 |
| 11 | on February 27, 2018? | 12:51:55 |
| 12 | A    Yes, sir. | 12:51:56 |
| 13 | Q    All right.  I'll represent to you that | 12:52:05 |
| 14 | Exhibit 28 is a copy of a document that was produced | 12:52:09 |
| 15 | to us in discovery in this lawsuit.  Okay? | 12:52:12 |
| 16 | A    Uh-huh. | 12:52:18 |
| 17 | Q    Where -- where is this e-mail, this | 12:52:21 |
| 18 | February 19, 2018 e-mail -- where did you -- where | 12:52:25 |
| 19 | does it live on your computer? | 12:52:28 |
| 20 | A    This e-mail? | 12:52:29 |
| 21 | Q    Yes. | 12:52:32 |
| 22 | A    Where does it live?  I don't know.  It | 12:52:34 |
| 23 | could be in my -- I don't know.  It could be in the | 12:52:37 |
| 24 | inbox, another folder or on the computer.  I don't | 12:52:42 |
| 25 | know. | 12:52:43 |

Page 103

| | | |
|---|---|---|
| 1 | else that caused you to think that the Amazon people | 13:02:12 |
| 2 | that you dealt with were not being sincere? | 13:02:17 |
| 3 | A   I won't -- I can't say as far as whether | 13:02:19 |
| 4 | they were being sincere or not.  I could just, | 13:02:22 |
| 5 | simply just based on, you know, the situation that I | 13:02:25 |
| 6 | was going through at the time, say I don't believe | 13:02:28 |
| 7 | that they were doing their best. | 13:02:31 |
| 8 | Q   Okay.  It is 1:00.  So let's go off the | 13:02:34 |
| 9 | record. | 13:02:35 |
| 10 | THE VIDEOGRAPHER:  We are going off the record | 13:02:36 |
| 11 | at 1:02 P.M.  This is the end of media four. | 13:02:39 |
| 12 | (Whereupon a recess was taken) | 13:55:05 |
| 13 | THE VIDEOGRAPHER:  We are on the record at 1:54 | 13:55:07 |
| 14 | P.M.  This is the beginning of media five in the | 13:55:11 |
| 15 | deposition of Marcellus McMillian. | 13:55:21 |
| 16 | MR. MORIARTY:  Exhibit 31 please. | 13:55:40 |
| 17 | Q   Mr. McMillian, do you recognize Exhibit 31 | 13:55:42 |
| 18 | as an e-mail you received on February 23, 2018? | 13:55:58 |
| 19 | A   Yes. | 13:55:58 |
| 20 | (Whereupon Defendants' Exhibit 31 | 13:55:58 |
| 21 | was marked for identification) | 13:55:58 |
| 22 | BY MR. MORIARTY: | 13:55:58 |
| 23 | Q   And in the claim status summary chart that | 13:56:00 |
| 24 | we were just looking at, Exhibit 31, reflects that | 13:56:03 |
| 25 | your Amazon medical leave of absence was approved | 13:56:05 |

Page 111

| | | |
|---|---|---|
| 1 | through February 27, 2018.  Right? | 13:56:14 |
| 2 | A    Yes. | 13:56:14 |
| 3 | Q    Which was what you had requested.  Right? | 13:56:18 |
| 4 | A    To the best of my recollection, yes. | 13:56:21 |
| 5 | Q    When you received Exhibit 31, did you -- | 13:56:24 |
| 6 | did you feel like things were back on track in terms | 13:56:27 |
| 7 | of your approved leave of absence? | 13:56:40 |
| 8 | MS. RODRIGUEZ:  I'm going to -- I'm going to | 13:56:41 |
| 9 | object as to -- vague and ambiguous as to "back on | 13:56:44 |
| 10 | track." | 13:56:46 |
| 11 | I don't -- I mean, if you understand that, | 13:56:48 |
| 12 | you can answer. | 13:56:50 |
| 13 | THE WITNESS:  Okay.  Okay. | 13:57:02 |
| 14 | I would just simply say that I can see that | 13:57:07 |
| 15 | it's -- it was -- it was approved. | 13:57:18 |
| 16 | BY MR. MORIARTY: | 13:57:18 |
| 17 | Q    Something puzzling you about the exhibit? | 13:57:21 |
| 18 | A    No. | 13:57:43 |
| 19 | (Whereupon Defendants' Exhibit 32 | 13:57:49 |
| 20 | was marked for identification) | 13:57:50 |
| 21 | BY MR. MORIARTY: | 13:57:50 |
| 22 | Q    Let me know when you are ready, | 13:58:08 |
| 23 | Mr. McMillian. | 13:58:08 |
| 24 | A    I'm ready. | 13:58:09 |
| 25 | Q    Okay.  You have Exhibit 32 in front of you. | 13:58:13 |

Page 112

```
 1    you made through your Google voice?                      14:03:42

 2         A    I wouldn't have any records.  No, sir.         14:03:47

 3         Q    And have you kept your cell phone bills        14:03:49

 4    that show your calls, ingoing and outgoing?             14:03:55

 5         A    I don't even get cell phone calls.  I'm        14:03:57

 6    sure they send them.  But I don't even open them.  I    14:04:01

 7    just pay the bill.                                       14:04:04

 8         Q    As we sit here today, can you remember a       14:04:07

 9    specific conversation with Amazon or Reed between        14:04:10

10    February 20 and March 9?                                 14:04:16

11         A    Specific?  No.                                 14:04:18

12         Q    And are you aware of any documents that        14:04:21

13    reflect communications between you and Amazon or         14:04:27

14    Reed between February 20 and March 9?                    14:04:30

15         A    Any documents?  To the best of my              14:04:33

16    recollection at this point, I would have to say I        14:04:47

17    don't recall.                                            14:05:00

18         Q    Mr. McMillian, you've been handed              14:05:13

19    Exhibit 33 to your deposition.                           14:05:15

20         A    Uh-huh.                                        14:05:17

21         Q    Do you recognize Exhibit 33 as an e-mail       14:05:19

22    that you sent on March 20, 2018?                         14:05:28

23         A    Yes.                                           14:05:36

24              (Whereupon Defendants' Exhibit 33              14:05:36

25              was marked for identification)                 14:05:36
```

