Griselda S. Rodriguez, Esq., State Bar No. 303049
Griselda@rodrigueztran.com
Derek T. Tran, Esq., State Bar No. 295917
Derek@rodrigueztran.com
Jorge A. Guardado, Esq., State Bar No. 299505
Jorge@rodrigueztran.com
RODRIGUEZ & TRAN, LLP
631 South Olive Street, Suite 820
Los Angeles, California 90014
Telephone Number: (213) 325-3024
Facsimile Number:  (213) 325-3027

Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
225 Santa Monica Boulevard, Suite 700
Santa Monica, California 90401
Telephone Number: (310) 860-0770
Facsimile Number:  (310) 860-0771

Attorneys for Mr. McMillian,
MARCELLUS MCMILLIAN

# THE UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MARCELLUS MCMILLIAN, | ) Case No.:  2:19-cv-02121-MWF-JCx |
| | ) |
| Mr. McMillian, | ) **The Honorable Michael W. Fitzgerald** |
| | ) |
| vs. | ) **PLAINTIFF MARCELLUS** |
| | ) **MCMILLIAN'S MEMORANDUM OF** |
| GOLDEN STATE FC LLC, AMAZON | ) **POINTS AND AUTHORITIES IN** |
| FULFILLMENT SERVICES, INC., | ) **OPPOSITION TO DEFENDANTS'** |
| AMAZON.COM SERVICES, INC., | ) **MOTION FOR SUMMARY JUDGMENT** |
| AMAZON.COM, INC., DEVON | ) **OR, IN THE ALTERNATIVE, PARTIAL** |
| | ) **SUMMARY JUDGMENT** |

| | |
|---|---|
| 1 | FRANKLIN, and DOES 1 to 100, inclusive, |
| 2 | )  (Filed concurrently with Statement of Genuine )  Disputes of Material Facts; Declaration of |
| 3 | Defendants.  )  Griselda S. Rodriguez; Declaration of )  Marcellus McMillian; Plaintiff's Objections to |

1    FRANKLIN, and DOES 1 to 100,          )
     inclusive,                           )  (Filed concurrently with Statement of Genuine
2                                         )  Disputes of Material Facts; Declaration of
                                          )  Griselda S. Rodriguez; Declaration of
3            Defendants.                  )  Marcellus McMillian; Plaintiff's Objections to
                                          )  Evidence; Plaintiff's Appendix of Evidence;
4                                         )  Plaintiff's Notice of Filing of Cited
                                          )  Deposition Excerpts; [Proposed] Order
5                                         )  Denying Summary Judgment)
                                          )
6                                         )
                                          )  Date:          March 16, 2020
7                                         )  Time:          10:00 a.m.
                                          )  Courtroom:     5A
8                                         )
                                          )  Trial Date:    June 23, 2020
9                                         )  Action Filed:  January 11, 2019

TABLE OF CONTENTS

1.   INTRODUCTION ...................................................................................... 1

2.   STATEMENT OF FACTS ......................................................................... 2

   A.   Mr. McMillian's Initial Request Is Approved As A Leave As An
        Accommodation. .................................................................................. 2

   B.   Mr. McMillian Followed Defendants' Policies And Procedures. ......................... 2

   C.   Defendants' Policies And Procedures Are Unclear, Nonetheless Mr. McMillian
        Continues To Follow The Process He Is Aware Of. .................................... 4

   D.   Defendants, Tired Of Mr. McMillian's Extension Requests, Begin Straying
        From Their Policies By Picking And Choosing When To Enforce Them. ........... 5

   E.   Defendants Have Numerous Types of Leaves, Leave As An Accommodation Is
        Always Processed In-House. ................................................................. 7

   F.   Defendants Fail To Follow Company Attendance Policies and Procedures ........ 7

   G.   Mr. McMillian Is Prematurely Terminated On May 3, 2018 ............................. 9

   H.   Patterson Investigates Mr. McMillian's Leave Of Absence Denial On June 21,
        2018, Concludes Mr. McMillian's Case Should Have Been Reopened. ........... 10

   I.   Defendants Contingent Offer Of Reinstatement Was Nothing More Than A
        Strategic Litigation Tactic Devised By Lawyers. .................................... 11

3.   LEGAL STANDARD ON SUMMARY JUDGMENT .................................................. 11

   A.   The Applicable Summary Judgment Standard. ......................................... 11

   B.   Direct and Circumstantial Evidence Can Defeat Summary Judgment. ............. 11

4.   ARGUMENT .......................................................................................... 12

   A.   Mr. McMillian's Claim for Failure to Accommodate Prevails (Fourth Cause of
        Action). ...................................................................................... 12

        (1)  Mr. McMillian Did Not Request an Indefinite Leave ............................... 12

   B.   Mr. McMillian's Claim for Failure to Engage in the Interactive Process Prevails
        (Fifth Cause of Action) .................................................................... 15

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

C.   Mr. McMillian's Claim for Disability Discrimination Prevails (First Cause of Action) ................................................................................... 16

    (1)  Mr. McMillian Can Establish a Prima Facie Case ....................................... 16

    (2)  Amazon Did Not Have a Legitimate Reason for Termination ................... 17

    (3)  Mr. McMillian Can Establish Pretext ........................................ 18

D.   Mr. McMillian's Claim for Retaliation Prevails (Eighth Cause of Action) ........ 19

E.   Mr. McMillian's Claim for Wrongful Termination Prevails (Ninth Cause of Action) ................................................................................... 19

F.   Mr. McMillian's Claim for Disability Based Harassment Prevails (Second Cause of Action) .............................................................................. 20

G.   Mr. McMillian's Claim for Failure to Prevent Discrimination and Harassment Prevails (Third Cause of Action) .................................................... 21

H.   Mr. McMillian's Claims for Negligent Supervision Prevails (Seventh Cause of Action) .......................................................................... 22

I.   Mr. McMillian's Claim for Intentional Infliction of Emotional Distress Prevails (Tenth Cause of Action) ...................................................... 22

J.   Mr. McMillian's Claim for Breach of Contract Prevails (Sixth Cause of Action) ................................................................................... 23

K.   Mr. McMillian's Claims for Damages Prevail ............................................ 23

    (1)  Mr. McMillian Can Recover Economic Damages After Refused Reinstatement ........................................................................ 23

    (2)  Mr. McMillian Can Recover Punitive Damages .................................. 24

5.   *CONCLUSION* ........................................................................ 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Accardi v. Superior Court* 17 Cal.App.4th 341 (1993)  20

*Aguilar v. Atlantic Richfield Co.* 25 Cal.4th 826 (2001)  11

*Alejandro v. ST Micro Elecs., Inc.* 178 F. Supp. 3d 850 (N.D. Cal. 2016)  16

*Ash v. Tyson Foods, Inc.* 546 U.S. 454 (2006)  12

*Batarse v. Service Employees Internat. Union, Local 1000* 209 Cal.App.4th 820 (2012)  12

*Beck v. University of Wisconsin Board of Regents* 75 F.3d 1130 (7th Cir. 1996)  14, 16

*Boehm v. American Brodcasting Co., Inc.* 929 F.2d 482, 485 (9th Cir. 1991)  24

*Brannon v. Luco Mop Co.*, 521 F.3d 843 (8th Cir. 2008)  14

*Caldwell v. Paramount Unified School Dist.,* 49 Cal.App.4th 189 (1996)  19

*Catalano v. Sup.Ct.* 82 Cal.App.4th 91 (2000)  24

*Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728 (9th Cir. 2011)  16

*Doe v. Dep't of Corr. & Rehab* 43 Cal. App. 5th 721 (2019)  15

*Flait v. North American Watch Corp.* 3 Cal.App.4th 467 (1992)  18

*Flowmaster, Inc. v. Superior Court* 16 Cal.App.4th 1019 (1993)  11

*Foley v. Interactive Data Corp.* 47 Cal.3d 654 (1988)  23

*Ford Motor Co. v. Equal Employment Opportunity Commission* 458 U.S. 219 (1982)  24

