1  Javier F. Garcia, Bar No. 296846
   JGarcia@perkinscoie.com
2  PERKINS COIE LLP
   1888 Century Park E., Suite 1700
3  Los Angeles, CA  90067-1721
   Telephone:  310.788.9900
4  Facsimile:  310.788.3399

5  Andrew E. Moriarty, *pro hac vice*
   AMoriarty@perkinscoie.com
6  PERKINS COIE LLP
   1201 Third Avenue, Suite 4900
7  Seattle, WA  98101-3099
   Telephone:  206.359.8000
8  Facsimile:  206.359.9000

9  Attorneys for Defendants
   GOLDEN STATE FC LLC
10 AMAZON FULFILLMENT SERVICES, INC.
   AMAZON.COM SERVICES, INC.
11 AMAZON.COM, INC.

12                    UNITED STATES DISTRICT COURT

13                    CENTRAL DISTRICT OF CALIFORNIA

14

15

16 MARCELLUS MCMILLIAN, an          Case No. 2:19-cv-02121-MWF (JCx)
   individual,
17                                  **REPLY MEMORANDUM OF**
              Plaintiff,            **POINTS AND AUTHORITIES IN**
18                                  **SUPPORT OF DEFENDANTS'**
        v.                          **MOTION FOR SUMMARY**
19                                  **JUDGMENT OR,**
   GOLDEN STATE FC LLC;            **ALTERNATIVELY, PARTIAL**
20 AMAZON FULFILLMENT              **SUMMARY JUDGMENT**
   SERVICES, INC.; AMAZON.COM
21 SERVICES, INC.; AMAZON.COM,     Date:     May 18, 2020
   INC.; DEVON FRANKLIN; and       Time:     10:00 a.m.
22 DOES 3-100, inclusive,          Crtrm:    5A
                                   Judge:    Hon. Michael W. Fitzgerald
23            Defendants.

24

25

26

27

28

-1-

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 7

II. LEGAL ARGUMENT .............................................................................. 8

    A. Plaintiff's Opposition and Supporting Papers Are Replete with Transparently Artificial "Disputes" of Fact, Immaterial Arguments, and Evidentiarily Unsupported Assertions ...................... 8

        1. Transparently Artificial "Disputes" of Fact ............................... 9

        2. Immaterial Assertions of Fact.................................................... 9

        3. Unsupported Assertions of Alleged Fact.................................. 10

    B. Plaintiff's Accommodation Claim Fails (Fourth Cause of Action).................................................................................................. 11

        1. Amazon's Infrastructure for Evaluating and Supporting Leave of Absence Requests..................................................... 11

        2. Plaintiff's Medical Condition Required Indefinite Leave of Absence as an Accommodation, but Employers Are Not Required to Provide Indefinite Leave as an Accommodation.......................................................................... 12

        3. Plaintiff Waived Any Entitlement to Accommodation by Submitting "Estimated" Return-to-Work Dates that Were Not Really Estimates ................................................................ 13

        4. Retroactive Approval of an Eighth Extension of Plaintiff's Second Leave of Absence from Which He Has Never Been Released to Return to His Former Job at Amazon Was Not Facially Reasonable and Thus Was Not a Required Accommodation ....................................................... 14

    C. Plaintiff's Disability Discrimination and Retaliation Claims Fail (First and Eighth Causes of Action) ...................................................... 19

        1. There Is No Direct Evidence ..................................................... 19

        2. Plaintiff Not Made Out a *Prima Facie* Case of Disability Discrimination .......................................................................... 19

        3. Plaintiff Not Made Out a *Prima Facie* Case of Retaliation ..... 20

        4. Plaintiff Cannot Establish Pretext............................................. 21

    D. Plaintiff's Wrongful Termination Fails (Ninth Cause of Action) ...... 24

    E. Plaintiff's Claim for Disability-Based Harassment Fails (Second Cause of Action) ................................................................................. 24

    F. Plaintiff's Claim for Failure to Prevent Discrimination and Harassment Fails (Third Cause of Action) ......................................... 25

    G. Plaintiff's Claim for Negligent Supervision Fails (Seventh Cause of Action) ................................................................................. 26

    H. Plaintiff's Claim for Intentional Infliction of Emotional Distress Fails (Tenth Cause of Action)............................................................. 26

1
2

# TABLE OF CONTENTS
## (continued)

**Page**

I.   Plaintiff's Claim for Breach of Contract Fails (Sixth Cause of Action)..................................................................................... 27

J.   Even if Any Substantive Claim Survived Summary Judgment, Two Kinds of Damages Would Be Improper as a Matter of Law ...... 27

    1.   Plaintiff Could Not Recover Alleged Economic Damages for the Time Period After He Refused Reinstatement ............ 27

    2.   Plaintiff cannot recover punitive damages. .............................. 28

III.   CONCLUSION ............................................................................ 29

# <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................ 14

*Angel v. Seattle-First Nat. Bank*,
653 F.2d 1293 (9th Cir. 1981) ......................................................... 8

*Aquino v. Super. Ct.*,
21 Cal. App. 4th 847 (1993) ........................................................... 28

*Arteaga v. Brink's, Inc.*,
163 Cal. App. 4th 327 (2008) ......................................................... 23

*Bodett v. CoxCom, Inc.*,
366 F.3d 736 (9th Cir. 2004) .......................................................... 27

*Boehm v. Am. Broad. Co., Inc.*,
929 F.2d 482 (9th Cir. 1991) .......................................................... 28

*Buscemi v. McDonnell Douglas Corp.*,
736 F.2d 1348 (9th Cir. 1984) ........................................................ 27