Page 117

```
 1    BY MR. MORIARTY:                                    14:05:36

 2        Q    And you wrote "not sure why you guys didn't 14:05:39

 3    get the previous paperwork."                        14:05:40

 4             Do you see that?                            14:05:41

 5        A    Yes.                                        14:05:42

 6        Q    All right.  And you attached two disability 14:05:45

 7    statements to the March 20 e-mail.  Right?          14:05:48

 8        A    Okay.  Yes.                                 14:05:50

 9        Q    One dated February 27, 2018 and the second 14:05:55

10    one dated March 15, 2018.  Correct?                 14:05:59

11        A    Uh-huh.                                     14:06:01

12        Q    Yes?                                        14:06:02

13        A    Yes.                                        14:06:02

14        Q    Okay.  And you said in your e-mail the     14:06:12

15    second to last line -- well, actually it goes from  14:06:16

16    the third line to the fifth line.                   14:06:17

17             "I am sending the paperwork to carry       14:06:19

18             me through the 1st of April.  I am sure    14:06:21

19             they will have to write another since my   14:06:24

20             surgery isn't until the 10th of April."    14:06:26

21             Do you see that?                            14:06:27

22        A    Yes.                                        14:06:30

23        Q    At the time that you wrote your March 20   14:06:32

24    e-mail, were you thinking that you were going to be 14:06:34

25    off work until your surgery happened?               14:06:37
```

Page 118

```
 1      A    Uh-huh.                                14:13:01

 2      Q    Had you previously sent the April 2    14:13:04

 3   disability statement to Amazon or Reed before   14:13:08

 4   April 22?                                       14:13:12

 5      A    I don't recall, sir.                   14:13:39

 6      Q    36 please.                             14:13:58

 7           (Whereupon Defendants' Exhibit 36      14:13:58

 8           was marked for identification)         14:13:59

 9   BY MR. MORIARTY:                               14:14:00

10      Q    Mr. McMillian, looking at Exhibit 36, this  14:14:04

11   appears to be another attendance type e-mail sent to  14:14:10

12   you on April 25, 2018.                         14:14:12

13           Do you see that?                       14:14:13

14      A    Yes, sir.                              14:14:13

15      Q    And then you responded on April 26.  Right?  14:14:17

16      A    Yes, sir.                              14:14:20

17      Q    And you are still telling -- let's see, in  14:14:24

18   this case, Caitlin Favati --                   14:14:27

19      A    Uh-huh.                                14:14:27

20      Q    -- that you are having a back procedure and  14:14:30

21   you will forward whatever documents they needed?  14:14:32

22      A    Uh-huh.                                14:14:33

23      Q    Did you feel like you were cooperating with  14:14:35

24   the process here?                              14:14:38

25      A    Yes.  Uh-huh.                          14:14:40
```

Page 123

```
 1    you discussed with your lawyer, if anything, did you      14:46:00

 2    read the February 7 letter?                               14:46:02

 3        A    I'm pretty sure I probably did see it.           14:46:04

 4        Q    Okay.  Did you understand that it was an         14:46:06

 5    offer to place you back to work at Amazon?                14:46:09

 6        A    In one form, yes.                                14:46:11

 7        Q    And what do you mean by that?                    14:46:13

 8        A    Because basically what I understood              14:46:15

 9    "contingent" to mean is that you weren't an actual        14:46:20

10    employee of Amazon.  You were a contingent worker,        14:46:24

11    which would have pretty much made me what I wasn't        14:46:29

12    before they terminated me.                                14:46:37

13        Q    Okay.  So you thought it was an offer to         14:46:39

14    come back as a contingent worker?                         14:46:41

15        A    Correct.                                         14:46:41

16        Q    All right.  And did you accept the offer?        14:46:43

17        A    No, I did not.                                   14:46:44

18        Q    Why not?                                         14:46:44

19        MS. RODRIGUEZ:  I'm going to object to that line      14:46:46

20    of questioning as to attorney-client privilege.          14:46:48

21    I'll instruct my client not to answer.                   14:46:51

22    BY MR. MORIARTY:                                          14:46:52

23        Q    Other than anything that -- any legal           14:46:54

24    advice that you may have discussed with your             14:46:57

25    attorney, was there any reason that you didn't           14:47:00
```

Page 145

| | | |
|---|---|---|
| 1 | accept the offer to return to work? | 14:47:02 |
| 2 | MS. RODRIGUEZ:  Same objection.  I would | 14:47:03 |
| 3 | instruct my client not to answer. | 14:47:06 |
| 4 | MR. MORIARTY:  Okay. | 14:47:06 |
| 5 | I can just short-circuit this.  Is there | 14:47:12 |
| 6 | anything Mr. McMillian can say about this letter | 14:47:15 |
| 7 | that is not privileged? | 14:47:15 |
| 8 | MS. RODRIGUEZ:  No. | 14:47:19 |
| 9 | BY MR. MORIARTY: | 14:47:21 |
| 10 | Q    Were you physically able to return to work | 14:47:24 |
| 11 | at Amazon as of February, 2019? | 14:47:32 |
| 12 | A    Yes.  Well, I -- based on the doctor's | 14:47:35 |
| 13 | notes, I think I was still under treatment from the | 14:47:38 |
| 14 | doctor.  So I'm not sure how that would all | 14:47:43 |
| 15 | correlate, but I would say -- I would actually say | 14:47:46 |
| 16 | no to that because I was still under the doctor's | 14:47:50 |
| 17 | treatment at the time. | 14:47:50 |
| 18 | Q    Okay.  So I don't think you were under | 14:47:53 |
| 19 | doctor's treatment -- | 14:47:53 |
| 20 | A    Oh, not in -- when is this?  You are | 14:47:55 |
| 21 | talking about '19? | 14:47:56 |
| 22 | Q    Yes. | 14:47:57 |
| 23 | A    I'm thinking the other January.  I'm sorry. | 14:47:59 |
| 24 | I'll all over the place.  I'm sorry.  So you are | 14:48:02 |
| 25 | saying in January of 20 -- when did they make | 14:48:06 |

Page 146

```
 1    this -- '19 -- February of 2019.  But I thought I      14:48:10

 2    was still going to the doctor.  I thought I was.       14:48:13

 3        Q    Not according to the billing notes.           14:48:15

 4        A    Oh, well, it's been a while for me.  I         14:48:17

 5    don't remember.  Okay.  All right.  I guess the        14:48:20

 6    answer would be I could have went.                     14:48:22

 7        Q    So there's no physical barrier that you       14:48:25

 8    were aware of preventing you from returning to work?   14:48:27

 9        A    No.                                            14:48:34

10        Q    Did you want to return to work at Amazon?     14:48:36

11        A    Absolutely.                                   14:48:46

12        Q    And so I have to ask.  Why didn't you?        14:48:48

13        MS. RODRIGUEZ:  I'm going to object and -- I'm      14:48:51

14    going to instruct you not to answer.  It's             14:48:54

15    attorney-client privileged communications and work     14:49:00

16    product.                                               14:49:10

17    BY MR. MORIARTY:                                        14:49:10

18        Q    Okay.  Let's take a break.                    14:49:34

19        THE VIDEOGRAPHER:  We are going off the record      14:49:36

20    at 2:49 P.M.  This is the end of media five.           14:49:39

21          (Whereupon a recess was taken)                   14:58:10

22        THE VIDEOGRAPHER:  We are on the record at          14:58:12

23    2:58 P.M.  This is the beginning of media six in the   14:58:15

24    deposition of Marcellus McMillian.                     14:58:17

25     ///                                                   14:58:18
```