*Furtado v. State Personnel Bd.* 212 Cal.App.4th 729 (2013)  17, 18

*Garcia-Ayala v. Lederle Parenterals, Inc.* 212 F.3d 638 (1st Cir. 2000)  13

*Gelfo v. Lockheed Martin Corp.* 140 Cal.App.4th 34 (2006)  15

*Godwin v. Hunt Wesson, Inc.* 150 F.3d 1217 (9th Cir. 1998)                                      12

*Graves v. Finch Pruyn & Co., Inc*  353 F. App'x 558 (2d Cir. 2009)                              14

*Guthrey v. State*  63 Cal.App.4th 1108 (1998)                                                   20

*Hanson v. Lucky Stores, Inc.*  74 Cal.App.4th 215 (1999)                                        18

*Harris v. Forklift Systems, Inc.* 510 U.S. 17 (1993)                                            20

*Heard v. Lockheed Missiles & Space Co*. 44 Cal.App.4th 1735, 1751 (1996)                        17

*Hersant v. Calif. Dept. of Social Services* 57 Cal.App.4th 997 (1997)                        17, 18

*Hoch v. Allied-Signal, Inc*. 24 Cal.App.4th 48 (1994)                                           24

*Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245 (2000)                                  12, 14, 15

*Kelly v. Stamps.com Inc.* 135 Cal.App.4th 1088 (2005)                                           12

*Khajavi v. Feather River Anesthesia Med. Group*  84 Cal.App.4th 32 (2000)                       23

*Luke v. Bd. Of Trustees Fla. A&M Univ.* 674 F. App'x 847, 850 (11th Cir. 2016)                  14

*McDonnell Douglas Corp. v. Green*  411 U.S. 792 (1973)                                          12

*McLain v. Great Am. Ins. Cos.* 208 Cal.App.3d 1476 (1989)                                       23

*Miller v. Department of Corrections*  36 Cal.4th 446 (2005)                                     20

*Moran v. Selig*, 447 F.3d 748 (9th Cir. 2006)                                                   17

*Morgan v. Regents of the University of California*  88 Cal.App.4th 52 (2001)                    12

*Murphy v. Sampson* 525 F. App'x 703 (10th Cir. 2013)                                            15

*Nadaf-Rahrov v. Neiman Marcus Group, Inc*, 166 Cal.App.4th 952 (2008)                   12, 14, 17

*Nunes v. Wal-Mart Stores, Inc*., 164 F.3d 1243 (9th Cir. 1999)                                  13

*O'Mary v. Mitsubishi Electronics America, Inc.* 59 Cal.App.4th 563 (1997)                       12

*Ortiz v. Bk. Of Am. Nat. Trust Sav. Ass'n* 852 F.2d 383, 387 (9th Cir. 1987)                    24

*Ortiz-Martinez v. Fresenius Health Partners, PR, LLC*, 853 F.3d 599 (1st Cir 2017)              14

*Passantino v. Johnson & Johnson*  212 F.3d 493 (9th Cir. 2000)   18

*Roby v. McKesson Corp.* 47 Cal.4th 686 (2009)   20

*Roddy v. City of Villa Rica, Ga.*, 536 F. App'x 995, 1001 (11th Cir. 2013)   15

*Sandell v. Taylor-Listug, Inc.* 188 Cal.App.4th 297 (2010)   17

*Scotch v. Art Institute of California*, 173 Cal.App.4th 986 (2009)   14

*Sheffield v Los Angeles County Dep't of Social Services*,
    109 Cal.App.4th 153 (2003)   21

*Soria v. Univision Radio Los Angeles, Inc.*, 5 Cal.App.5th 570 (2016)   18

*Spitzer v. Good Guys, Inc.,* 80 Cal.App.4th 1376, 1384-85 (2000)   13

*Swanson v. Morongo Unified School Dist.* 232 Cal.App.4th 954 (2014)   15

*Templeton v. Neodata Services, Inc.* 162 F.3d 617, 618-619 (10th Cir. 1998)   14

*Walton v. Mental Health Association of Southeastern Pennsylvania* 168 F.3d
    661, 671 (3rd Cir. 1999)   14

*Yanowitz v. L'Oreal USA, Inc.*,
    36 Cal.4th 1028 (2005)   19

**Statutes**

Cal. Gov't Code § 12940(k)   24

Cal. Gov't. Code §12940(m)   14

Labor Code § 2922   27

**Regulations**

2 Cal. Code Regs.   14

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.  INTRODUCTION

Defendants Golden State FC, LLC., Amazon Fulfillment Services, Inc., Amazon.com Services, Inc., and Amazon.com, Inc.'s (collectively "Defendants") motion for summary judgment and adjudication attempts to hide their violation of law. Defendants, admittedly by their own testimony, failed to accommodate Plaintiff Marcellus McMillian's ("Mr. McMillian") disability leave. There is contradictory testimony as to how policies were implemented and followed. Further, Defendants' determination of Mr. McMillian's doctor notes as an indication of indefinite leave is a question of material fact that is to be left to the jury to determine. Defendants continuously accommodated Mr. McMillian's extension requests until they suddenly chose not to. The evidence, as well as Defendants' own admissions, establish that Defendants' motions cannot be granted in any form.

A reasonable jury could find that Mr. McMillian's leave of absence **was not** an undue burden nor was it indefinite. Defendants freely discriminated, harassed and retaliated against employees with disabilities, and at their discretion, used their policies as a shield whenever they desired.

- Mr. McMillian's leave was not indefinite. Dr. William Ramirez ("Dr. Ramirez") treated Mr. McMillian every week, estimating a return to work every two weeks.
- Defendants had three different departments: Accommodations; Leaves of Absence (which included various types of leaves); and Leave as an Accommodation.
- Mr. McMillian did not qualify for and was in fact denied a Leave of Absence.
- Mr. McMillian qualified for a Leave as an Accommodation; managed only by Defendants and not the Reed Group ("Reed"). Defendants were responsible for Mr. McMillian's leave process and Mr. McMillian *always* communicated with Defendants.

Mr. McMillian's other claims that are premised on alleged failure to accommodate will also survive. For the reasons stated above and further explained below, Defendants'

motion cannot be granted.

## 2. STATEMENT OF FACTS

### A. Mr. McMillian's Initial Request Is Approved As A Leave As An Accommodation.

On January 11, 2017, Plaintiff Marcellus McMillian was hired as a part-time employee working in Defendants' San Bernardino warehouse and became a full-time employee in March 2017. (Declaration of Marcellus McMillian ("Pl. Decl."), ¶¶2-3.)

Mr. McMillian was involved in a car accident on August 3, 2017 and began seeing Dr. Ramirez for his back injuries. Dr. Ramirez placed Mr. McMillian off work through September 1, 2017. Mr. McMillian submitted his disability statement to accommodations@amazon.com. (Plaintiff's concurrently filed Statement of Genuine Disputes of Material Fact ("SGD"), Nos. 2, 3) Mr. McMillian was approved for a one-month leave and received a letter from Tamisha Dennis ("Dennis") qualifying him for leave as an accommodation. (Pl. Decl. ¶8.) Dennis was designated as Defendants' 30(b)(6) witness pertaining to accommodations and testified Defendants offer several types of leaves. If an employee did not qualify for any leaves, they were placed on a leave as an accommodation by default. (Deposition of Tamisha Dennis ("Dennis Depo."), 84:1-15, 117:16-118:6, 119:23-120:2.) Further, leaves as an accommodation are not outsourced to Reed at all and are handled in-house by Defendants. (Dennis Depo., 128:6-15, 139:2-140:4.)