*Chen v. Cty. of Orange*,
96 Cal. App. 4th 926 (2002) ........................................................... 21

*Clark Cty. Sch. Dist. v. Breeden*,
532 U.S. 268 (2001) ........................................................................ 20

*Delgado-Echevarria v. AstraZeneca Pharm. LP*,
856 F.3d 119 (1st Cir. 2017) ............................................... 17, 18, 24

*Doe v. Dep't of Corr. & Rehab.*,
43 Cal. App. 5th 721 (2019) ........................................................... 14

*Garcia-Ayala v. Lederle Parenterals, Inc.*,
212 F.3d 638 (1st Cir. 2000) .......................................................... 18

*Godwin v. Hunt Wesson, Inc.*,
150 F.3d 1217 (9th Cir. 1998) ........................................................ 19

*Gonzales v. Metpath, Inc.*,
   214 Cal. App. 3d 422 (1989) ................................................................... 24

*Gutierrez v. Nor-Cal Ready Mix, Inc.*,
   No. A121754, 2009 WL 1362802 (Cal. Ct. App. May 15, 2009) ...................... 19

*Hanson v. Lucky Stores, Inc.*,
   74 Cal. App. 4th 215 (1999) ................................................................. 16

*Hashimoto v. Dalton*,
   118 F.3d 671 (9th Cir. 1997) ................................................................. 24

*Intel Corp. v. Hartford Accident & Indem. Co.*,
   952 F.2d 1551 (9th Cir. 1991) ................................................................. 8

*Mendlovitz v. Raytheon Co.*,
   2:17-CV-07295-SVW-SS, 2018 WL 6051539 (C.D. Cal. May 9,
   2018) ................................................................................................. 26

*Moreno v. Anwa Hotel & Resort Int'l, Inc.*,
   B185868, 2006 WL 2474565 (Cal. Ct. App. Aug. 29, 2006) ........................... 28

*Nadaf-Rahrov v. Neiman Marcus Group, Inc.*,
   166 Cal. App. 4th 952 (2008) ................................................................. 17

*Nunes v. Wal-Mart Stores, Inc.*,
   164 F.3d 1243 (9th Cir. 1999) ............................................................... 17

*Rabara v. Heartland Emp't Servs.*,
   LLC, No. 17-cv-03770-LHK, 2019 WL 1877351 (N.D. Cal. Apr.
   26, 2019) ..................................................................................... 13, 17

*Reno v. Baird*,
   18 Cal. 4th 640 (1998) ........................................................................ 25

*Roby v. McKesson Corp.*,
   47 Cal.4th 686 (2009) .................................................................... 24, 25

*Roness v. T-Mobile USA, Inc.*,
   394 F. Supp .3d 1324 (W.D. Wash. 2019) ................................................. 16

*United States v. $133,420.00 in U.S. Currency*,
   672 F.3d 629 (9th Cir. 2012) ................................................................... 8

*Vande Zande v. State of Wis. Dep't of Admin.*,
    44 F.3d 538 (7th Cir. 1995) ................................................................. 16

*Villiarimo v. Aloha Island Air, Inc.*,
    281 F.3d 1054 (9th Cir. 2002) ....................................................... 8, 23

*West v. Bechtel Corp.*,
    96 Cal. App. 4th 966 (2002) ...................................................... 23, 28

**STATUTES**

Americans with Disabilities Act ("ADA") ................................... 11, 16, 24

Cal. Civ. Code § 3294(a) ............................................................. 28

Cal. Civ. Code § 3294(c)(1)-(2) .................................................... 28

California Family Right Act ("CFRA") ......................................... 11

Family and Medical Leave Act ("FMLA") ................................... 11

REPLY MEMORANDUM ISO DEFS' MSJ
2:19-cv-02121-MWF (JCx)

# I. INTRODUCTION

Mr. McMillian's declaration and opposition confirm that, from November 2017 through the end of his Amazon employment and beyond, (1) he could not work in any job, with or without accommodation, and (2) he and his doctor did not know when, if ever, he would be able to return to work.  Not only is there no genuine dispute about whether he needed an indefinite leave of absence, there is no dispute at all.  Because employers are not required to grant indefinite leave as an accommodation, Mr. McMillian's disability accommodation claim fails.

The fact that Mr. McMillian repeatedly said that he expected imminently to return to work at full duty does not save his accommodation claim.  No authority supports the bizarre proposition that an employee who cannot be reasonably accommodated can bootstrap his way into a disability accommodation claim by misdescribing his condition, abilities, or limitations.  In contrast, abundant authority establishes that an employee waives entitlement to accommodation by failing to engage in good faith in the interactive accommodation process.  Providing incomplete, false, or misleading medical documentation is a failure to act in good faith.  Mr. McMillian's accommodation claim fails for this reason, too.

Mr. McMillian's accommodation claim fails, finally and independently, because his requested accommodation—retroactively granting an eighth extension of his second leave based on documentation submitted three weeks into an unexcused absence—was facially unreasonable and therefore not required.

Mr. McMillian's other claims fail because they are just variations on his failure-to-accommodate claim. Most of them would also fail as a matter of law even if an accommodation claim were viable. Defendants' motion should be granted.