Page 147

```
 1    BY MR. MORIARTY:                                    15:58:58

 2        Q    Mr. McMillian, looking at Exhibit 45, do   15:59:44

 3    you recognize Exhibit 45 as an e-mail you wrote on  15:59:46

 4    May 3, 2018?                                        15:59:49

 5        A    Yes.                                        15:59:50

 6        Q    And we were just talking about an e-mail    15:59:52

 7    that you sent relating to wrongful termination.  Is  15:59:55

 8    this the e-mail you were referring to?              15:59:59

 9        A    It looks like it is, yes.                   16:00:00

10        Q    And when you look at the time on the        16:00:03

11    e-mail, it says 2:51 P.M.                           16:00:06

12             Do you see that?                           16:00:07

13        A    Yes.                                        16:00:07

14        Q    And then if you look at Exhibit 37, which   16:00:11

15    is Caitlin Favati's May 3 e-mail, there's a time    16:00:16

16    stamp of 1:34 P.M.                                  16:00:18

17             Do you see that?                           16:00:19

18        A    I do see it.                               16:00:20

19        Q    Right.  Do you have any reason to believe   16:00:22

20    that you sent your May 3 e-mail about wrongful      16:00:26

21    termination before Caitlin Favati said "We are      16:00:30

22    following up to inform you"?                        16:00:33

23        A    Well, based on this, it was 1:34.  Mine was 16:00:37

24    at 2:51.  So this had to be in response to that.    16:00:40

25        Q    So -- sorry.  Exhibit 45 was in response to 16:00:46
```

Page 186

```
1              I, SARI M. KNUDSEN, CSR NO. 13109, in and

2    for the State of California, do hereby certify:

3              I am the deposition officer that

4    stenographically recorded the testimony in the

5    foregoing deposition;

6              Prior to being examined, the deponent was

7    first duly sworn by me;

8              The foregoing transcript is a true record of

9    the testimony given;

10              Before completion of the deposition, review

11    of the transcript was not requested.  If requested,

12    any changes made by the deponent (and provided to

13    the reporter) during the period allowed are appended

14    hereto.

15

16              Dated the 2nd day of December, 2019.

17

18

19

20

21         SARI M. KNUDSEN, CSR NO. 13109

22

23

24

25
```

Page 191

# Exhibit 2

EXHIBIT 2
58

```
1          THE UNITED STATES DISTRICT COURT FOR THE
2       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
3
4    MARCELLUS MCMILLIAN,                  )
                                           )
5            PLAINTIFF,                    )
                                           )
6            VS.                           ) CASE NO.:
                                           ) 2:19-CV-02121-
7    GOLDEN STATE FC LLC,                  ) MWF-JCX
     AMAZON FULFILLMENT                    )
8    SERVICES, INC., AMAZON.COM            )
     SERVICES, INC., AMAZON.COM,           )
9    INC., DEVON FRANKLIN, AND             )
     DOES 1 TO 100, INCLUSIVE,            )
10                                         )
             DEFENDANTS.                   )
11   _____)
12
13
14
15               VIDEO DEPOSITION OF
16           PRISCILLA IEMANJA BUSTAMANTE
17              LOS ANGELES, CALIFORNIA
18           WEDNESDAY, SEPTEMBER 25, 2019
19
20
21
22
23   JOB NO. 3531784
24   REPORTED BY:  LETICIA ROJO, CSR 12132
25   PAGES 1 - 104
```

                                                    Page 1

```
 1
 2    APPEARANCES:
 3
 4
 5    FOR THE PLAINTIFF, MARCELLUS MCMILLIAN:
 6         RODRIGUEZ & TRAN, LLP
           BY:  JORGE GUARDADO, ESQ.
 7         631 SOUTH OLIVE STREET, SUITE 820
           LOS ANGELES, CALIFORNIA, 90014
 8         TELEPHONE:  (213)325-3024
           FACSIMILE:  (213)325-3027
 9         JORGE@RODRIGUEZTRAN.COM
10
11
12
13
14    FOR THE DEFENDANTS, AMAZON.COM SERVICES, INC.:
15         PERKINS COIE LLP
           BY:  ANDREW MORIARTY, ESQ.
16         1201 THIRD AVENUE, SUITE 4900
           SEATTLE, WASHINGTON, 98101
17         TELEPHONE:  (206)359-8629
           FACSIMILE:  (206)359-9629
18         AMORIARTY@PERKINSCOIE.COM
19
20
21
22
23    ALSO PRESENT:
24         KATY AMETON, VIDEOGRAPHER
25
```

Page 3

```
1    the court reporter as part of the record of these

2    proceedings.

3            Would counsel, please, identify

4    yourselves and state whom you represent?

5            MR. GUARDADO:  This is Jorge Guardado      10:17

6    representing Marcellus McMillian.

7            MR. MORIARTY:  Andrew Moriarty of Perkins

8    Coie, representing defendants.

9            THE VIDEOGRAPHER:  Thank you, Counsel.

10           Would the reporter, please, swear in the    10:17

11   witness.

12

13               PRISCILLA IEMANJA BUSTAMANTE,

14            having first been duly sworn, was

15            examined and testified as follows:         10:17

16

17           THE VIDEOGRAPHER:  You may proceed.

18

19                    EXAMINATION

20   BY MR. GUARDADO:                                    10:17

21       Q.   Good morning.  My name is Jorge Guardado,

22   and I represent Mr. McMillian in this lawsuit.  Are

23   you represented by counsel today?

24       A.   Yes.

25       Q.   And is that by Mr. Moriarty here in the    10:17
```