### B. Mr. McMillian Followed Defendants' Policies And Procedures.

Mr. McMillian returned from leave on September 2, 2017. Mr. McMillian could not stand for an entire shift of 10-14 hours because he was experiencing back pain; the pain caused him to take intermittent sick days. (SGD No. 12.) Dr. Ramirez continued to treat Mr. McMillian and placed him off work through November 19, 2017. (Pl. Decl. ¶12.) Mr. McMillian submitted his disability statement to accommodations@amazon.com; just like before. Mr. McMillian understood the process was correct. (Pl. Decl. ¶13.)

Because Mr. McMillian's leave was categorized as a leave as an accommodation,

Defendants had sole and complete discretion in following their own policies and procedures to approve or deny Mr. McMillian's leave. (Dennis Depo., 128:6-15, 139:2-140:4.) What followed is a series of instances wherein Defendants used their process to harass and discriminate against Mr. McMillian.

Defendants contend that Mr. McMillian did not engage in a good faith interactive process because his disability statements were submitted late, yet on many occasions, disability statements were often accepted after the return to work date had lapsed. (SGD Nos. 20, 46.) Defendants fail to provide evidence that Defendants informed Mr. McMillian that the disability statements were insufficient and/or provided untimely. (Dennis Depo., 183:8-11.) Dennis testified that as long as Mr. McMillian submitted his medical documentation, per Defendants' policies, it was their responsibility to ensure the documentation ended up at the correct department. Dennis further testified Mr. McMillian followed Defendants policies for his request for accommodation and leave. (SGD No. 76.)

On November 16, 2017, Mr. McMillian saw Dr. Ramirez. His doctor placed him off work through November 30, 2017. On November 16, 2017, Defendants' welcome back team (welcomeback@amazon.com) emailed Mr. McMillian. On November 17, 2017, Mr. McMillian replied with his updated disability statement reflecting the requested extension of his leave. On November 21, 2017, Reuben Smith ("R. Smith"), Senior Human Resources Assistant, reached out to Mr. McMillian. Mr. McMillian now forwarded the disability statement to R. Smith. (SGD Nos. 19, 20.)

On November 22, 2017, AmazonAM@reedgroup.com confirmed receipt of Mr. McMillian's medical documentation but Mr. McMillian had not personally sent them any documentation; he was confused. The email indicated "AmazonAM" and Mr. McMillian understood it to mean he was still communicating with Defendants. (SGD No. 20.)

On November 28, 2017 and November 30, 2017, Mr. McMillian saw Dr. Ramirez. His doctor placed him off work through December 16, 2017. On November 30, 2017, just as he did previously, Mr. McMillian submitted his disability statement to accommodations@amazon.com and R. Smith at reubens@amazon.com. (SGD No. 27.)

On December 12, 2017, Mr. McMillian saw Dr. Ramirez. His doctor placed him off work through December 30, 2017. On December 15, 2017, just as he did previously, Mr. McMillian submitted his disability statement to accommodations@amazon.com and to R. Smith at reubens@amazon.com. (SGD Nos. 29, 30.)

## C. Defendants' Policies And Procedures Are Unclear, Nonetheless Mr. McMillian Continues To Follow The Process He Is Aware Of.

On December 7, 2017, R. Smith replied to Mr. McMillian asking if he had sent his medical documentation to the LOA team. Mr. McMillian was confused because he understood the LOA team to be Defendants and he had already done that. (SGD No. 31.) On December 18, 2017, Defendants confirmed receipt of his medical documentation. But, on December 20, 2017, after receiving numerous phone calls regarding his return to work date, Mr. McMillian became concerned and sent emails to accomodations@amazon.com and AmazonAM@reedgroup.com. The phone calls caused Mr. McMillian a lot of stress and confusion; documentation had been submitted as always. In a letter dated December 26, 2017 Defendants informed Mr. McMillian his leave was approved. (SGD No. 35.)

On December 26, 2017, Mr. McMillian saw Dr. Ramirez. His doctor placed him off work through January 13, 2018. On December 28, 2017, as previously, Mr. McMillian submitted his disability statement to accommodations@amazon.com and AmazonAM@reedgroup.com. (SGD Nos. 36, 37) Mr. McMillian submitted his disability statements exactly the way had done so before, this time, to cover all tracks, he included Amazon@reedgroup.com. On January 4, 2018, Defendants notified Mr. McMillan they were missing his previous disability statement and certification form. (Pl. Decl. ¶37.) Mr. McMillian had no reason to believe his leave lapsed because he submitted all disability statements and kept his employer informed. The disability statements were proven to be sufficient documentation, and he sent them as soon as they were available. (SGD No. 10.)

On January 9, 2018, Mr. McMillian saw Dr. Ramirez. He placed him off work through January 27, 2018. This time, Dr. Ramirez faxed the disability statement directly to Defendants. In a letter dated January 9, 2018, Defendants informed Mr. McMillian his

leave was approved. (Pl. Decl. ¶38.)

On January 25, 2018, Mr. McMillian saw Dr. Ramirez. Because Mr. McMillian was still experiencing back pain, Dr. Ramirez placed him off work through February 11, 2018. On January 31, 2018, as previously, Mr. McMillian submitted his disability statement to AmazonAM@reedgroup.com and accommodations@amazon.com. What followed was a series of emails to Mr. McMillian stating he was unexcused and absent from work and Mr. McMillian, confused, contacted Defendant's Employee Resource Center ("ERC"). Mr. McMillian re-submitted all his medical documentation and was in communication with Defendants.  (Pl. Decl. ¶¶39-46; SGD No. 43.)

On February 13, 2018, Mr. McMillian saw Dr. Ramirez. He placed him off work through February 27, 2018. Mr. McMillian was struggling with his health situation and sent his disability statement as soon as it was available to him but he was still receiving unexcused absence notices. On February 19, 2018, Mr. McMillian communicated with Defendants, explaining he had been out on a medical leave and requested they update their system. Mr. McMillian kept Defendants informed and could not understand the confusion. Defendants confirmed they had in fact received the medical documentation and explained the process would take three to five days to resolve. In a letter dated February 23, 2018, Defendants informed Mr. McMillian his leave was  denied but in the claim status summary chart, the request showed approved under Defendants' Medical Leave of Absence. (Pl. Decl. ¶¶47-51; SGD Nos 45, 46.)

**D.    Defendants, Tired Of Mr. McMillian's Extension Requests, Begin Straying From Their Policies By Picking And Choosing When To Enforce Them.**

On February 26, 2018, Mr. McMillian submitted a leave extension request. He spoke with Defendants by telephone and gave them notice that he would be seeing his doctor again. Mr. McMillian saw Dr. Ramirez on February 27, 2018 and was placed off work through March 13, 2018. Mr. McMillian submitted his disability statement on February 27, 2018; as soon as it was available to him. In a letter dated March 9, 2018, Defendants informed him the leave was denied. Interestingly, the case summary chart showed his

leave was denied beginning on February 28, 2018 but the decision had not been made until March 9, 2018, ten days later; this was very confusing for Mr. McMillian. (Pl. Decl. ¶¶53-54; SGD Nos. 48, 49.)

On March 13, 2018, Mr. McMillian did not return to work because he continued to experience a lot of pain and did not want to undo the progress he had achieved thus far. Mr. McMillian saw Dr. Ramirez on March 15, 2018 and was placed off work through April 1, 2018. (Pl. Decl. ¶¶55-56.)