## II.   LEGAL ARGUMENT

### A.   Plaintiff's Opposition and Supporting Papers Are Replete with Transparently Artificial "Disputes" of Fact, Immaterial Arguments, and Evidentiarily Unsupported Assertions

A factual dispute does not defeat summary judgment unless the fact is material and the dispute is genuine. *Angel v. Seattle-First Nat. Bank*, 653 F.2d 1293 (9th Cir. 1981). A disputed fact is not *material* if it is not necessary to resolve the claim to which it relates. *Id.* A dispute is not *genuine* when the non-movant relies solely on a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence[.]" *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012); *see also, e.g.*, *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th Cir. 2002) ("uncorroborated and self-serving" testimony insufficient); *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (significant probative evidence required).

Mr. McMillian's Opposition and the purported Statement of Genuine Disputes of Material Fact egregiously disregard these well-settled principles. ("Opp." and "SGD", ECF 33 and 33-1). The scope and scale of the disregard precludes an exhaustive accounting, but a handful of examples illustrate the sorts of inauthentic claimed disputes that pervade the Opposition and supporting materials.

### 1. Transparently Artificial "Disputes" of Fact

A single illustrative example shows that the Statement of "Genuine Disputes of Material Fact" is nothing of the sort.  Amazon stated in its Memorandum in Support of its motion ("Mot."): "Following the automobile accident on August 3, 2017, Mr. McMillian requested and was approved for a leave of absence though August 31, 2017."  Mot. at 10, ECF 31-1.  Mr. McMillian asserts that this is "disputed" because the leave of absence process was "very confusing."  SGD 3, ECF 33-1.  He does not, however, deny that he requested a leave.  He does not deny that he was granted a leave through August 31, 2017.  SGD 3 is not genuinely disputed because *it is not disputed at all*.

### 2. Immaterial Assertions of Fact

A prime example of an immaterial fact dispute (which also happens to be artificial) is the refrain that Mr. McMillian's second leave of absence was a "leave as accommodation" managed by the Amazon accommodations team rather than the Reed Group (a/k/a MyLeave).  *See* Opp. at 2, 7, ECF 33.  The Opposition repeatedly misdescribes Amazon's leave-of-absence infrastructure, *but it is all an irrelevant distraction* because (a) in delegating leave-of-absence administration to a third-party with specialized expertise, Amazon has never sought to avoid ultimate responsibility for its associates; and (b) Mr. McMillian was never penalized for submitting documentation to the wrong person or organization.

### 3.  Unsupported Assertions of Alleged Fact

Critical assertions in Mr. McMillian's Opposition lack even the pretense of evidentiary support.   For example, the Opposition states that "Mr. McMillian submitted his disability statement on February 27, 2018; as soon as it was available to him."  Opp. at 5, ECF 33.  No evidence is cited.  The likeliest source of such evidence, if it existed, would be Mr. McMillian's declaration, but there he conspicuously does not say that he submitted a disability statement on February 27, 2018.  Declaration of Marcellus McMillian ("McMillian Decl.") ¶¶ 52-54, ECF 33-4.  *An unsupported assertion in a brief* does not give rise to a genuine dispute of fact.

A more pernicious category is assertions of fact that *purport* to be supported by evidence but in fact are both unsupported and false.  For example, citing Mr. McMillian's declaration, the Opposition asserts that Mr. McMillian "became a full-time employee in March 2017."  Opp. at 2, ECF 33.  The declaration, however, asserts that Mr. McMillian "became a Fulfillment Associate" in March 2017—not that he became a *full-time* employee in March 2017.  McMillian Decl. ¶¶ 2-3, ECF 33-4.  The document referenced in the declaration, Appx. Ex. 2, is self-evidently an offer for part-time employment.  Pl. Appx. Ex. 2, ECF 33-6 ("Shift Pattern: US FC Sat-Sun 10 hr 1800").  Mr. McMillian's payroll records show him working part-time until the pay period beginning October 15, 2017.  Declaration of Rochelle Lewis ("Lewis Decl.") ¶ 4 & Ex. 1; *see also* Declaration of Amy Virden ("Virden Decl.") ¶ 4, ECF 31-13.  This is not a question of whether the evidence is direct or

circumstantial, documentary or testimonial. *See* Opp. at 11-12. Mr. McMillian's conversion date is not genuinely in dispute because *the only evidence* is Amazon's evidence that the conversion occurred on October 15, 2017.[1] Mere allegations, unsupported or contradicted by the evidence, are not fact disputes and carry no weight in the summary judgment analysis.

**B.    Plaintiff's Accommodation Claim Fails (Fourth Cause of Action)**

**1.    Amazon's Infrastructure for Evaluating and Supporting Leave of Absence Requests**

In 2017-18, a leave request was evaluated initially by Amazon's third-party leave administrator, the Reed Group, to determine whether the employee qualified for statutory or company leave, in which case Reed would administer the leave process. If the employee qualified for neither, then the Amazon accommodations team would consider "leave as an accommodation" ("LEA") under the ADA and FEHA. Declaration of Andrew Moriarty in Support of Reply ("Moriarty Reply Decl."), Ex. 1 (Dennis Dep. 83:10-84:19, 117:16-120:13). In early August 2017, Mr. McMillian—a part-time employee with less than seven months on the job—did not qualify for FMLA, CFRA, or company medical leave. As a result, Reed transferred Mr. McMillian's request to the Amazon accommodations team, which approved

---

[1] The fact that Amazon converted Mr. McMillian to full-time employment a mere few weeks after he took a medical leave undermines any asserted inference that Amazon was biased against Mr. McMillian based on his medical condition or requests for leave or accommodation. The October 15 date also explains why Mr. McMillian's first leave of absence was managed by Amazon accommodations while his second leave was managed by MyLeave (the Reed Group).