Page 7

```
 1   manager to associate engagement requirements, and

 2   things of that nature, so a lot of running reports.

 3   I would also run a lot of My Time reports, so just

 4   a lot of data gathering.

 5       Q.    And after December 2018, who started        10:50

 6   supervising the op admin, administrative -- I'm

 7   sorry, can you repeat the term for them again.

 8       A.    Ops admin.

 9       Q.    Ops admin.  So after December 2018, who

10   supervised the ops admin?                            10:50

11       A.    It would have been another HR business

12   partner.  So the reason why I stop supporting them

13   on December 2018, I went to support ONT3, so then

14   somebody else assumed my roles at ONT2.

15       Q.    And are there more ops admins at ONT3?      10:51

16       A.    No.

17       Q.    And so how often would ops admin pull the

18   reports that you were speaking about?

19       A.    On a daily basis, about at least twice a

20   day per shift, so four times in a day, we went two   10:51

21   shifts, days and nights.

22       Q.    And from January 2017 -- well, let me

23   back up.  Do you know who Marcellus McMillian is?

24       A.    Yes.

25       Q.    And who is he?                              10:52
```

Page 30

```
 1        A.     He's a former associate.
 2        Q.     And did he work at a -- did you work at
 3    the facility in San Bernardino?
 4        A.     Yes.
 5        Q.     And which one of the ONT facilities did     10:52
 6    he -- or sites did he work at?
 7        A.     Prior to his employment ending, it would
 8    have been at ONT3.
 9        Q.     And from January 2017 through May 2018,
10    did you ever personally work with Mr. McMillian?     10:52
11        A.     Personally, no, not that I -- not that I
12    can recall.
13        Q.     Are there any separate HR departments
14    within the San Bernardino location?
15        A.     Yes.                                       10:53
16        Q.     And what are those separate divisions of
17    HR?
18        A.     So each site has their own HR team that
19    supports them, so ONT4 has their own HR team, ONT2
20    has their own HR team, and ONT3 has their own HR     10:53
21    team that supports them.
22        Q.     And do they all -- do any of the HR teams
23    for any of the ONT sites handle requests for leaves
24    of absences?
25        A.     To an extent, yes.                         10:53
```

Page 31

```
1    STATE OF CALIFORNIA    )
                            ) ss:
2    COUNTY OF LOS ANGELES )

3

4          I, Leticia Rojo, do hereby certify:

5

6          That I am a duly qualified Certified
7    shorthand Reporter, in and for the State of
8    California, holder of certificate number 12132,
9    which is in full force and effect and that I am
10   authorized to administer oaths and affirmations;
11         That the foregoing deposition testimony
12   of the herein named witness was taken before me at
13   the time and place herein set forth;
14         That prior to being examined, the witness
15   named in the foregoing deposition, was duly sworn
16   or affirmed by me, to testify the truth, the whole
17   truth, and nothing but the truth;
18         That the testimony of the witness and all
19   objections made at the time of the examination were
20   recorded stenographically by me, and were
21   thereafter transcribed under my direction and
22   supervision;
23         That the foregoing pages contain a full,
24   true and accurate record of the proceedings and
25   testimony to the best of my skill and ability;
```

Page 103

```
 1            That prior to the completion of the

 2     foregoing deposition, review of the transcript WAS

 3     requested.

 4            I further certify that I am not a

 5     relative or employee or attorney or counsel of any

 6     of the parties, nor am I a relative or employee of

 7     such attorney or counsel, nor am I financially

 8     interested in the outcome of this action.

 9

10            IN WITNESS WHEREOF, I have subscribed my

11     name this 20th day of November, 2019.

12

13

14

15

16

17

18            LETICIA ROJO, CSR No. 12132

19

20

21

22

23

24

25

                                            Page 104
```

# Exhibit 3

EXHIBIT 3
66

**From:** Marcellus McMillian <marcellusmcmillian@gmail.com>
**Sent:** Friday, August 11, 2017 11:55 AM
**To:** accommodations
**Subject:** Medical Letter From DR. Case# 1708030103502
**Attachments:** M. Mcmillian Off Work Note 8_10_17.pdf

Here is a copy of the letter from my DR. If there is any other info that you need from me please reach out to me 323-63(two)-9874



**Marcellus J. Millian**
Advertising Agent, MJM Enterprises
p:323-374-352 |
e:marcellusmcmillian@gmail.com |
w:http://www.goodbooklets.com | a: 3651
S. La Brea Ave # 227 Los Angeles, CA
90016



Like us on Facebook



EXHIBIT 2

**Confidential**

EXHIBIT 3
67

AMZN-MCMLLN_000853

## Dr. William A. Ramirez
### Chiropractor
### Qualified Medical Examiner

P.O. Box 2032
· Family Practice
Sports Injury

*Walnut, California 91788*

*Telephone (909) 468-1775*
*Fax (909) 468-1795*
*Personal Injury*
*Workers Compensation*

## DISABILITY STATEMENT

NAME OF EMPLOYEE/STUDENT____Marcellus McMillian_____

DIAGNOSIS 1)____Lumbar Sprain/Strain_____

2)__Spinal Myospasms_____

EMPLOYER/SCHOOL:___Amazon_____

THIS IS TO CERTIFY THAT THE ABOVE NAMED EMPLOYEE WILL BE/WAS ABLE TO RETURN TO WORK ON:_Mr. McMillian is estimated to return to work full duty on September 1, 2017._____

TOTAL TEMPORARY DISABILITY FROM: August 4, 2017_____
TO: September 1, 2017 due to pain and medication he is undertaking due to the car accident he was involved in August 3, 2017._____

PATIENT IS RETURNED TO WORK WITH THE FOLLOWING LIMITATIONS:_____

PATIENT IS RETURNED TO WORK/SCHOOL ATHLETICS WITH NO RESTRICTIONS:_____

_____
William A. Ramirez, D.C. Q.M.E.

August 10, 2017_____
DATE

*Office Address: 302 South Lemon Avenue - Walnut, CA 91789*

**Confidential**

EXHIBIT 3
68

**AMZN-MCMLLN_000854**

# Exhibit 4

Send To: Marcellus McMillian

CC To: ont3-hr@amazon.com

Email Sent: Tuesday, August 15, 2017 12:00 AM



**my**accommodation·
**Fax:** 1-206-946-7289
**Email:** accommodations@amazon.com

August 15, 2017

Marcellus McMillian
3651 S LaBrea Ave 227
Los Angeles, CA  90016

RE: Leave as an Accommodation (LEA) Case #: 447540994

Dear Marcellus McMillian,

This letter provides you with information related to your request for an accommodation based on your **non-work-related injury or illness**.  We reviewed documentation from your healthcare provider regarding your current restrictions and also reviewed the essential functions of your current job.