On March 20, 2018, Mr. McMillian learned Defendants again were claiming missing paperwork. He informed Nadine Lee ("Lee") at jerlee@amazon.com, accommodations@amazon.com, and AmazonAM@reedgroup.com of his request to have Dr. Ramirez to fax his disability statement to Reed. Mr. McMillian submitted two disability statements that excused him through April 1, 2018. Further, Mr. McMillian gave Defendants advance notice regarding a planned surgery on April 10, 2018 and informed Defendants they should expect another extension request to follow. (Pl. Decl. ¶57; SGD No. 54.)

On April 2, 2018, Mr. McMillian saw Dr. Ramirez and was placed off work for a longer period of time. (Pl. Decl. ¶58.)

On May 1, 2018, Mr. McMillian saw Dr. Ramirez. He placed him off work through May 13, 2018. Mr. McMillian was confused learning his approved leave had allegedly ended sometime in February 2018. He was in constant communications with Defendants and could not understand why Defendants had inaccurate information. This was causing Mr. McMillian a severe amount of distress.  (SGD No. 61.)

On May 3, 2018, Caitlin Favati ("Favati") emailed Mr. McMillian stating the "LOA partners" confirmed his leave ended in February 2018 due to a lack of timely communication, and he was being terminated for Job Abandonment. (SGD No. 62.)

On May 15, 2018, Mr. McMillian saw Dr. Ramirez. He placed him off of work through June 19, 2018. That was the last disability statement. On June 19, 2018, Dr. Ramirez released Mr. McMillian to return to work in full capacity, but Mr. McMillian did

not have a job to return to. (Pl. Decl. ¶72.)

### E. Defendants Have Numerous Types of Leaves, Leave As An Accommodation Is Always Processed In-House.

Defendants did not want their employees to be aware of a third-party leave administrator and intentionally "branded" Reed as "My Leave" to keep them anonymous. (Dennis Depo., 126:12-20.) Adding more into the confusion, Defendants eventually comingled Reed's identity with their own by co-sharing the responsibilities of handling leaves of absence. (Dennis Depo., 112:9-14.)

Defendants' employees were not even aware of this third party, yet, Mr. McMillian's Senior HR Assistant in charge of his division, Favati, testifies that employees were solely responsible for working directly with Reed for any leave and submitting their documents. (Deposition of Caitlin Favati ("Favati Depo."), 13:24-14:1, 32:18-24, 98:8-23, 120:15-22.) Dennis testified to the opposite effect and that if documentation was sent to the wrong person, it was Defendants' responsibility to forward it to the correct department. (Dennis Depo., 33:14-34:4, 153:10-154:5, 180:21-181:5.) Further, Defendants handled **all** leaves as an accommodation in-house. Leaves as an accommodation were **never** outsourced to Reed. (Dennis Depo., 128:6-15, 139:2-140:4.)

With such contradictory testimony regarding the policies and procedures of Defendants, it is no wonder Mr. McMillian fell into Defendants trap and only a matter of time that Defendants would use lack of timely communication and delayed documentation to pretextually terminate Mr. McMillian.

### F. Defendants Fail To Follow Company Attendance Policies and Procedures.

Defendants approved Mr. McMillian's leave extension requests, despite any delays in providing documentation. (SGD No. 20.) Defendants allege Mr. McMillian's leave case closed on February 28, 2018 due to lack of documentation but he was not informed, and he continued to provide disability statements. Favati testified Defendants do not hold a policy that specifies a time-limit for employees to submit medical documentation. (Favati. Depo. 117:13-20.)

On March 9, 2018, Defendants notified Mr. McMillian his leave through March 13, 2018 was denied. It took 10 days for Mr. McMillian to be notified. Mr. McMillian did not know why Defendants had not received the previous submissions; he resubmitted his disability statements on March 20, 2018. (SGD Nos. 42, 52, 65.)

On April 21, 2018, Mr. McMillian received notification for unexcused absences. Mr. McMillian replied on April 22, 2018 attaching his disability statement and included Reed in the email. Mr. McMillian did exactly what was required of him. Mr. McMillian was not informed his documentation was insufficient in any way. (SGD Nos. 56, 57, 58.)

On April 25, 2018, Favati emailed Mr. McMillian again regarding unexcused absences. On April 26, 2018, Mr. McMillian replied to Favati stating he had been in contact with Defendants, submitted the documentation and just had a back procedure. He offered to forward anything she needed but did not receive a response.  (SGD No. 59.)

Defendants contend they have procedures in place that protect employees from being terminated when their absences are excused; the evidence shows they failed to follow their procedures. Amy Virden ("Virden"), Human Resource Manager, declared Defendants HR runs a daily attendance report and, "[W]hen an employee indicates they have been absent due to a medical issue, HR advises the employee on how to get that time excused through the leave of absence and/or accommodation process.  HR then instructs employees to contact the leave of absence or accommodation team to either initiate a new case or update their case manager. HR subsequently checks to see if there is a leave of absence or accommodation case pending or has excused the employee's missed time. (Declaration of Amy Virden ("Virden Decl."), ¶6.)

Favati, Senior HRA, was charged with "processing" Mr. McMillian's attendance report, leave status, and termination. Favati testified extensively about "her practice" of handling these types of situations, as opposed to Defendants procedures. Favati testified extensively about having received medical documentation from Mr. McMillian but seeing no responsibility as HR to forward the documentation to Reed. (Favati Depo., 154:12-24, 155:2-6.) If Defendants actually had a process, Favati did not follow it. Favati testified

that the notes in the attendance system could potentially be from weeks or even months prior, possibly not updated; this contradicts daily attendance reports. Favati was evasive when asked if she called Mr. McMillian upon receiving his emails. She further testified she did not know if she even contacted the LOA team. (SGD No. 42.)

Defendants' assertion that HR delayed terminating Mr. McMillian's employment as of March 9, 2018 due to lack of documentation is bogus. Mr. McMillian **continued** submitting sufficient medical documentation up until his termination. (SGD Nos. 53-61.)

### G.   Mr. McMillian Is Prematurely Terminated On May 3, 2018.

On May 3, 2018, while out on a medically necessitated leave, Defendants informed Mr. McMillian he was terminated for job abandonment. Scared and frustrated, Mr. McMillian called Defendants' My Leave team and spoke to Darrell Lake ("Lake"). Lake explained Mr. McMillian's claim was closed but assured Mr. McMillian it could be reopened and updated. Mr. McMillian emailed Favati to inform her and forwarded his previous email of April 22, 2018, including his disability statement. Favati chose not to forward Mr. McMillian's disability statement to anyone. (SGD No. 62; Favati Depo., 88:18-25, 89:2-9, 154:12-24, 155:2-6.)

Favati apparently could not recall if she spoke with Lake but confirmed that her decision was based solely on his denial of leave from February 28, 2018 and that any disability statements provided after that date meant nothing to her. (Favati Depo., 121:2-17, 125:18-25.) Favati ignored Mr. McMillian's medical documentation, did not consult with Lake from the My Leave team, and proceeded with prematurely terminating Mr. McMillian on May 3, 2018.

Dennis testified cases could be reopened but Defendants chose not to follow that policy for Mr. McMillian. (Dennis Depo., 132:21-133:5, 134:25-135:3, 135:9-23, 136:24-138:1, 155:23-156:10.) Favati testified reinstatement and reopening a leave case was possible and she had the power to do so, yet, could not do anything for Mr. McMillian's situation. (Favati Depo., 71:4-8, 75:5-20, 121:2-17.)