LEA through August 31, 2017.  Defendants' Statement of Uncontroverted Facts and Conclusions of Law ("SOF") No. 3, ECF 31-2.  When Mr. McMillian returned to work and converted to full-time employment on October 15, 2017, he immediately became eligible for company medical leave.  Thus, when he requested a second leave two weeks after converting, the Reed team sent him his approval letter and managed that leave.   Declaration of Tamisha Dennis ("Dennis Decl.") ¶ 3, ECF 31-10; Moriarty Reply Decl., Ex. 1 (Dennis Dep. 141:17-142:3); SOF 14, ECF 31-2. Describing this robust and sensible system as a "trap" into which Mr. McMillian unwittingly fell (*see* Opp. at 7, ECF 33) is untenable.

> **2.    Plaintiff's Medical Condition Required Indefinite Leave of Absence as an Accommodation, but Employers Are Not Required to Provide Indefinite Leave as an Accommodation**

Mr. McMillian does not dispute that his doctor considered him totally temporarily disabled from November 2, 2017 through his termination and beyond; that his "estimated" return to work dates submitted to Amazon were mere "target dates that might or might not work out;" and that, throughout his months of leave, he did not "have any sense of when" he might return.  *See* Mot. at 14-15, ECF 31-1.  His declaration confirms that he "could not be sure when [he] would be able to return to work[.]"  McMillian Decl. ¶ 19, ECF 33-4.  Citing SGD 21, the Opposition asserts that "Dr. Ramirez . . . had no doubt Mr. McMillian would recover," Opp. at 13, ECF 33, but the SGD makes clear that Mr. Ramirez said no such thing.  Like Mr.

McMillian, Mr. Ramirez had no expectation one way or another. *See* SOF 21, ECF 31-2; Moriarty Reply Decl., Ex. 5 (Ramirez Dep. 26:20-25).

This motion, thus, does not ask the Court to infer from multiple failed extension requests that Mr. McMillian needed indefinite leave. No inference is necessary, because Mr. McMillian and his chiropractor *testified* that they did not know when if ever he would return to work. *See Rabara v. Heartland Emp't Servs.*, LLC, No. 17-cv-03770-LHK, 2019 WL 1877351, at *16 (N.D. Cal. Apr. 26, 2019) (summary judgment for employer where return-to-work date provided by plaintiff's doctor was "actually aspirational, not an actual expected return to work based on any medical opinion"). A leave necessarily qualifies as indefinite when no one has any idea when or if the employee will return to work. To hold otherwise would be to write the concept of indefinite leave out of the California Code of Regulations and caselaw from across the Federal Circuits, which make clear that employers need not grant indefinite leave as an accommodation. *See* Mot. at 18-19, ECF 31-1.

### 3. Plaintiff Waived Any Entitlement to Accommodation by Submitting "Estimated" Return-to-Work Dates that Were Not Really Estimates

Mr. McMillian appears to concede that indefinite leave of absence is not a required reasonable accommodation. If, however, the principle was in doubt, Mr. McMillian's accommodation claim would fail because he was not honest about the accommodation he needed. Each return-to-work note stated that he was "estimated to return to work full duty" by a certain date. Moriarty Reply Decl., Ex. 5 (Ramirez

Dep. Ex. 4; Dep.16:22-17:3).  But the undisputed evidence is that each such date was a mere "target" on which Mr. McMillian might or might not have been able to return—an aspiration, but not an estimation.  *See* McMillian Decl. ¶ 19, ECF 33-4; SOF 16, 21-23, 47, ECF 31-2.  The truth was that Mr. McMillian did not have "any sense" of when he might return.  SOF 16, ECF 31-2.

It was incumbent upon Mr. McMillian to tell Amazon the truth—that is, to make Amazon adequately aware of his limitations.  *See Doe v. Dep't of Corr. & Rehab.*, 43 Cal. App. 5th 721, 739 (2019).  By failing to do so, he waived any entitlement to accommodation.  *See id.*; Mot. at 22-23, ECF 31-1.

### 4. Retroactive Approval of an Eighth Extension of Plaintiff's Second Leave of Absence from Which He Has Never Been Released to Return to His Former Job at Amazon Was Not Facially Reasonable and Thus Was Not a Required Accommodation

As a matter of law, Amazon was not required retroactively to extend Mr. McMillian's multi-month second leave.  To say that this conclusion "depends entirely on the facts of the case," Opp. at 13, ECF 33, does not defeat summary judgment because a reasonable jury could resolve the question only one way: in Amazon's favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

One of the undisputed "facts of the case" is that Amazon did not deny a timely request to extend Mr. McMillian's leave in the future.  Rather, Amazon declined to re-open a closed leave case after Mr. McMillian had been absent for three weeks without approval, without documentation, and without contacting Amazon or Reed.

Mr. McMillian knew as of February 23 that his leave was approved only through February 27. McMillian Decl. ¶ 51, ECF 33-4. He was aware of the importance of promptly submitting medical documentation supporting his requested extensions.[2] He asserts repeatedly that Amazon was responsible for routing his documents to the leave team, regardless of where he submitted them, but that is immaterial because Mr. McMillian's documents never failed to get to the right place when he submitted them to the wrong person or organization. Between February 19 and March 20, however, Mr. McMillian did not submit documentation *to anyone.* The implication that Mr. McMillian was unable to obtain updated documentation is unsupported by explanation or evidence. Employers are not required to accommodate by retroactively excusing misconduct, including job abandonment or violations of attendance policies. *See* Mot. at 21-22, ECF 31-1.