The following accommodation options were considered:
- Temporary Work Assignment (TWA) and/or Long-Term Accommodation (LTA)
- Leave as an Accommodation

After reviewing this information, we have determined that you are eligible to be placed on a leave of absence during the time that you are unable to perform the essential functions of your position.  Your Leave as an Accommodation (LEA) will begin on 8/3/17 and end on 8/31/17, or the end of your assignment with Amazon.

If your restrictions change before that date, please contact the Accommodation team to extend your leave or return to work (with or without a job accommodation).  Failure to return to work on your next scheduled shift after 8/31/17 could result in end of employment therefore, we request that you contact us at least one week prior to your expected return to work date.

**Important Information about Leave as an Accommodation**
- LEA is not a permanent or indefinite period of leave (has an expected end date), and it is intended to allow an employee time to recover so that he/she can come back to work, with or without restrictions.
- LEA may be extended in certain circumstances, if the employee is progressing toward a release to work in the near future.



Confidential

AMZN-MCMLLN_000187

EXHIBIT 4
70

- During this process, Amazon reviewed your eligibility for other types of federal, state and company leave(s), including FMLA.  This leave will not be designated as FMLA.  At this time you are not eligible for FMLA because:
    - [__] You have not met the 12-month length of service requirement
    - [_X_] You have not worked 1,250 hours in the previous 12 months
    - [__] You have exhausted your FMLA entitlement
    - [__] Other: _____

Throughout the duration of this LEA, please contact the Accommodation team if there are any changes to your current work limitations. Amazon may request that you submit updated medical documentation or may reserve the right to request information from your physician directly to evaluate any changes in your status.

Please review the above and consider Amazon's offer of leave as an accommodation. **Amazon will assume that you have accepted this offer** and you will begin your LEA on the start date listed above. If you do not accept this offer and would like to discuss an alternative option, or if you do not agree with Amazon's assessment in any way, you must contact Accommodations or HR within two days of your receipt of this letter or the start date of your LEA, whichever is earlier.  If you do not accept this offer, you have the right to request alternative accommodations and/or other forms of leave of absence. **Please understand that if you do not accept Amazon's offer and you are not eligible for other leave of absence, it may affect your employment status and/or your right to certain workers' compensation or other disability benefits.**

Please understand that your acceptance of this offer will not change any of the terms and conditions in your original Offer Letter from Amazon, including your "at-will" employment status.

Thank you,

Tami Dennis  |  Amazon
Regional Accommodation Manager
(602) 353-2278

Confidential

# Exhibit 5

EXHIBIT 5
72



From: <AmazonAM@reedgroup.com>
Date: Fri, Mar 9, 2018 at 6:55 PM
Subject: Leave of Absence and Accommodations (LOAA) team Leave
Documentation for Marcellus McMillian, Case Number: 17110300818
To: <marcellusmcmillian@gmail.com>

Attached are documents pertaining to your leave of absence. Please review them carefully.

Please note, these documents are in Adobe PDF format. You will need Adobe Acrobat or equivalent software to open and view the attached documentation. You will also need access to a printer to print out any forms that need to be returned to the Leave of Absence and Accommodations (LOAA) team.

If you have any questions, contact the Leave of Absence and Accommodations (LOAA) team at 1-888-892-7180. Representatives are available between 5:00 a.m. and 5:00 p.m. Pacific time Monday through Friday.

If you believe you are receiving this email in error, please contact the Leave of Absence and Accommodations (LOAA) team immediately.

EXHIBIT 32
11-7-19
McMillian
PENGAD 800-631-6989

MM 000315

EXHIBIT 5
73

32

--------------------------------------- This message, and any attachments to it, may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are notified that any use, dissemination, distribution, copying, or communication of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately by return e-mail and delete the message and any attachments. Thank you.



AMAZON_23016
62_321...48.pdf

MM 000316

EXHIBIT 5
74

PO Box 6278
Broomfield, CO  80021



MARCELLUS MCMILLIAN
3651 S LABREA AVE 227
LOS ANGELES, CA  90016

Any claim adjustment described above for Amazon and its affiliates is performed by Reed Group Management LLC ("Reed Group"),
a Connecticut limited liability company and licensed third party administrator. Reed Group does business as "Reed Management
Administrators, LLC" in CA, "Reed Group Claim Services LLC" in NY, and its own name in other states.

MM 000317

EXHIBIT 5

1 of 2



March 09, 2018

Marcellus McMillian
3651 S LaBrea Ave 227
Los Angeles, California 90016

Case #: 17110300818
Re: Notice of Denial of Continuous Leave

If you do not think that you can work or if you require an accommodation, please contact the Leave of Absence and Accommodations (LOAA) team.

For information about other types of leave that may be available to you, contact the Leave of Absence and Accommodations (LOAA) team at 1-888-892-7180, option 1.

## Claim Status Summary

The below chart provides a summary status of all covered plans associated with your absence.

| Plan Name | Decision Status | Decision Date | From | Through |
|---|---|---|---|---|
| Amazon Medical Leave of Absence | Denied | 03/09/2018 | 02/28/2018 | 02/28/2018 |
| Amazon Medical Leave of Absence | Approved | 02/23/2018 | 11/05/2017 | 02/27/2018 |
| Amazon STD Medical | Denied | 12/14/2017 | 11/30/2017 | 12/15/2017 |
| Amazon STD Medical | Approved | 11/25/2017 | 11/05/2017 | 11/29/2017 |
| California Family Rights Act (CFRA) | Denied | 11/06/2017 | 11/05/2017 | 11/05/2017 |
|  |  |  |  |  |

MM 000318

EXHIBIT 5

76

| Family and Medical Leave Act | Denied | 11/06/2017 | 11/05/2017 | 11/05/2017 |
|---|---|---|---|---|

## For More Information

If you have any questions about your claim, contact the Leave of Absence and Accommodations (LOAA) team at 1-888-892-7180, option 1. Representatives are available 5:00 a.m. and 5:00 p.m. Pacific time Monday through Friday.

Enclosure(s):
FMLA Rights and Responsibilities

Any claim adjustment described above for Amazon and its affiliates is performed by Reed Group Management LLC ('Reed Group'), a Connecticut limited liability company and licensed third party administrator. Reed Group does business as 'Reed Management Administrators, LLC' in CA, 'Reed Group Claim Services LLC' in NY, and its own name in other states.

MM 000319

EXHIBIT 5
77

# FMLA Rights & Responsibilities Notice

In general, to be eligible for FMLA you must have worked for an employer for at least 12 months, meet the hours of service requirement (1,250 hours) in the 12 months preceding the leave, and work at a site with at least 50 employees within 75 miles. You must also have FMLA entitlement available in the applicable 12-month period.