///

### H. Patterson Investigates Mr. McMillian's Leave Of Absence Denial On June 21, 2018, Concludes Mr. McMillian's Case Should Have Been Reopened.

In response to an inquiry request, on June 21, 2018, Regional Accommodations Manager, Mary Cortez Patterson ("Patterson") discovered Mr. McMillian was likely prematurely terminated. Patterson has extensive experience in Human Resources and was able to spot the wrongful termination right away. Patterson admits that Mr. McMillian's case was a red flag. (Deposition of Mary Cortez Patterson ("Patterson Depo."), 30:15-31:1, 31:10-16, 198:21-199:2; SGD Nos. 63-65, 67.)

Simultaneously at 10:47 AM on June 21, 2018, Patterson sent two emails. One email to ONT2-HR, ONT3-HR and Favati concerned about a likely premature termination. The other email to Reed, ONT2-HR, ONT3-HR and Favati, instructing Reed correct their leave process and for "the site" (i.e. the site's HR management, ONT2-HR, ONT3-HR and Favati) to reverse Mr. McMillian's termination. **She further instructed Reed to approve Mr. McMillian's leave through May 13, 2018.** (SGD No. 63; Appx. Ex. 59, 60.)

On June 25, 2018 at 6:24 PM, Patterson followed up on her email to Reed because Reed did not respond regarding her instruction to correct the leave. (Appx. Ex. 61.)

On June 26, 2018 at 2:03 PM, Reed replied only to Patterson informing her the documents she included in her June 21, 2018 email could not be processed because Mr. McMillian's leave had been denied on December 14, 2017 for short term disability and March 9, 2018 for his leave. Reed informed Patterson they would continue to look into the issue. (Appx. Ex. 62.)

On June 27, 2018 at 11:42 AM, Reed replied to Patterson's June 21, 2018 email, inexplicably timestamped at 11:16 PM, and informed her Reed was unable to reopen the case or update the leave. Reed stated Defendants must first reinstate Mr. McMillian. (Appx. Ex. 63.) Patterson never forwarded Reed's response to Defendants or followed up with Defendants regarding status of this issue. Despite Reed's offer to reverse the denial, Patterson did nothing. (Patterson Depo., 176:11-177:2, 196:18-197:2, 210:05-211:10.)

Dennis provides if Mr. McMillian's case was reopened, his negative UPT would

have been recoded to remove the negative hours. (Dennis Depo. 170:24-171:14.)

Favati testified she had the ability to reinstate employees but chose not to. (Favati Depo., 71:4-8, 75:5-20, 121:2-17.) The leave case was not reopened at Defendants' discretion. Dennis testified it was apparent that the case manager *chose* not to process the paperwork. (Dennis Depo. 158:23-159:7.) Favati testified that Defendants' rules and regulations could be applied at her discretion. (Favati Depo., 109:12-17, 110:5-25.)

Mr. McMillian was released to full duty on June 19, 2018 and could have returned to work but Defendants refused to accommodate him. (Pl. Decl., ¶72.)

## I.  Defendants Contingent Offer Of Reinstatement Was Nothing More Than A Strategic Litigation Tactic Devised By Lawyers.

Mr. McMillian filed his suit on January 11, 2019.  He is suddenly offered an alleged reinstatement opportunity on February 7, 2019. Defendants sent the contingent offer via email directly to Mr. McMillian's personal email. (SGD Nos. 69, 70; Appx. Ex. 57, 58.) Mr. McMillian replied, giving Defendants the benefit of the doubt, and spelled out the precise terms of his re-instatement, while also requesting basic protections to help avoid reliving hurtful and damaging experiences he was subjected to before he was illegally terminated. (SGD No. 71; Appx. Ex. 64.) Defendants never responded to his letter. Defendants relinquished their 1-year time limit for ex-employees to be rehired in an attempt to sweep Mr. McMillian's claims under the rug. This is another example of Defendants picking and choosing which policies to follow; to their own benefit.

## 3.  LEGAL STANDARD ON SUMMARY JUDGMENT

### A.  The Applicable Summary Judgment Standard.

A "party moving for summary judgment [or adjudication] bears the burden of per-suasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." *Aguilar v. Atlantic Richfield Co.* 25 Cal.4th 826, 850 (2001), *see also Flowmaster, Inc. v. Superior Court* 16 Cal.App.4th 1019, 1026 (1993).

### B.  Direct and Circumstantial Evidence Can Defeat Summary Judgment.

With *direct* evidence of discrimination, there is no need for inferences,

presumptions, or shifting burdens, rendering unnecessary the test set forth in *McDonnell Douglas Corp. v. Green*  411 U.S. 792 (1973); *see O'Mary v. Mitsubishi Electronics America, Inc.* 59 Cal.App.4th 563 (1997); *Morgan v. Regents of the University of California*  88 Cal.App.4th 52, 69-70 (2001); *Godwin v. Hunt Wesson, Inc.* 150 F.3d 1217, 1221 (9th Cir. 1998); *Kelly v. Stamps.com Inc.* 135 Cal.App.4th 1088, 1094 (2005); *Ash v. Tyson Foods, Inc.* 546 U.S. 454, 456 (2006).  Circumstantial evidence may also defeat summary judgment where it creates a triable issue with respect to whether the employer intended to discriminate" on an improper basis."  *Batarse v. Service Employees Internat. Union, Local 1000*  209 Cal.App.4th 820, 834 (2012).

## 4.  ARGUMENT

### A.  Mr. McMillian's Claim for Failure to Accommodate Prevails (Fourth Cause of Action)

Mr. McMillian makes his claim under the California Government Codes sections 12940 et seq, hereinafter referred to as the FEHA. California Government Code section 12940(m) states that it is unlawful "[f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee." Cal. Gov't. Code §12940(m). In short, employers in California must provide reasonable accommodations to employees. Sufficient evidence, both contested and uncontested, exists to substantiate Mr. McMillian's Failure to Accommodate claim against Defendants under the FEHA.

### (1)  Mr. McMillian Did Not Request an Indefinite Leave

Under FEHA, an employee with a disability is entitled to a reasonable accommodation, including a leave of no statutorily fixed duration, *provided that such accommodation does not impose an undue hardship on the employer.  Fuentes-Sanchez v. Swissport, Inc.*, 213 Cal.App.4th 1331, 1338 (2013); *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 263 (2000); 2 Cal. Code Regs. 11068(c). The mere fact that a leave has been repeatedly extended does not necessarily establish that a leave is indefinite. *Nadaf-Rahrov v. Neiman Marcus Group, Inc*, 166 Cal.App.4th 952, 989 (2008).

Mr. McMillian and Dr. Ramirez stated when they expected McMillian return to work. (SGD Nos. 16, 21) Neither characterized his leave as "indefinite," Dr. Ramirez cleared Mr. McMillian's return to work in June 19, 2017 without any restrictions.

Because an employer's duty to accommodate an employee is *continuous,* Defendants failed to accommodate Mr. McMillian here, where no undue hardship existed. *See Spitzer v. Good Guys, Inc.,* 80 Cal.App.4th 1376 (2000).

Mr. McMillian never requested an indefinite leave, nor is there any indication he needed an "indefinite" leave. The last request for leave an estimated return to work date of May 13, 2018. (SGD Nos. 60, 63). Defendants admitted receiving documentation, yet refused to grant the requested accommodation. Suggesting there was an issue of "indefinite" leave is simply false. Mr. McMillian presents a triable issue of fact regarding whether the leave he requested was an indefinite leave. The nature of his disability required repeated extensions, and it is up to the jury to decide whether those extensions were necessary.