Mr. McMillian appears to contend that, because Amazon had previously excused his delays of a few days in submitting medical documentation, Amazon had a legal duty to excuse his much longer delay in March 2018. *See* Opp. at 3, ECF 33. But the practical result of accepting that position would be to discourage employers from flexibly accommodating employees. Courts have, accordingly, rejected the

---

[2] *See, e.g.,* Pl. Appx. Ex. 32, ECF 33-8 (February 4 from Amazon: "If you requested an extension please contact your case manager to ensure they received your paperwork"); Pl. Appx. Ex. 36, ECF 33-9 (February 19 to Amazon: "it seems that the notes are now falling behind and I am trying to make sure you guys get these ahead of time"); Pl. Appx. Ex. 38, ECF 33-9 (February 19 from Amazon: "without paperwork the leave may be denied").

proposition that an employer's adoption of generous accommodation practices, or exercise of discretion in favor of accommodating a particular employee, establishes a new and higher legal bar for the employer. *E.g.*, *Roness v. T-Mobile USA, Inc.*, 394 F. Supp .3d 1324, 1331-32 (W.D. Wash. 2019) ("as a matter of public policy, a company's previous accommodations of employees beyond what the law requires does not create a genuine issue of material fact as to whether a reasonable accommodation was available"); *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995) ("[I]f the employer ... bends over backwards to accommodate . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation.").

The other critical and undisputed fact about Mr. McMillian's requested leave extensions is that the notes demonstrated neither improvement nor likely improvement.  His chiropractor's notes were verbatim copies of each other.  Only the dates changed.  This is dispositive because leave is a required accommodation only if it will—with some degree of certainty and in some reasonable period of time— enable the employee to return to work.  *See* Mot. at 19-20, ECF 31-1; *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (1999) ("a finite leave of absence has been considered to be a reasonable accommodation under the ADA, provided it is likely that following the leave the employee would be able to perform his or her duties").  Mr. McMillian's cited cases are not to the contrary:

(1)  In *Nunes v. Wal-Mart Stores, Inc*., the employee commenced a second leave of absence six months after her first leave, extended it twice, and was released to return to work following her termination.  164 F.3d 1243, 1245 (9th Cir. 1999).[3] The Ninth Circuit expressly recognized the fact-specific nature of its inquiry and contemplated that summary judgment could be appropriate on different facts.  *Id.* at 1247.   Courts in this Circuit and elsewhere have repeatedly granted summary judgment in leave-accommodation cases.   *See, e.g.*, *Delgado-Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, 130-31 (1st Cir. 2017) (citing cases); *Rabara*, 2019 WL 1877351, at *16.

(2)  In *Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, the court found issues of fact about whether the employee could have performed a different position and whether it was unreasonable for the employer "to determine *unilaterally* that [the employee] could not perform any available vacant position *and* would not be able to do so in the foreseeable future."  166 Cal. App. 4th 952, 989 (2008) (emphasis added). But Mr. McMillian's medical documentation indicated unequivocally that he was totally  temporarily  disabled—unable  to  work  in  *any*  job  with  or  without

---

[3] Mr. McMillian's states that he was released "to return to work in full capacity" *on June 19, 2018* (Opp. at 9), but the date is contrary to his prior statements and there is no medical documentation that he has ever been released. *See* Moriarty Reply Decl., Ex. 9 (McMillian Dep. 131:11-19); *id.*, Ex. 5 (Ramirez Dep. Ex. 5; Dep. 29:8-18); *id.* ¶ 8 & Ex. 6 (Interrogatory 4); *id.* ¶ 9 & Ex. 7 (HUNT000021; Lanning Dep. 6:6-8 9:18-22, 10:8-16); *id.* ¶ 10 & Ex. 8 (Snyder Dep. 41:2-12).

accommodation—and Mr. Ramirez confirmed that the documentation meant what it said:

> **Q.** Total temporary disability means that he can't work at all; right?
> **A.** Correct.
> **Q.** All right. And there is a -- there is a line below that says "Patient is returned to work with the following limitations." If Mr. McMillian could have worked with limitations, you would have filled that line out?
> **A.** Correct. It's -- exactly.
> **Q.** Okay. And --
> **A.** Like a limited light duty type of thing.

Moriarty Reply Decl., Ex. 5 (Ramirez Dep. 16:22-17:23; Ramirez Dep. Ex. 4).

(3) *Garcia-Ayala v. Lederle Parenterals, Inc.*, reversed a grant of summary judgment where the district court improperly "applied per se rules—rather than an individualized assessment of the facts," the employee made a specific showing that additional leave would have been reasonable, and "the employer did not contest the reasonableness of the accommodation except to embrace a per se rule that any leave beyond its one-year reservation period was too long." 212 F.3d 638, 647-49 (1st Cir. 2000). Distinguishing *Garcia-Ayala*, the First Circuit more recently affirmed summary judgment where the plaintiff did not affirmatively show that her extended leave of absence was a facially reasonable accommodation. *Delgado-Echevarria*, 856 F.3d at 130-32 ("Because Delgado failed to shoulder her burden to identify a reasonable accommodation, we need not consider the question of undue hardship.").

For all of the foregoing reasons, summary judgment should be entered dismissing Mr. McMillian's claim for failure to accommodate a disability.

C.     **Plaintiff's Disability Discrimination and Retaliation Claims Fail (First and Eighth Causes of Action)**

1.     **There Is No Direct Evidence**

"Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).  Here, no one said anything derogatory to or about Mr. McMillian.  There is no other evidence based on which a reasonable factfinder could conclude without inference or presumption that bias motivated Mr. McMillian's termination.  This is not a "direct evidence" case.