If your leave qualifies and is certified as FMLA, your absences will be designated as FMLA leave and will count against your FMLA entitlement.

**Your Rights Under the FMLA**
- You are entitled to 12 weeks of unpaid leave in the 12-month period (26 weeks to care for a covered servicemember with a serious health condition), measured backward from the date of any FMLA usage ("rolling backward" calculation method).
- You are not required to use accrued paid time off during your unpaid FMLA leave. You may supplement your leave with paid time off, if applicable. Any applicable conditions related to the usage of paid time off, as set by Amazon, will apply. If paid time off is used, the absences will also be designated as FMLA and will count against your FMLA entitlement. If you do not meet the conditions or requirements for usage of paid time off, you remain entitled to unpaid FMLA leave.
- Your health benefits must be maintained during your FMLA leave, as if you continued to work.
- You must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from FMLA-protected leave.  (If your leave extends beyond the end of your FMLA entitlement, you do not have return rights under FMLA. Certain circumstances, such as a reduction in workforce or your position no longer exists, could also prevent your reinstatement.)

**Your Responsibilities Under the FMLA**
- If required by Amazon, you must submit sufficient certification or documentation in a timely manner, or your leave may be delayed or denied. If your leave is delayed or denied, any absences may be subject to the attendance policy and could result in termination.
- You must make your share of any premium payments to maintain your health benefits. You have a minimum 30-day grace period in which to make premium payments.  If payment is not made timely, your group health insurance may be cancelled, provided we notify you in writing at least 15 days before the date that your health coverage will lapse, or, at our option, we may pay your share of the premiums during FMLA leave, and recover these payments from you upon your return to work. If you do not return to work, you may be required to reimburse Amazon for our share of health insurance premiums paid on your behalf during your FMLA leave.
- You may be required to provide Amazon with periodic reports of your status and intent to return to work. Generally, these updates will be required every 30 days, depending on the circumstances of your leave.

After we have obtained sufficient information to make a determination, we will notify you within five business days whether your leave will be designated as FMLA and count against your FMLA entitlement. If you have any questions, please contact the Leave of Absence and Accommodations (LOAA) team at 1-888-892-7180, option 1. Representatives are available between 5:00 a.m. and 5:00 p.m. PST, Monday through Friday.



# EMPLOYEE RIGHTS
## UNDER THE FAMILY AND MEDICAL LEAVE ACT
### THE UNITED STATES DEPARTMENT OF LABOR WAGE AND HOUR DIVISION

**LEAVE ENTITLEMENTS**

Eligible employees who work for a covered employer can take up to 12 weeks of unpaid, job-protected leave in a 12-month period for the following reasons:

- The birth of a child or placement of a child for adoption or foster care;
- To bond with a child (leave must be taken within 1 year of the child's birth or placement);
- To care for the employee's spouse, child, or parent who has a qualifying serious health condition;
- For the employee's own qualifying serious health condition that makes the employee unable to perform the employee's job;
- For qualifying exigencies related to the foreign deployment of a military member who is the employee's spouse, child, or parent.

An eligible employee who is a covered servicemember's spouse, child, parent, or next of kin may also take up to 26 weeks of FMLA leave in a single 12-month period to care for the servicemember with a serious injury or illness.

An employee does not need to use leave in one block. When it is medically necessary or otherwise permitted, employees may take leave intermittently or on a reduced schedule.

Employees may choose, or an employer may require, use of accrued paid leave while taking FMLA leave. If an employee substitutes accrued paid leave for FMLA leave, the employee must comply with the employer's normal paid leave policies.

**BENEFITS & PROTECTIONS**

While employees are on FMLA leave, employers must continue health insurance coverage as if the employees were not on leave.

Upon return from FMLA leave, most employees must be restored to the same job or one nearly identical to it with equivalent pay, benefits, and other employment terms and conditions.

An employer may not interfere with an individual's FMLA rights or retaliate against someone for using or trying to use FMLA leave, opposing any practice made unlawful by the FMLA, or being involved in any proceeding under or related to the FMLA.

**ELIGIBILITY REQUIREMENTS**

An employee who works for a covered employer must meet three criteria in order to be eligible for FMLA leave. The employee must:

- Have worked for the employer for at least 12 months;
- Have at least 1,250 hours of service in the 12 months before taking leave;* and
- Work at a location where the employer has at least 50 employees within 75 miles of the employee's worksite.

*special "hours of service" requirements apply to airline flight crew employees.

**REQUESTING LEAVE**

Generally, employees must give 30-days' advance notice of the need for FMLA leave. If it is not possible to give 30-days' notice, an employee must notify the employer as soon as possible and, generally, follow the employer's usual procedures.

Employees do not have to share a medical diagnosis, but must provide enough information to the employer so it can determine if the leave qualifies for FMLA protection. Sufficient information could include informing an employer that the employee is or will be unable to perform his or her job functions, that a family member cannot perform daily activities, or that hospitalization or continuing medical treatment is necessary. Employees must inform the employer if the need for leave is for a reason for which FMLA leave was previously taken or certified.

Employers can require a certification or periodic recertification supporting the need for leave. If the employer determines that the certification is incomplete, it must provide a written notice indicating what additional information is required.

**EMPLOYER RESPONSIBILITIES**

Once an employer becomes aware that an employee's need for leave is for a reason that may qualify under the FMLA, the employer must notify the employee if he or she is eligible for FMLA leave and, if eligible, must also provide a notice of rights and responsibilities under the FMLA. If the employee is not eligible, the employer must provide a reason for ineligibility.

Employers must notify its employees if leave will be designated as FMLA leave, and if so, how much leave will be designated as FMLA leave.

**ENFORCEMENT**

Employees may file a complaint with the U.S. Department of Labor, Wage and Hour Division, or may bring a private lawsuit against an employer.

The FMLA does not affect any federal or state law prohibiting discrimination or supersede any state or local law or collective bargaining agreement that provides greater family or medical leave rights.

---



For additional information or to file a complaint:

# 1-866-4-USWAGE
(1-866-487-9243)   TTY: 1-877-889-5627

# www.dol.gov/whd
U.S. Department of Labor | Wage and Hour Division



WH1420  REV 04/16

MM 000321

EXHIBIT 5
79

Reed Group

**Attending Physician's Statement of Work Capacity and Impairment**

Return completed form to Leave of Absence and Accommodations team, P.O. Box 6278, Broomfield, CO 80021 or Fax to 1-847-554-1812.

Note: Your patient has informed ReedGroup that you would be willing to submit clinical information to support his/her disability claim.