### (2)   Mr. McMillian's Request for Numerous Extensions is Not Beyond the Point of Reasonableness and is a Triable Issue of Fact

A definite leave does not become an indefinite leave after a certain number of extensions. Rather, a reasonable number of extensions to a definitive leave depends entirely on the facts of the case. *Garcia-Ayala v. Lederle Parenterals, Inc.* 212 F.3d 638, 647 (1st Cir. 2000); *Nunes v. Wal-Mart Stores, Inc.,* 164 F.3d 1243, 1247 (9th Cir. 1999).

Here, Mr. McMillian demonstrates his requested extensions were reasonable. Dr. Ramirez saw Mr. McMillian on a weekly basis and would not be surprised if Mr. McMillian recovered within one month. Dr. Ramirez stated many factors contribute to whether a patient can return to work and had no doubt Mr. McMillian would recover (SGD No. 21). Mr. McMillian agreed and understood his return to work depended on a meeting-by meeting basis. He regularly saw his doctor hoping to return to work. (SGD No. 16). This is sufficient evidence to present a triable issue of fact to survive summary judgment.

Defendants' cited cases are inapposite. Employees in two of the cited cases failed to

show that their requested accommodations would actually lead to a return to work. *Brannon v. Luco Mop Co.*, 521 F.3d 843, 849 (8th Cir. 2008); *Luke v. Bd. Of Trustees Fla. A&M Univ.* 674 F. App'x 847 (11th Cir. 2016); *Graves v. Finch Pruyn & Co., Inc* 353 F. App'x 558, 561 (2d Cir. 2009). In the case of *Walton v. Mental Health Association of Southeastern Pennsylvania* 168 F.3d 661 (3rd Cir. 1999), the employer made a showing that Plaintiff's extended leave was an undue burden. Neither circumstance is present in this case. Therefore, Mr. McMillian's claim for failure to accommodate prevails.

### (3)   Mr. McMillian Submitted His Disability Statements As Soon As they Were Available to Him and Within a Reasonable Amount of Time.

It is a question of fact whether an employee failed to properly engage in a good faith interactive process, including whether he timely submitted supporting documentation to his employer. *Jensen* 85 Cal.App.4th at 266-267; *Beck v. University of Wisconsin Board of Regents* 75 F.3d 1130, 1135 (7th Cir. 1996).

The present case is distinguished factually from Defendant's cited cases, Mr. McMillian struggled with his health and sent his disability statements as soon within a reasonable amount of time. Mr. McMillian's claim for failure to accommodate prevails. (SGD No. 30.)

Contrary to Defendants' cited cases, Mr. McMillian did not fail to provide his disability statements, unlike the employee in *Ortiz-Martinez v. Fresenius Health Partners, PR, LLC*, 853 F.3d 599, 602-603 (1st Cir 2017). He also did not instruct his doctor to refuse to speak with Defendants as the employee did in *Templeton v. Neodata Services, Inc.* 162 F.3d 617 (10th Cir. 1998).

### (4)   Mr. McMillian Engaged in Good Faith in the Accommodations Process

Whether or not Mr. McMillian provided adequate return to work notices is a question of fact for the jury. They must judge the reasonableness of the return to work notices. *Nadaf-Rahrov* 166 Cal.App.4th at 989 (2008). Liability hinges on the objective circumstances surrounding the parties' breakdown in communication. *Scotch v. Art Institute of California*, 173 Cal.App.4th 986 (2009).

Defendants present no evidence that Mr. McMillian, as a matter of law, failed to engage in good faith in the accommodation process.

Defendants' cited case law is inapposite. Mr. McMillian has a certain return work date (SGD No. 21), unlike the employee in *Murphy v. Sampson* 525 F. App'x 703, 708 (10th Cir. 2013). Mr. McMillian's doctor provided much more than "a guess" regarding when he could return to work, and he did not state that Mr. McMillian's chances of returning to work were "slim" as in *Roddy v. City of Villa Rica, Ga*., 536 F. App'x 995 (11th Cir. 2013). Finally, Mr. McMillian did produce a detailed disability statement, and he did not refuse to sign a medical release like the employee in *Doe v. Dep't of Corr. & Rehab* 43 Cal. App. 5th 721, 739 (2019). For the forgoing reasons, Mr. McMillian's claim for Failure to Accommodate prevails.

## B. Mr. McMillian's Claim for Failure to Engage in the Interactive Process Prevails (Fifth Cause of Action)

California Government Code section 12940(n) states that it is unlawful "[f]or an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov't. Code §12940(n).

Two elements make up the claim for Failure to Engage in the Interactive Process. First, the employee must request an accommodation. Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith. *Gelfo v. Lockheed Martin Corp.* 140 Cal.App.4th 34, 54 (2006). "Once initiated, the employer has a continuous obligation to engage in the interactive process in good faith." *Swanson v. Morongo Unified School Dist.* 232 Cal.App.4th 954 (2014). It is a question of fact whether an employee failed to properly engage in a good faith interactive process, including whether he timely submitted supporting documentation to his employer. *Jensen*,

85 Cal.App.4th at 266-267; *Beck* 75 F.3d at 1135.

Defendants conclude Mr. McMillian's submissions were "unreasonably delayed," providing no evidence supporting their claim. Mr. McMillian provides extensive evidence he participated in the interactive process. Defendants obstructed the process; Favati had the ability to reinstate employees but chose not to. (Favati Depo., 71:4-8, 75:5-20, 121:2-17.) Dennis testified the case manager ***chose*** not to process paperwork. (Dennis Depo. 158:23-159:7.) Defendants' rules and regulations could be applied at Favati's discretion. (Favati Depo., 109:12-17, 110:5-20.)

Defendants' cited case law is in apposite. Plaintiff regularly communicated with Defendants, unlike the plaintiff in *Alejandro v. ST Micro Elecs., Inc* who regularly failed to communicate with his employer at all during frequent unscheduled absences. *Alejandro v. ST Micro Elecs., Inc*. 178 F. Supp. 3d 850, 863 (N.D. Cal. 2016). Mr. McMillian proposed an accommodation, a definite leave, that Defendants previously agreed was reasonable, unlike Plaintiff in *Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, who repeatedly suggested accommodations that his employer previously rejected as unreasonable. *Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 743 (9th Cir. 2011).

Ample evidence supports Mr. McMillian's claim for failure to engage in a good faith interactive process under the FEHA. Therefore, Mr. McMillian's claim prevails.

## C. Mr. McMillian's Claim for Disability Discrimination Prevails (First Cause of Action)

### (1) Mr. McMillian Can Establish a Prima Facie Case

Mr. McMillian's first cause of action is disability discrimination under California's Fair Employment and Housing Act (the FEHA). A plaintiff establishes a prima facie case of discrimination under the FEHA by proving that he "(1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Sandell v. Taylor-*

*Listug, Inc.* 188 Cal.App.4th 297, 310 (2010).

The prima facie burden is light; the evidence necessary to sustain the burden is minimal. *Heard v. Lockheed Missiles & Space Co*. 44 Cal.App.4th 1735 (1996). Generally an employee need only offer sufficient circumstantial evidence to give rise to a reasonable *inference* of discrimination. *Hersant v. Calif. Dept. of Social Services* 57 Cal.App.4th 997, 1002 (1997).

Here, undisputed evidence shows (1) Mr. McMillian suffered a disability. Dr. Ramirez diagnosed him with a lumbar sprain/strain, (2) He could perform his job duties with a reasonable accommodation of a definite leave. (3) He suffered adverse employment action because of his disability when Defendants terminated him while on leave for his disability.