2.     **Plaintiff Not Made Out a *Prima Facie* Case of Disability Discrimination**

Mr. McMillian's contention (*see* Opp. at 17, ECF 33) that termination while on medical leave is inherently discriminatory confuses the concepts of disparate treatment and accommodation.  Whether Mr. McMillian was entitled to be excused from the normal application of Amazon's policies is an accommodation question.  Disparate treatment, in contrast, requires proof—not necessarily comparator evidence, but more than mere speculation and allegation—that Mr. McMillian was treated differently *and worse* than he would have been treated if he did not have a disability.  It was not, therefore, disparate treatment to apply Amazon's attendance policy to Mr. McMillian in the same way the policy would have been and repeatedly has been applied to absent employees without disabilities.  *Gutierrez v. Nor-Cal Ready Mix, Inc.*, No. A121754, 2009 WL 1362802, at *18 (Cal. Ct. App. May 15,

2009); *see* Mot. at 26.

The contention that Amazon "must show there is no triable issue of fact about Mr. McMillian's ability, with or without accommodation, to perform the essential functions of an available position that would not be a promotion" is, likewise, an accommodation issue.  Opp. at 10, ECF 33.  (It is also unavailing because there is no genuine fact dispute that Mr. McMillian's health care provider deemed him unable to work in any job, even with accommodation.)   Similarly, the contention that Amazon should have declined to enforce its attendance policies in May 2018 or reversed the termination in June 2018 is not a disparate treatment argument because there is no evidence that Amazon would have made a different decision if Mr. McMillian had not had a disability.  To the contrary, considering the several times that Amazon warned Mr. McMillian that he was in jeopardy of termination under Amazon's attendance policy unless he documented a continued medical need for leave, the only conclusion to be drawn from this record is that, if Mr. McMillian had not had a disability, his employment would have terminated long before May 3, 2018.

### 3.    Plaintiff Not Made Out a *Prima Facie* Case of Retaliation

Mr. McMillian's *prima facie* retaliation argument is based exclusively on the timing of his discharge relative to his requests for additional leave in April and May 2018.  Opp. at 12, ECF 33.  But Plaintiff first requested a leave of absence for his medical condition in August 2017.  His termination was nine months later—too long to support an inference of retaliation.  *E.g.*, *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S.

-20-

268, 273 (2001) (finding three-month and four-month gaps between protected activity and adverse employment action insufficient to support a retaliation claim). Moreover, Mr. McMillian's *prima facie* burden is not to show temporal proximity— it is to show a plausible causal connection between protected activity and an adverse employment action.  "Mere sequence is not enough [to make out a *prima facie* case]—that would be the classic logical fallacy of 'post hoc ergo propter hoc' (after the fact, therefore because of the fact)." *Chen v. Cty. of Orange*, 96 Cal. App. 4th 926, 931 (2002) (affirming dismissal where plaintiff "showed nothing but sequence in a context where there were obviously good and legitimate reasons not to promote her").  Here, far from retaliating after Mr. McMillian began taking medical leave, Amazon converted him from part-time to full-time, granted him a second leave, and continued his employment through months of extensions.  SOF 6-8, 15, ECF 31-2. That record forecloses an inference of retaliation.

### 4.    Plaintiff Cannot Establish Pretext

There can be no genuine dispute about whether job abandonment or unapproved absences in excess of an employer's attendance policy are legitimate, nondiscriminatory reasons for termination, so, if Mr. McMillian had established a *prima facie* case, the inquiry would move to pretext.  Pretext, in this context, means that Caitlin Favati processed Mr. McMillian's termination for some reason other than that he was not coming to work and was not on an approved leave of absence.  What evidence supports that proposition?  Mr. McMillian identifies none.  There is no

dispute that Ms. Favati did not conceive the idea of terminating Mr. McMillian; rather, he had repeatedly appeared on an automated attendance report. Declaration of Caitlin Favati ("Favati Decl.") ¶¶ 3-4, ECF 31-12; Moriarty Reply Decl., Ex. 3 (Favati Dep. 100:23-101:8, 106:9-13, 121:19-122:2, 157:1-8, 167:22-168:19); Virden Decl. ¶¶ 6-7, ECF 31-13. There is no dispute that HR urged Mr. McMillian to work with the leave team to obtain approval for his time off, and that *he did not obtain approval for his time off*. Moriarty Decl., Ex. 27, ECF 31-8. There is no dispute that, as a result, when Mr. McMillian again came up for an attendance termination and Ms. Favati checked his leave status, she found that his leave was unapproved. Favati Decl. ¶¶ 3-4, ECF 31-12; Moriarty Decl., Ex. 32, ECF 31-9; Moriarty Reply Decl., Ex. 3 (Favati Dep. 113:10-114:11, 121:2-17, 148:6-9, 167:22-168:1); *see also* Pl. Appx. Ex. 50. There is no dispute that Ms. Favati had neither the training nor the authority to second-guess Reed's denial decision. *E.g.*, Moriarty Reply Decl., Ex. 3 (Favati Dep. 56:13-16, 57:15-24, 85:5-23, 115:19-118:16). And there is no evidence that it was anything other than his status as absent-without-approval that motivated Ms. Favati to process Mr. McMillian's termination when she did.