In accordance with the federal law, GINA, [Genetic Information Nondiscrimination Act of 2008], please do not provide us with any genetic information. More information about GINA is included on the Authorization form [employee/patient] presented to you.

| Patient Information | First Name: | | Last Name: | | Claim Number: |
|---|---|---|---|---|---|
| | Date of Birth _____ / _____ / _____ | | Gender:   Male   Female | | Record Number: |

| Vocational Information | Employer: | Job Title: | Date of Hire: _____ / _____ / _____ |
|---|---|---|---|

Physical Demand Level per maximum pounds of exertion:
   Sedentary (10 lbs.)    Light (20 lbs.)    Medium (50 lbs.)    Heavy (100 lbs.)    Very Heavy (greater than 100 lbs.)

Intellectual Skill Demand: ☐ Unskilled ☐ Semi-skilled ☐ Skilled ☐ Highly Skilled

| Claim Information | First day of absence: _____ / _____ / _____ | Definition of Disability: ☐ Own Job ☐ Own Occupation ☐ Any Occupation |
|---|---|---|
| | Claim Manager: | Phone Number & Ext: | Fax Number: |

**1. Nature of Treatment & Work Capacity Evaluation**

Primary Diagnosis:_____   ICD-9  or  DSM   code(s): _____
Secondary/Co-morbid  Diagnosis impacting work :_____   ICD-9  or  DSM   code(s): _____
Tertiary/Co-morbid  Diagnosis impacting work :_____   ICD-9 or DSM code(s): _____

Onset of primary condition: _____ / _____ / _____

- Hospital stay:  ☐ Not applicable   Admitted on: _____ / _____ / _____  Discharged from Hospital on: _____ / _____ / _____
- Recent Surgery Date:_____ / _____ / _____   Type of Surgery: _____

Name and Address of Hospital:_____

- Medications-name/dosage/frequency:_____
- Other treatment methods:_____

1.) Is the patient's primary condition due to injury or illness arising out of the patient's employment? ☐ No ☐ Yes ☐ Unknown

Contact information for other health care providers treating this patient: ☐ Not applicable

Name:_____   Phone:_____   Address: _____
Name:_____   Phone:_____   Address: _____

2.) Did you recommend that your patient stay home from work? ☐ No ☐ Yes, on the following date_____

<u>If no, please complete sections 2-3 and provide a work release per section 5, question 6.</u>

If yes, please provide your rationale for recommending disability leave by referencing the patient's signs and symptoms and their relation to functional impairment(s) that precluded work.  Please be sure to explain how this patient's impairment impacted his capacity to perform the physical and/or intellectual demands of his/her job per the definition of disability noted above.  If the disability 'test' is noted to be "Any Occupation" please explain how impairment was determined to preclude any work which would include work at the sedentary and unskilled levels.

_____
_____
_____

**2. Treatment Plan**

| Date of first office visit: _____ / _____ / _____ | Date of last office visit: _____ / _____ / _____ | Next  office visit: _____ / _____ / _____ |
|---|---|---|

Expected Treatment Frequency: ☐ Weekly ☐ Monthly ☐ Other (specify)_____

(a)  Is this patient still under your care for the primary disabling condition?
☐ Yes ☐ No, indicate date service terminated:_____ / _____ / _____ or referred_____ / _____ / _____

(b)  If patient has been referred to a specialist please list the Provider's Name and Phone number

Is surgery planned? ☐ No ☐ Yes, on_____ / _____ / _____ Procedure(s): _____
Procedure  Code _____

**Health Care Provider's Initials:** | **Date:**



MM 000322

EXHIBIT 5
80

LOAA team, P.O. Box 6278, Broomfield, CO 80021 or Fax to 1-847-554-1812.

| Patient Information | Name | Claim Number |
|---|---|---|

| | Height:_____   Weight:_____   Pulse:_____   Blood Pressure:____/____   Date Measured:____/____/____ |
|---|---|
| **3. Medical Signs and Symptoms** | Patient's Complaints (symptoms):_____<br>_____<br>_____<br><br>Physical Examination Findings:<br>_____<br>_____<br>_____<br><br>Diagnostic Test/Study Findings (imaging studies, lab values, functional testing, e.g. pulmonary function tests, cardiac tests, etc.):<br>_____<br>_____<br>_____<br><br>If work absence is due to pregnancy, the expected date of delivery is:____/____/____ |
| **4. Mental or Psychiatric Impairment (if applicable)** | Please provide your formal Mental Status Exam results and Behavioral Observations.<br>Affect/Emotional Appropriateness and Control:<br>☐ WNL  ☐ Impaired as evidenced by<br><br>Behavioral Appropriateness/Control, Pace & Stamina:<br>☐ WNL  ☐ Impaired as evidenced by<br><br>Cognitive Processing/functioning:<br>☐ WNL  ☐ Impaired as evidenced by<br><br>Do you believe the patient is competent to endorse checks and direct the use of proceeds thereof?  ☐ Yes  ☐ No<br>If no, please explain:_____ |
| **5. Return to Work Status** | 1.) Do you currently consider your patient to be totally impaired from working?  ☐ No  ☐ Yes<br>If yes, as of what date?_____/_____/_____If yes, as supported by the following rationale citing medical facts documenting my patient's functional impairments and or stage of recovery from a medical procedure which at this time precludes work.<br>_____<br><br>2.  What is the estimated date of the patient's release to modified duty_____/_____/_____and to full duty_____/_____/_____<br><br>3.  Are there currently any temporary work restrictions and/or accommodations which would allow this patient to return to work?<br>☐ No  ☐ Yes, please specify by providing objective quantification e.g. no lifting greater than 20 lbs.<br>_____<br><br>4.  When do you anticipate your patient will reach maximum medical improvement? _____<br><br>5.  Do you anticipate, or currently recommend, permanent work restrictions? _____<br><br>6.  Regarding my care of this patient return to work status is as follows:<br>☐ Released to full duty on_____/_____/_____<br>☐ Released to temporary modified duty as describe above on_____/_____/_____and to full duty as of_____/_____/_____<br>☐ Unable to release patient at this time.  I anticipate significant clinical improvement in my patient's functional capacity by the following date:____/____/____ |

| | Health Care Provider's Name (print) | Specialty | Degree | Tax ID # |
|---|---|---|---|---|
| | Address (No., Street, City, State, Zip Code) | | Phone | Fax |
| | Signature | | Date | |

Updated: 7-18-11 v 1.5.