Defendant's citation to *Moran v. Selig*, 447 F.3d 748 (9th Cir. 2006) is inapposite. *Moran* dealt with a claim under Federal Title VII. Plaintiff does not make a discrimination claim under Title VII. Title VII has the added requirement that plaintiffs show they were treated differently from employees who suffered from disabilities. The reasoning present in *Moran* is not applicable to this case.

### (2)   Amazon Did Not Have a Legitimate Reason for Termination

If the employee meets his prima facie burden, it is then incumbent on the employer to show that it had a legitimate, nondiscriminatory reason for its decision to terminate. *Furtado v. State Personnel Bd.* 212 Cal.App.4th 729, 744 (2013). To prevail on summary adjudication of the section 12940(a) claim, Defendant must show there is no triable issue of fact about Mr. McMillian's ability, with or without accommodation, to perform the essential functions of an available position that would not be a promotion. *Nadaf-Rahrov* 166 Cal.App.4th at 965.

Defendants claim they terminated Mr. McMillian because he abandoned his job; however, a trier of fact could ascertain that an employee who continues to communicate with his employer and submit disability paperwork has an interest in keeping their job. Defendants fail to prove that they had a legitimate reason for terminating Mr. McMillian.

### (3)   Mr. McMillian Can Establish Pretext

After Defendants make a showing of a legitimate business reason to terminate, the burden shifts back to the employee to produce substantial evidence the employer's given reason was either "untrue or pretextual." *Furtado* 212 Cal.App.4th at 744. Pretext may be demonstrated by showing "'the proffered reason had no basis in fact, the proffered reason did not actually motivate the discharge, or, the proffered reason was insufficient to motivate discharge.'" *Soria v. Univision Radio Los Angeles, Inc.*, 5 Cal.App.5th 570, 594 (2016), citing *Hanson v. Lucky Stores, Inc.* 74 Cal.App.4th 215, 224 (1999); see also *Hersant* 57 Cal.App.4th at 1005.

When adverse employment decisions are taken within a reasonable time after an employee exercises a right, causation may be inferred.  *Flait v. North American Watch Corp.* 3 Cal.App.4th 467, 479 (1992); *Passantino v. Johnson & Johnson* 212 F.3d 493, 507 (9th Cir. 2000).  Inconsistences in evidence can support a finding of pretext, especially when the "proffered reason for termination intertwines with the employee's disability." *Soria* 5 Cal.App.5th at 595.

Here, Defendant's proffered evidence supporting their alleged non-discriminatory reason for terminating Mr. McMillian is inconsistent. Defendants claim they terminated Mr. McMillian due to job abandonment. Further, Defendants argue Mr. McMillian submitted untimely statements, and they were forced to terminate him. However, Defendants extended Mr. McMillian's leave at least seven times prior to termination. (SGD No. 15.) Defendants approved Mr. McMillian's leave at least twice even after Plaintiff's leave had lapsed. (SGD No. 19, 38.)

Additionally, the proffered reason for termination intertwines with Mr. McMillian's disability. Mr. McMillian was absent from work precisely because of his disability; his doctor placed him off work for a set period of time each time.

Based on the forgoing reasoning, Mr. McMillian's claim for Disability Discrimination under the FEHA prevails.

///

### D.   Mr. McMillian's Claim for Retaliation Prevails (Eighth Cause of Action)

"[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042 (2005).

Once an employee establishes a prima facie case, the employer is required to offer a legitimate for the adverse employment action, then the presumption of retaliation no longer applies and the burden shifts back to the employee to prove intentional retaliation. *Id.* "Retaliation claims are inherently fact-specific, and the impact of an employer's action in a particular case must be evaluated in context…" *Id.* at 1052. *See also McCoy v. Pacific Maritime Assn.* 216 Cal.App.4th 283, 299 (2013).

In actuality, in a discrimination or retaliation case, "a plaintiff's *prima facie* burden is minimal." *Caldwell v. Paramount Unified School Dist.,* 49 Cal.App.4th 189, 197 (1996).

Mr. McMillian established his prima face case. He engaged in a protected activity: requested an extension due to medical needs. His employer terminated him after he asked for an extension. (SGD No. 62.) Evidence indicates a causal link exists. The termination came close in time to his request for an extension to his leave. (SGD Nos. 60-62.) He needed to recover from his injury, and could not work per his doctor's orders. Defendants ostensibly terminated Mr. McMillian for job abandonment, but he was absent from work precisely because of his disability.

Defendants claim that Mr. McMillian's termination was non-discriminatory. However, as explained above, Defendant's proffered reason for termination was pretextual. Therefore, Mr. McMillian's claim for Retaliation under the FEHA prevails.

### E.   Mr. McMillian's Claim for Wrongful Termination Prevails (Ninth Cause of Action)

As argued above, Mr. McMillian can establish he was subject to disability discrimination, harassment, and retaliation under the FEHA. Therefore, his claim for

wrongful termination prevails.

### F.   Mr. McMillian's Claim for Disability Based Harassment Prevails (Second Cause of Action)

To establish a disability harassment claim based on hostile work environment, a plaintiff must show that she or he was subjected to unwelcome conduct based on disability that was sufficiently severe **or** pervasive as to create a hostile or abusive working environment. *Guthrey v. State*  63 Cal.App.4th 1108, 1122 (1998).   The totality of circumstances must be considered in determining whether the conduct was sufficiently severe or pervasive to constitute a hostile work environment. *Accardi v. Superior Court* 17 Cal.App.4th 341 (1993).   The determination of whether an environment is sufficiently hostile or abusive, is a fact intensive question. *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 23 (1993); *see also Miller v. Department of Corrections*  36 Cal.4th 446, 462 (2005). Further, the harassment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Harris*, 510 U.S. 17, 21-22.

The court in *Rob v. McKesson* stated: "Some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message." *Roby v. McKesson Corp.* 47 Cal.4th 686, 709 (2009).

Here, Defendants subjected Mr. McMillian to a confusing accommodation process. (SGD No. 3.) Instead of aiding Mr. McMillian in completing this important process, Defendants callously ignored him. (Favati Depo., 71:4-8, 75:5-20, 109:12-17, 110:5-20; 121:2-17; Dennis Depo. 158:23-159:7.)

While actions Defendant took with Mr. McMillian could be managerial in nature, the method in which Defendants took those managerial actions were harassing. Managerial actions "communicat[ed] a hostile message" to Mr. McMillian that his disability was not imperative. Therefore, Plaintiff's claim for disability harassment survives.

///

### G. Mr. McMillian's Claim for Failure to Prevent Discrimination and Harassment under FEHA Prevails (Third Cause of Action)

Cal. Govt. Code § 12940(k) provides that it shall be unlawful employment practice "[f]or an employer…to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Mr. McMillian has sufficient evidence that Defendants failed to take all reasonable steps to prevent unlawful harassment.

It is well-established that Government Code section 12940(k) "places an affirmative duty on the employer to 'take all reasonable steps necessary to prevent discrimination and harassment from occurring.'" *Sheffield v Los Angeles County Dep't of Social Services*, (2003) 109 Cal.App.4th 153, 160.

As argued above, evidence supports Mr. McMillian's claims for Disability Discrimination, Harassment, and retaliation.

Defendants failed to take reasonable steps to prevent such conduct. Defendants point to various policies and procedures meant to prevent discrimination, harassment, and retaliation. However, Defendants themselves failed to implement these policies and procedures effectively. (SGD Nos. 3, 34, 44.)

Additionally, Mr. McMillian complied with Defendants' procedures as best he could. He provided doctor's notes extending his leave as soon as possible, and evidence supports Mr. McMillian's doctor's notes were sufficient to support a leave. (Patterson Depo., 125:19-126:7; Dennis Depo., 183:8-11.) Despite this, Defendants failed to accommodate Mr. McMillian's disability.