Mr. McMillian takes issue with none of these *facts*. Instead, he implicitly argues that Ms. Favati should have done something differently—should have exercised "discretion" not to terminate, should have second-guessed or dug deeper into Reed's denial decision, should have reinstated Mr. McMillian because he

showed "an interest" in someday returning to work.  Opp. at 17, ECF 33.  But these are not pretext arguments.  Courts "'only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless.'"  *Villiarimo*, 281 F.3d at 1063 (citation omitted); *see also*, *e.g.*, *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 344 (2008) (holding that even where the employer's decision was mistaken, wrong, too harsh, unwise, or baseless, that still does not show pretext for illegal discrimination or retaliation); *West v. Bechtel Corp.*, 96 Cal. App. 4th 966, 982 (2002) ("the issue is discriminatory animus, not whether the employer's decision was wrong or mistaken").  As a result, the refrain that Amazon had "discretion" to depart from its policies is unavailing (and, as to Ms. Favati, also incorrect, Moriarty Reply Decl., Ex. 3 (Favati Dep. at 109:6-10)).

Mr. McMillian also points out that Amazon extended Mr. McMillian's leave at least seven times prior to termination and approved his continued time off at least twice even after his leave had lapsed.  Opp. at 18, ECF 33.  True enough; but Mr. McMillian's leave of absence had not previously been denied and closed; and in no previous instance did HR urge Mr. McMillian to contact the leave team for approval only to find, upon subsequent inquiry, that his leave of absence status *remained* "unapproved."  Amazon's prior flexibility with Mr. McMillian says nothing about Ms. Favati's state of mind in May 2018.

Mr. McMillian does not appear to argue that temporal proximity between his request for leave and his termination evidences pretext.  *See* Opp. at 17, ECF 33.  In

1   an abundance of caution, however, Amazon observes that it does not. *Hashimoto v.*

2   *Dalton*, 118 F.3d 671, 680 (9th Cir. 1997); *Delgado-Echevarria*, 856 F.3d at 138.

3

4   **D.      Plaintiff's Wrongful Termination Fails (Ninth Cause of Action)**

5      Mr. McMillian does not dispute that his wrongful termination claim fails if his

6   ADA and FEHA claims fail.  Opp. at 19-20, ECF 33.  The Ninth Cause of Action

7   should, thus, be dismissed along with the First, Fourth, and Eighth Causes of Action.

8

9   **E.      Plaintiff's Claim for Disability-Based Harassment Fails (Second
           Cause of Action)**

10

11     In light of the extraordinary and undisputed record of communication and

12  accommodation in this matter, Mr. McMillian's contentions that he was "ignored"

13  and was sent an implicit message "that his disability was not imperative" (Opp. at

14

15  20, ECF 33) establish only that Mr. McMillian disagreed with Amazon's decision to

16  terminate his employment.  That is rather obviously not harassment. *See* Mot. at 28-

17  29, ECF 31-1; *Gonzales v. Metpath, Inc.*, 214 Cal. App. 3d 422, 428 (1989)

18

19  (discrimination laws were not intended "to commission our courts to sit as personnel

20  review boards to oversee business judgments").  Mr. McMillian's contention that he

21  was "confused" about the process by which he was granted two leaves of absence

22

23  and seven extensions is not remotely comparable to the record in *Roby v. McKesson*

24  *Corp.* (*see* Opp. at 20, ECF 33), where the plaintiff's manager gratuitously made rude

25

26  comments on a daily basis, shunned the plaintiff during weekly staff meetings,

27  belittled the plaintiff's job, reprimanded the plaintiff in front of coworkers, and made

28

demeaning comments, gestures, and facial expressions in response to the plaintiff's body odor and arm sores.  47 Cal.4th 686, 710-11 (2009).[4]  And to adopt Mr. McMillian's impossibly broad concept of "harassment" would be to eviscerate the distinction in California law between harassment (for which individuals can be liable) and business decisions (for which individuals are not liable even if discrimination is found, *see Reno v. Baird*, 18 Cal. 4th 640, 645-47 (1998)).

**F.     Plaintiff's Claim for Failure to Prevent Discrimination and Harassment Fails (Third Cause of Action)**

Mr. McMillian does not dispute that a claim for failure to prevent discrimination is derivative of a FEHA discrimination claim and fails when the FEHA claim fails.  *See* Mot. at 29-30, ECF 31-1; Opp. at 21-22, ECF 33.  But the failure-to-prevent claim would fail even if a genuine dispute of material fact existed with respect to one of the FEHA claims, because proof of discrimination, harassment, or retaliation is only the first element of a failure-to-prevent claim.  As to the second and third elements—that Amazon failed to take reasonable steps to prevent discrimination and that such failure caused any harm to Mr. McMillian—Mr. McMillian offers no evidence, argument, or authority other than a contention that

---

[4] *Compare* Amazon's communications to Mr. McMillian, *e.g.*, Pl. Appx. Ex. 32, ECF 33-8 ("Sorry for any confusion . . .  If you need to request an extension please do so immediately."); Ex. 36, ECF 33-9 ("Has something change recently?  If so, please let me know so I can do my best in getting you back to positive UPT status."); Ex. 38, ECF 33-9 ("Great, really appreciate you working on this.  Please check in . . .  so we can stay up to date on your case."); Ex. 47, ECF 33-9 ("Thank you for your response.  Please make sure you contact LOA as well and ensure they have received all necessary paperwork.").

Amazon does not provide avenues for employees to report concerns about potential discrimination. That, however, is demonstrably not true. *See*, *e.g.*, SOF 76, ECF 31-2; Lewis Decl. ¶¶ 5-8 & Exs. 2-5. The Third Cause of Action should be dismissed. *See Mendlovitz v. Raytheon Co.*, 2:17-CV-07295-SVW-SS, 2018 WL 6051539, at *10 (C.D. Cal. May 9, 2018) (granting summary judgment to employer on failure to prevent claim where employer had several avenues for employees to report discrimination and plaintiff "never utilized any of these available internal remedies").