MM 000323

EXHIBIT 5
81

# Exhibit 6

EXHIBIT 6
82



From: Smith, Reuben <reubens@amazon.com>
Date: Thu, Dec 28, 2017 at 11:31 AM
Subject: RE: Updated Dr's Note For Leave #17110300818
To: Marcellus McMillian <marcellusmcmillian@gmail.com>


Nice! –


Keep me posted.


Regards,



MM 000212

EXHIBIT 6
83

Reuben Smith

**Sr. Human Resources Assistant, ONT Empire (ONT2/3/4)**

*North American Fulfillment*

e: reubens@amazon.com



Explore these links below...



www.amazonfulfillmentcareers.com

Work hard. Have fun. Make history.

**From:** Marcellus McMillian [mailto:marcellusmcmillian@gmail.com]
**Sent:** Monday, December 18, 2017 2:21 PM
**To:** Smith, Reuben <reubens@amazon.com>
**Subject:** RE: Updated Dr's Note For Leave #17110300818

Yes I sent it to them also...

On Dec 18, 2017 10:11 AM, "Smith, Reuben"
<reubens@amazon.com> wrote:

Hi there, Marcellus –

I'm asking if you sent your doctor's note to the LOA team, as its supposed to be
addressed.

MM 000213

EXHIBIT 6
84

Regards,

Reuben Smith

**Sr. Human Resources Assistant, ONT Empire (ONT2/3/4)**

*North American Fulfillment*

e: reubens@amazon.com



Explore these links below...

www.amazonfulfillmentcareers.com

Work hard. Have fun. Make history.

**From:** Marcellus McMillian [mailto:marcellusmcmillian@gmail.com]
**Sent:** Monday, December 18, 2017 10:09 AM
**To:** Smith, Reuben <reubens@amazon.com>
**Subject:** RE: Updated Dr's Note For Leave #17110300818

Not sure what you mean but the Dr has requested more time...the updated Dr note was for that.

On Dec 18, 2017 6:41 AM, "Smith, Reuben" <reubens@amazon.com> wrote:

MM 000214

EXHIBIT 6
85

Additionally, you were able to do this timely?

Please see attached for the LOA notification returning you to work on December 16th.

Regards,

Reuben Smith

**Sr. Human Resources Assistant, ONT Empire (ONT2/3/4)**

*North American Fulfillment*

**e:** reubens@amazon.com



Explore these links below...

www.amazonfulfillmentcareers.com

Work hard. Have fun. Make history.

**From:** Smith, Reuben
**Sent:** Sunday, December 17, 2017 2:41 PM
**To:** 'Marcellus McMillian' <marcellusmcmillian@gmail.com>; accommodations <accommodations@amazon.com>
**Subject:** RE: Updated Dr's Note For Leave #17110300818

MM 000215

EXHIBIT 6
86

Hi there, Marcellus –

Thank you for keeping me posted! <mark>Please note, I will be secondary communication, as you will need to be owning your communication with the LOA team.</mark> Please let me know should you need any guidance.

Regards,

Reuben Smith

Sr. Human Resources Assistant, ONT Empire (ONT2/3/4)

*North American Fulfillment*

e: reubens@amazon.com



Explore these links below…



www.amazonfulfillmentcareers.com

Work hard. Have fun. Make history.

**From:** Marcellus McMillian [mailto:marcellusmcmillian@gmail.com]
**Sent:** Friday, December 15, 2017 2:58 PM
**To:** accommodations@amazon.com>
**Cc:** Smith, Reuben <reubens@amazon.com>
**Subject:** Updated Dr's Note For Leave #17110300818

MM 000216

EXHIBIT 6
87

You will find the updated letter from the Dr Attached to update my leave. I will also be requesting from the Dr's to forward information regarding treatment to the reed group that is taking care of the claim I guess....



Marcelius J. Millian
Advertising Agent, MJM Enterprises

3651 S. La Brea Ave # 227 Los Angeles,
CA 90016

Like us on Facebook

---------- Forwarded message ----------
From: "AmazonAM@reedgroup.com"
<AmazonAM@reedgroup.com>
To: "Smith, Claudette" <smiicla@amazon.com>, "Smith, Lauren"
<sitzenst@amazon.com>, "McGuire, Grace"
<mcggrace@amazon.com>, "Amjad, Sonia"
<amjasoni@amazon.com>, "Bustamante, Priscilla"
<bustamap@amazon.com>, "Hernandez, Alyssa"
<healyssa@amazon.com>, "Smith, Reuben"
<reubens@amazon.com>, "Solorio, Jesse"
<jsolori@amazon.com>, "Prather, Denicia JP"
<deniciap@amazon.com>
Cc:
Bcc:

MM 000217

EXHIBIT 6

Date: Wed, 13 Dec 2017 19:24:34 +0000
Subject: Return-to-Work Notice for Marcellus McMillian, Employee
ID: 101953050, Case Number: 17110300818

Marcellus McMillian has been released to return to work full duty
on 12/16/2017. If the employee does not return to work, please
reply to this email to notify the Leave of Absence and
Accommodations (LOAA) team. Note: Fulfillment Center
employees who take a leave of absence that meets or exceeds a
duration of 90 consecutive days, may need retraining upon their
return to work. Manager and HR, please let the learning manager
know if re-training is required.

## Claim Status Summary
The below chart provides a summary status of all covered plans
associated with Marcellus McMillian's absence.

| Plan Name | Decision Status | Decision Date | From | Through |
|---|---|---|---|---|
| Amazon Medical Leave of Absence | Pending | 12/11/2017 | | |
| Amazon Medical Leave of Absence | Approved | 11/25/2017 | 11/05/2017 | 11/29/2017 |
| Amazon STD Medical | Pending | 12/12/2017 | | |
| Amazon STD Medical | Approved | 11/25/2017 | 11/05/2017 | 11/29/2017 |
| California Family Rights Act (CFRA) | Denied | 11/06/2017 | 11/05/2017 | 11/05/2017 |
| Family and Medical Leave Act | Denied | 11/06/2017 | 11/05/2017 | 11/05/2017 |

IMPORTANT: If you believe you are receiving this email in error,
please contact the Leave of Absence and Accommodations
(LOAA) team at 1-888-892-7180, option 1 immediately.
Note: Fulfillment Center employees who take a leave of absence
that meets or exceeds a duration of 90 consecutive days, may
need retraining upon their return to work.

MM 000218

EXHIBIT 6
89

---------------------------------------- This message, and any attachments to it, may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are notified that any use, dissemination, distribution, copying, or communication of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately by return e-mail and delete the message and any attachments. Thank you.

    

MM 000219

EXHIBIT 6
90