Second, Defendants' policies and procedures for prohibiting discrimination, harassment, and retaliation failed. As argued above, despite these policies and procedures, evidence supports Mr. McMillian's claim he suffered discrimination, harassment, and retaliation. (SGD Nos. 15, 19, 38, 60-62.)

Third, Defendants' did not implement their policies and procedures to allow Mr. McMillian to report his perceived discrimination, harassment, and retaliation. He was in constant communication with Defendants. He explicitly stated he felt his termination was

discriminatory and wrongful. Defendants did nothing to prevent his discrimination, harassment, and retaliation. (SGD Nos. 3, 34, 44, 69, 77.) Therefore, Mr. McMillian's claim for Failure to prevent Discrimination, Harassment, and Retaliation prevails.

### H.  Mr. McMillian's Claims for Negligent Supervision Prevails (Seventh Cause of Action)

Mr. McMillian can establish the predicate of harassment and discrimination, as argued above. Therefore, Mr. McMillian's claim for Negligent Supervision prevails.

### I.  Mr. McMillian's Claim for Intentional Infliction of Emotional Distress Prevails (Tenth Cause of Action)

Mr. McMillian's claims rise to the level of actionable conduct for IIED – "A cause of action for intentional infliction of emotional distress exists when there is '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.' " *Hughes v. Pair* 46 Cal.4th 1035, 1050–1051 (2009).

Mr. McMillian bases his IIED claim on the fact that he was discriminated against, harassed, and retaliated against for requesting accommodations for his disability. As discussed above, Defendants did not effectively engage in an interactive process to determine what an appropriate accommodation should be. They terminated Mr. McMillian's employment after he asked for an extension. Evidence supports the claim Mr. McMillian effectively communicated with Defendants regarding his need for accommodation. Instead of engaging with Mr. McMillian, Defendants informed Mr. McMillian he must return to work or lose his job. Defendants knew or should have known their interactions with Mr. McMillian were outrageous. After Mr. McMillian's

termination, Defendant's explicitly questioned if they prematurely terminated him. Defendant's callously disregarded Mr. McMillian's well-being when it terminated Mr. McMillian while he was on leave. This caused severe stress on Mr. McMillian. (SGD Nos. 58, 63.)

### J.   Mr. McMillian's Claim for Breach of Contract Prevails (Sixth Cause of Action)

"Though Labor Code section 2922 prevails where the employer and employee have reached no other understanding, it does not overcome their 'fundamental . . . freedom of contract' to depart from at-will employment." *Guz,* 24 Cal.4th at 336; *Foley v. Interactive Data Corp.* 47 Cal.3d 654, 677 (1988).   Additionally, the presumption of at-will employment under Labor Code section 2922 does not apply under an implied or express agreement.  *Guz* at 336; *Foley* at 680; *Khajavi v. Feather River Anesthesia Med. Group* 84 Cal.App.4th 32, 38 (2000).   Under *Guz,* when the "evidence logically permits conflicting inferences [of whether an implied contract exists], a question of fact is presented."   The existence of an implied agreement depends on the "totality of the circumstances" in view of the parties' "actual understanding" on the basis of the *Foley* factors: (1) oral assurances of continued employment on the basis of job performance, (2) the length of the employee's tenure, (3) the employer's practice of terminating employment only for cause, and (4) the industry practice of terminating employment only for cause. *Foley* at 680-682; *Guz* at 336. At-will language in an employee handbook or acknowledgment does not mean that employment is at-will.   *Guz* at 340-341. Here, Defendants present no evidence that they regularly terminated employees for no cause. *McLain v. Great Am. Ins. Cos.* (1989) 208 Cal.App.3d 1476, 1485.  The factors suggest that this is a triable issue.

### K.   Mr. McMillian's Claims for Damages Prevail

### (1)   Mr. McMillian Can Recover Economic Damages After Rejecting Reinstatement

Backpay no longer accrues only when an employer establishes that a former

employee failed to accept an unconditional offer for a substantially equivalent job and the former employee fails to establish "special circumstances." *Boehm v. American Brodcasting Co., Inc.* 929 F.2d 482 (9th Cir. 1991), citing *Ford Motor Co. v. Equal Employment Opportunity Commission* 458 U.S. 219, 231-32 (1982). The federal case of *Ford Motor Co.* does not affect the California rule that "reasonableness of mitigation is a question of fact." *Ortiz v. Bk. Of Am. Nat. Trust Sav. Ass'n* 852 F.2d 383 (9th Cir. 1987).

Here, Defendants made a contingent offer to Mr. McMillian after he filed his lawsuit. Mr. McMillian had legitimate concerns after filing a lawsuit. Mr. McMillian expressed his concerns in writing. Instead of discussing Mr. McMillian's concerns, Defendants outright ignored his requests. (SGD Nos. 69- 73.)

It is a question for the jury whether Mr. McMillian acted reasonably in his counter proposal. Therefore, Mr. McMillian can recover economic damages after he refused reinstatement.

### (2) Mr. McMillian Can Recover Punitive Damages

A claim for punitive damages requires "clear and convincing" evidence that defendant has been guilty of "oppression, fraud, or malice" in the commission of a tort. Cal. Civ. C. §3294(a). In order to prevail on a motion for summary adjudication, Defendants must show that some element of the tort claim cannot be established, Defendants' conduct does not constitute "oppression, malice, or fraud," as defined by Cal. Civ. C. §3294(c), or that Mr. McMillian's proof is not clear and convincing as required by Cal. Civ. C. §3294(a). Where a punitive damages claim is based on interrelated facts, any one of which would support an award of punitive damages, summary adjudication is not available to eliminate from trial other facts relating to the claim for punitive damages. *Catalano v. Sup.Ct.* 82 Cal.App.4th 91, 97-98 (2000).

Mr. McMillian established, "that the defendant was aware of the probable dangerous consequences of his conduct, and that he willfully and deliberately failed to avoid those consequences." *Hoch v. Allied-Signal, Inc.* 24 Cal.App.4th 48, 61 (1994) (emphasis added). As stated in Defendants' email, they have had a problem of terminating

employees prematurely. (Favati Depo., 71:4-8, 75:5-20, 109:12-17, 110:5-20, 121:2-17; Dennis Depo. 158:23-159:7.) (SGD Nos. 42, 61.) Therefore, Mr. McMillian can recover punitive damages.

**5.  CONCLUSION**

For all of the foregoing reasons, Mr. McMillian respectfully requests this Court deny Defendants' Motion for Summary Judgment, or in the Alternative, Summary Adjudication of the Issues.

Dated:  February 24, 2020          RODRIGUEZ & TRAN, LLP

                                   By: _____
                                       Griselda S. Rodriguez, Esq.

                                   Attorneys for Plaintiff,
                                   MARCELLUS MCMILLIAN

MCMILLIAN v. GOLDEN STATE FC LLC, et al.      USDC Case No.: 2:19-cv-02121-MWF-JCx

# PROOF OF SERVICE

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

I am an employee in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 631 S. Olive Street, Suite 820, Los Angeles, California 90014.

On February 24, 2020, I served the foregoing document, described as **"PLAINTIFF MARCELLUS MCMILLIAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT"** on all interested parties in this action by placing a true copy thereof in a sealed envelope, addressed as follows:

**Javier F. Garcia, Esq.**
**jgarcia@perkinscoie.com**
**Andrew E. Moriarty, Esq.**
**amoriarty@perkinscoie.com**
**PERKINS COIE LLP**
**1888 Century Park E., Suite 1700**
**Los Angeles, CA 90067-1721**

☒      **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒      **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 24, 2020, at Los Angeles, California.

_____
Sandy Luu