### G.   Plaintiff's Claim for Negligent Supervision Fails (Seventh Cause of Action)

Mr. McMillian concedes that his negligent supervision claim fails if his FEHA claims fail, *see* Opp. at 22, ECF 33, but his negligence claim would fail, regardless. Injury alone does not give rise to liability for negligence; the injured party must also show that the injury was caused by another party's failure to use due care. *See* Mot at 31, ECF 31-1. Mr. McMillian does not even attempt to make this showing.

### H.   Plaintiff's Claim for Intentional Infliction of Emotional Distress Fails (Tenth Cause of Action)

Mr. McMillian expressly and exclusively "bases his IIED claim on the [allegation] that he was discriminated against, harassed, and retaliated against," Opp. at 22, ECF 33, as if every FEHA violation was *per se* IIED, but that is not the law. Even if it were fairly debatable whether Amazon "callously disregarded Mr. McMillian's well-being when it terminated him," Opp. at 23, ECF 33, "callous and insensitive" terminations "do not support a tort claim for intentional infliction of

emotional distress." *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir. 1984); *accord*, *e.g.*, *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 747 (9th Cir. 2004) (affirming summary judgment dismissing IIED claim where, although plaintiff alleged stress, depression, family struggles claim, "[t]his type of termination goes on every day in the corporate world, particularly when the employee has violated the terms of an existing employment policy").

**I.      Plaintiff's Claim for Breach of Contract Fails (Sixth Cause of Action)**

Mr. McMillian admits in his declaration:  "I understood my employment with Amazon was at-will, meaning that I could be terminated at any point and for any reason[.]"  McMillian Decl. ¶ 76, ECF 33-4.  The contention (*see* Opp. at 23, ECF 33) that there is a "triable issue" about whether the parties had a contract for other than at-will employment is, thus, incorrect.

**J.      Even if Any Substantive Claim Survived Summary Judgment, Two Kinds of Damages Would Be Improper as a Matter of Law**

**1.      Plaintiff Could Not Recover Alleged Economic Damages for the Time Period After He Refused Reinstatement**

There is no dispute that Defendants offered to reinstate Mr. McMillian to his former job and Mr. McMillian refused this offer.  SOF 69-73, ECF 31-2; Moriarty Decl., Ex. 29, ECF 31-9.  He was not required to compromise any legal claim; Amazon's only conditions were that Mr. McMillian meet drug-free and background check standards applicable to all Warehouse Associates.  California and federal

courts have found that "backpay no longer accrues if a claimant is offered a 'substantially equivalent' position." *Boehm v. Am. Broad. Co., Inc.*, 929 F.2d 482, 485 (9th Cir. 1991); *Moreno v. Anwa Hotel & Resort Int'l, Inc.*, B185868, 2006 WL 2474565, at *5-9 (Cal. Ct. App. Aug. 29, 2006).

Because Mr. McMillian's lawyer objected on privilege grounds to Mr. McMillian explaining why he declined Amazon's offer (Moriarty Decl., Ex. 1 (McMillian Dep. at 145:4-147:16), ECF. 31-5), he cannot now offer excuses for not accepting the offer.  Nor can he legitimately contend that Amazon "ignored his requests."  Within a week of receiving Mr. McMillian's attorney-drafted conditions of return, Amazon asked about Mr. McMillian's purported concern about his pay rate, addressed Mr. McMillian's claimed apprehension about retaliation, and inquired whether he preferred to return to work at a different Amazon site.  Moriarty Decl., Ex. 29, ECF 31-9.  Mr. McMillian did not respond.  In any event, "anyone who has been terminated will be fearful and distrustful of former employer but that does not excuse duty to mitigate." *Moreno*, 2006 WL 2474565, at *9 (citing *West v. Bechtel Corp.*, 96 Cal. App. 4th at 986).  As a matter of law, Mr. McMillian cannot recover for alleged wage loss after February 7, 2019.

### 2.      Plaintiff cannot recover punitive damages.

Mr. McMillian fails to satisfy the "onerous" burden to prove "by clear and convincing evidence" that Amazon is "guilty of 'oppression, fraud, or malice.'" *Aquino v. Super. Ct.*, 21 Cal. App. 4th 847, 856-57 (1993); Cal. Civ. Code § 3294(a),

(c)(1)-(2).   Mr. McMillian's only assertion in support of punitive damages is that Amazon allegedly has "a problem of terminating employees prematurely."   Opp. at 17-18, ECF 33.   But there is no evidence of this.   The only e-mail that references premature termination was from Ms. Patterson, who testified that she made an inquiry but did *not* conclude that Mr. McMillian was prematurely terminated.[5]   Mr. McMillian has failed to meet the high bar required for punitive damages.

### III.   CONCLUSION

Defendants respectfully request that the Court grant the Motion.

DATED:  May 8, 2020

**PERKINS COIE LLP**

By: /s/Javier F. Garcia
  Javier F. Garcia
  Andrew E. Moriarty

Attorneys for Defendants
GOLDEN STATE FC LLC,
AMAZON FULFILLMENT
SERVICES, INC.
AMAZON.COM SERVICES, INC.
AMAZON.COM, INC.

---

[5] "I did not conclude that it was prematurely terminated; I asked that question;" "Again, I did not conclude it was a prematurely terminated employee;" "Again, I want to clarify that I did not conclude it was premature termination." Moriarty Reply Decl., Ex. 2 (Patterson Depo.176:15-25, 178:6-7; 198:6-7).