Griselda S. Rodriguez, Esq., State Bar No. 303049
Griselda@G-rodlaw.com
G-ROD LAW, A.P.C.
2660 Townsgate Road, Suite 400
Westlake Village, California 91361
Telephone Number: (805) 275-4000
Facsimile Number:  (805) 507-5770

Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
Mahru Madjidi, Esq., State Bar No. 297906
MMadjidi@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number:        (310) 860 0770
Facsimile Number:        (310) 860 0771

Attorneys for Mr. McMillian,
MARCELLUS MCMILLIAN

# THE UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MARCELLUS MCMILLIAN, <br><br> Mr. McMillian, <br><br> vs. <br><br> GOLDEN STATE FC LLC, AMAZON FULFILLMENT SERVICES, INC., AMAZON.COM SERVICES, INC., AMAZON.COM, INC., DEVON FRANKLIN, and DOES 1 to 100, inclusive, <br><br> Defendants. | Case No.:  2:19-cv-02121-MWF-JCx <br><br> **The Honorable Michael W. Fitzgerald** <br><br> **PLAINTIFF MARCELLUS MCMILLIAN'S TRIAL BRIEF** <br><br> Trial: June 28, 2022 <br> Time: 8:30 a.m. <br> Ctrm.: 5A <br><br> FPC: June 6, 2022 <br> Time: 11:00 a.m. <br> Ctrm.: 5A <br><br> Action Filed:  January 11, 2019 |

# TABLE OF CONTENTS

**Page**

1. INTRODUCTION ................................................................................. 1

2. STATEMENT OF FACTS ................................................................... 2

   A. McMillian's Initial Request Is Approved As A Leave As An Accommodation ............................................................................. 2

   B. McMillian Followed Defendants' Policies And Procedures ............ 2

   C. Defendants' Policies and Procedures Are Unclear, Nonetheless McMillian Continues To Follow The Process He Is Aware Of. .......... 3

   D. Defendants, Tired Of McMillian's Extension Requests, Begin Straying From Their Policies, Picking And Choosing When To Enforce Them. ............. 5

   E. Defendants Have Numerous Types of Leaves, Leave As An Accommodation Is Always Processed In-House. ........................... 6

   F. Defendants Fail To Follow Company Attendance Policies and Procedures. ...... 7

   G. McMillian Is Prematurely Terminated On May 3, 2018 ................. 8

   H. Patterson Investigates McMillian's Leave Of Absence Denial On June 21, 2018, Concludes McMillian's Case Should Have Been Reopened, But It Was Not. ............ 9

   I. Defendants Contingent Offer Of Reinstatement Was Nothing More Than A Strategic Litigation Tactic Devised By Lawyers. ........................... 10

3. LEGAL ISSUES ................................................................................. 10

   A. Defendants Failed to Accommodate Mr. McMillian's Injury ........... 10

       (1) McMillian Did Not Request an Indefinite Leave ................... 11

   B. Defendant's Failed to Engage in the Interactive Process with McMillian to Determine an Effective Reasonable Accommodation ................ 12

   C. McMillian was Discriminated Against on the Basis of His Disability .......... 12

       (1) McMillian Can Establish a Prima Facie Case ...................... 12

       (2) Defendants Did Not Have a Legitimate Reason for Termination ......... 13

       (3) McMillian Can Establish Pretext .......................................... 13

           (a) Defendants Have a Negative Unpaid Time ("UPT") Policy That Provides For Termination Upon Accrual Of Even One Unexcused Hour Of Work ............ 14

(b) In February of 2018, McMillian Is Informed That He Is Negative in UPT For Allegedly Missing Two Consecutive Days Of Work......... 15

(c) Despite Being On Leave, By April of 2018, McMillian Had Accrued A Whopping 267 Hours Of Negative UPT ........................... 15

(d) On May 3, 2020, Defendants Inform McMillian He Is Being Terminated For Accruing Negative UPT ................................ 15

D.  Defendants Retaliated Against McMillian for his Request for Reasonable Accommodations, For Taking and Requesting Medical Leave, And For his Complaints of and/or Opposition To Discrimination and Retaliation. ........ 16

E.  McMillian's Claims for Damages Prevail ........................................ 17

(1) McMillian Can Recover Economic Damages After Rejecting Reinstatement ................................................................. 17

(2) McMillian Can Recover Punitive Damages ................................ 17

PLAINTIFF'S TRIAL BRIEF

# TABLE OF AUTHORITIES

**Page**

## Cases

*A.M. v. Albertsons, LLC* (2009) 178 Cal.App.4th 455 .................................................... 11

*Boehm v. American Brodcasting Co., Inc.* 929 F.2d 482, 485 (9th Cir. 1991) ............... 17

*Caldwell v. Paramount Unified School Dist.,* 49 Cal.App.4th 189 (1996) ...................... 16

*Flait v. North American Watch Corp.* 3 Cal.App.4th 467 (1992) .................................... 14

*Ford Motor Co. v. Equal Employment Opportunity Commission* 458 U.S. 219 (1982) ............................................................................................................... 17

*Fuentes-Sanchez v. Swissport, Inc.*, 213 Cal.App.4th 1331 (2013) ................................ 11

*Furtado v. State Personnel Bd.* 212 Cal.App.4th 729 (2013) .......................................... 13

*Gelfo v. Lockheed Martin Corp.* 140 Cal.App.4th 34 (2006) .......................................... 12

*Hanson v. Lucky Stores, Inc.* 74 Cal.App.4th 215 (1999) ............................................... 13

*Heard v. Lockheed Missiles & Space Co.* 44 Cal.App.4th 1735, 1751 (1996) ............... 13

*Hersant v. Calif. Dept. of Social Services* 57 Cal.App.4th 997 (1997) .......................... 13

*Hoch v. Allied-Signal, Inc.* 24 Cal.App.4th 48 (1994) ................................................... 17

*Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245 (2000) ............................................... 11

*McCoy v. Pacific Maritime Assn.* 216 Cal.App.4th 283 (2013) ...................................... 16

*Nadaf-Rahrov v. Neiman Marcus Group, Inc*, 166 Cal.App.4th 952 (2008) .................. 11

*Ortiz v. Bk. Of Am. Nat. Trust Sav. Ass'n* 852 F.2d 383, 387 (9th Cir. 1987)................. 17

*Passantino v. Johnson & Johnson* 212 F.3d 493 (9th Cir. 2000) .................................... 14

*Sandell v. Taylor-Listug, Inc.* 188 Cal.App.4th 297 (2010) ........................................... 13

*Soria v. Univision Radio Los Angeles, Inc.*, 5 Cal.App.5th 570 (2016).................... 13, 14

*Spitzer v. Good Guys, Inc.,* 80 Cal.App.4th 1376, 1384-85 (2000).................................. 11

*Swanson v. Morongo Unified School Dist.* 232 Cal.App.4th 954 (2014).................... 11, 12

*Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028 (2005) ............................................................................................... 16

## Statutes

Government Code §§ 12900-12996........................................................................... 11, 12

Civil Code §3294 ...................................................................................................... 17

**Regulations**

2 Cal. Code Regs. ...................................................................................................... 11

PLAINTIFF'S TRIAL BRIEF

## 1. INTRODUCTION

Plaintiff Marcellus McMillian ("McMillian" or "Plaintiff") was injured in a car accident unrelated to his employment on or around August 3,2017. Since this accident, Defendants Golden State FC, LLC., Amazon Fulfillment Services, Inc., Amazon.com Services, Inc., and Amazon.com, Inc.'s (collectively "Defendants"), have discriminated against and retaliated against McMillian because of his disability and request for accommodations. Defendants admittedly by their own testimony, failed to accommodate McMillian's disability leave. Soon after asking for accommodations and medical leave for his disability, Defendants threatened to terminate McMillian's employment via e-mail. McMillian became distressed by Defendants unorganized system of handling employees' medical leaves, and he constantly had to clarify that he was on medical leave and was still in treatment. Despite McMillian's communication of his disability, Defendants failed to accommodate his disability and pretextually terminated his employment on or around May 4, 2018

McMillian's leave of absence **was not** an undue burden nor was it indefinite. Defendants freely discriminated, harassed and retaliated against employees with disabilities, and at their discretion, used their policies as a shield whenever they desired.

- McMillian's leave was not indefinite. Dr. William Ramirez ("Dr. Ramirez") treated McMillian every week, estimating a return to work every two weeks.
- Defendants had three different departments: Accommodations; Leaves of Absence (which included various types of leaves); and Leave as an Accommodation.
- McMillian did not qualify for and was in fact denied a Leave of Absence.
- McMillian qualified for a Leave as an Accommodation; managed only by Defendants and not the Reed Group ("Reed"). Defendants were responsible for McMillian's leave process and McMillian *always* communicated with Defendants.

///
///
///

## 2. STATEMENT OF FACTS

### A. McMillian's Initial Request Is Approved As A Leave As An Accommodation.

On January 11, 2017, Marcellus McMillian ("McMillian" or "Plaintiff") was hired as a part-time employee working in Defendants' San Bernardino warehouse and became a full-time employee in March 2017.

McMillian was involved in a car accident on August 3, 2017, and began seeing Dr. William Ramirez ("Dr. Ramirez") for his back injuries. Dr. Ramirez placed McMillian off work through September 1, 2017. McMillian submitted his disability statement to accommodations@amazon.com. McMillian was approved for a one-month leave and received a letter from Tamisha Dennis ("Dennis") qualifying him for leave as an accommodation. If an employee did not qualify for any leaves, they were placed on a leave as an accommodation by default. Further, leaves as an accommodation are not outsourced to the Reed Group ("Reed") at all and are handled in-house by Defendants.

### B. McMillian Followed Defendants' Policies And Procedures.

McMillian returned from leave on September 2, 2017. McMillian could not stand for an entire shift of 10-14 hours because he was experiencing back pain; the pain caused him to take intermittent sick days. Dr. Ramirez continued to treat McMillian and placed him off work through November 19, 2017. McMillian submitted his disability statement to accommodations@amazon.com; just like before. McMillian understood the process was correct.

Because McMillian's leave was categorized as a leave as an accommodation, Defendants had sole and complete discretion in following their own policies and procedures to approve or deny McMillian's leave. What followed is a series of instances wherein Defendants used their process to harass and discriminate against McMillian.

Defendants contend that McMillian did not engage in a good faith interactive process because his disability statements were submitted late, yet on many occasions, disability statements were often accepted after the return to work date had lapsed. Defendants fail

to provide evidence that Defendants informed McMillian that the disability statements were insufficient and/or provided untimely. Dennis testified that as long as McMillian submitted his medical documentation, per Defendants' policies, it was their responsibility to ensure the documentation ended up at the correct department. Dennis further testified McMillian followed Defendants policies for his request for accommodation and leave.

On November 16, 2017, McMillian saw Dr. Ramirez. His doctor placed him off work through November 30, 2017. On November 16, 2017, Defendants' welcome back team (welcomeback@amazon.com) emailed McMillian. On November 17, 2017, McMillian replied with his updated disability statement reflecting the requested extension of his leave. On November 21, 2017, Reuben Smith ("R. Smith"), Senior Human Resources Assistant, reached out to McMillian. McMillian now forwarded the disability statement to R. Smith.

On November 22, 2017, AmazonAM@reedgroup.com confirmed receipt of McMillian's medical documentation but McMillian had not personally sent them any documentation; he was confused. The email indicated "AmazonAM" and McMillian understood it to mean he was still communicating with Defendants.

On November 28, 2017 and November 30, 2017, McMillian saw Dr. Ramirez. His doctor placed him off work through December 16, 2017. On November 30, 2017, just as he did previously, McMillian submitted his disability statement to accommodations@amazon.com and R. Smith at reubens@amazon.com.

On December 12, 2017, McMillian saw Dr. Ramirez. His doctor placed him off work through December 30, 2017. On December 15, 2017, just as he did previously, McMillian submitted his disability statement to accommodations@amazon.com and to R. Smith at reubens@amazon.com.

**C. Defendants' Policies and Procedures Are Unclear, Nonetheless McMillian Continues To Follow The Process He Is Aware Of.**

On December 7, 2017, R. Smith replied to McMillian asking if he had sent his medical documentation to the Leave of Absence ("LOA") team. McMillian was confused

because he understood the LOA team to be Defendants and he had already done that. On December 18, 2017, Defendants confirmed receipt of his medical documentation. But, on December 20, 2017, after receiving numerous phone calls regarding his return to work date, McMillian became concerned and sent emails to accomodations@amazon.com and AmazonAM@reedgroup.com. The phone calls caused McMillian a lot of stress and confusion; documentation had been submitted as always. In a letter dated December 26, 2017, Defendants informed McMillian his leave was approved.

On December 26, 2017, McMillian saw Dr. Ramirez. His doctor placed him off work through January 13, 2018. On December 28, 2017, as previously, McMillian submitted his disability statement to accommodations@amazon.com and AmazonAM@reedgroup.com. McMillian submitted his disability statements exactly the way had done so before, this time, to cover all tracks, he included Amazon@reedgroup.com. On January 4, 2018, Defendants notified McMillan they were missing his previous disability statement and certification form. McMillian had no reason to believe his leave lapsed because he submitted all disability statements and kept his employer informed. The disability statements were proven to be sufficient documentation, and he sent them as soon as they were available.

On January 9, 2018, McMillian saw Dr. Ramirez. He placed him off work through January 27, 2018. This time, Dr. Ramirez faxed the disability statement directly to Defendants. In a letter dated January 9, 2018, Defendants informed McMillian his leave was approved.

On January 25, 2018, McMillian saw Dr. Ramirez. Because McMillian was still experiencing back pain, Dr. Ramirez placed him off work through February 11, 2018. On January 31, 2018, as previously, McMillian submitted his disability statement to AmazonAM@reedgroup.com and accommodations@amazon.com. What followed was a series of emails to McMillian stating he was unexcused and absent from work and McMillian, confused, contacted Defendant's Employee Resource Center ("ERC"). McMillian re-submitted all his medical documentation and was in communication with

Defendants.

On February 13, 2018, McMillian saw Dr. Ramirez. He placed him off work through February 27, 2018. McMillian was struggling with his health situation and sent his disability statement as soon as it was available to him but he was still receiving unexcused absence notices. On February 19, 2018, McMillian communicated with Defendants, explaining he had been out on a medical leave and requested they update their system. McMillian kept Defendants informed and could not understand the confusion. Defendants confirmed they had in fact received the medical documentation and explained the process would take three to five days to resolve. In a letter dated February 23, 2018, Defendants informed McMillian his leave was denied but in the claim status summary chart, the request showed approved under Defendants' Medical Leave of Absence.

**D. Defendants, Tired Of McMillian's Extension Requests, Begin Straying From Their Policies, Picking And Choosing When To Enforce Them.**

On February 26, 2018, McMillian submitted a leave extension request. He spoke with Defendants by telephone and gave them notice that he would be seeing his doctor again. McMillian saw Dr. Ramirez on February 27, 2018 and was placed off work through March 13, 2018. McMillian submitted his disability statement on February 27, 2018; as soon as it was available to him. In a letter dated March 9, 2018, Defendants informed him the leave was denied. Interestingly, the case summary chart showed his leave was denied beginning on February 28, 2018 but the decision had not been made until March 9, 2018, ten days later; this was very confusing for McMillian.

On March 13, 2018, McMillian did not return to work because he continued to experience a lot of pain and did not want to undo the progress he had achieved thus far. McMillian saw Dr. Ramirez on March 15, 2018 and was placed off work through April 1, 2018.

On March 20, 2018, McMillian learned Defendants again were claiming missing paperwork. He informed Nadine Lee ("Lee") at jerlee@amazon.com, accommodations@amazon.com, and AmazonAM@reedgroup.com of his request to have

Dr. Ramirez to fax his disability statement to Reed. McMillian submitted two disability statements that excused him through April 1, 2018. Further, McMillian gave Defendants advance notice regarding a planned surgery on April 10, 2018 and informed Defendants they should expect another extension request to follow.

On April 2, 2018, McMillian saw Dr. Ramirez and was placed off work for a longer period of time. On May 1, 2018, McMillian saw Dr. Ramirez. He placed him off work through May 13, 2018.

On May 3, 2018, Caitlin Favati ("Favati") emailed McMillian stating the "LOA partners" confirmed his leave ended in February 2018 due to a lack of timely communication, and he was being terminated for Job Abandonment. McMillian was confused learning his approved leave had allegedly ended sometime in February 2018. He was in constant communications with Defendants and could not understand why Defendants had inaccurate information.

On May 15, 2018, McMillian saw Dr. Ramirez. He placed him off of work through June 19, 2018. That was the last disability statement. On June 19, 2018, Dr. Ramirez released McMillian to return to work in full capacity, but McMillian did not have a job to return to.

**E.  Defendants Have Numerous Types of Leaves, Leave As An Accommodation Is Always Processed In-House.**

Defendants did not want their employees to be aware of a third-party leave administrator and intentionally "branded" Reed as "My Leave" to keep them anonymous. Adding more into the confusion, Defendants eventually comingled Reed's identity with their own by co-sharing the responsibilities of handling leaves of absences.  Defendants attempt to delegate their legal obligations of providing reasonable accommodations to employees by outsourcing through Reed and attempting to evade liability when employees are not accommodated, though by law that duty to accommodate cannot be delegated, nor can Defendants escape liability for actions they attribute to Reed.

Indeed, Defendants' employees were not even aware of this third party, yet,

McMillian's Senior HR Assistant in charge of his division, Favati, claims that employees were solely responsible for working directly with Reed for any leave and submitting their documents. Dennis testified to the opposite effect and that if documentation was sent to the wrong person, it was Defendants' responsibility to forward it to the correct department. Further, Defendants handled **all** leaves as an accommodation in-house. Leaves as an accommodation were **never** outsourced to Reed.

### F.   Defendants Fail To Follow Company Attendance Policies and Procedures.

Defendants approved McMillian's leave extension requests, despite any delays in providing documentation. Defendants allege McMillian's leave case closed on February 28, 2018 due to lack of documentation but he was not informed, and he continued to provide disability statements. Favati testified Defendants do not hold a policy that specifies a time-limit for employees to submit medical documentation.

On March 9, 2018, Defendants notified McMillian his leave through March 13, 2018 was denied. It took 10 days for McMillian to be notified. McMillian did not know why Defendants had not received the previous submissions; he resubmitted his disability statements on March 20, 2018.

On April 21, 2018, McMillian received notification for unexcused absences. McMillian replied on April 22, 2018 attaching his disability statement and included Reed in the email. McMillian did exactly what was required of him. McMillian was not informed his documentation was insufficient in any way.

On April 25, 2018, Favati emailed McMillian again regarding unexcused absences. On April 26, 2018, McMillian replied to Favati stating he had been in contact with Defendants, submitted the documentation and just had a back procedure. He offered to forward anything she needed but did not receive a response.

Defendants contend they have procedures in place that protect employees from being terminated when their absences are excused; however, they failed to follow their procedures. Amy Virden ("Virden"), Human Resource Manager, declared Defendants HR runs a daily attendance report and that when an employee indicates they have been absent

due to a medical issue, HR advises the employee on how to get that time excused through the leave of absence and/or accommodation process. Virden explained that HR will instruct employees to contact the leave of absence or accommodation team to either initiate a new case or update their case manager. HR subsequently should check to see if there is a leave of absence or accommodation case pending or has excused the employee's missed time.

Favati, Senior HRA, was charged with "processing" McMillian's attendance report, leave status, and termination. Favati testified extensively about having received medical documentation from McMillian but seeing no responsibility as HR to forward the documentation to Reed. If Defendants actually had a process, Favati did not follow it. Favati testified that the notes in the attendance system could potentially be from weeks or even months prior, possibly not updated; this contradicts daily attendance reports. Favati was evasive when asked if she called McMillian upon receiving his emails. She further testified she did not know if she even contacted the LOA team.

Defendants' assertion that HR delayed terminating McMillian's employment as of March 9, 2018 due to lack of documentation is false. McMillian **continued** submitting sufficient medical documentation up until his termination.

## G.   McMillian Is Prematurely Terminated On May 3, 2018.

On May 3, 2018, while out on a medically necessitated leave, Defendants informed McMillian he was terminated for job abandonment. Scared and frustrated, McMillian called Defendants' My Leave team and spoke to Darrell Lake ("Lake"). Lake explained McMillian's claim was closed but assured McMillian it could be reopened and updated. McMillian emailed Favati to inform her and forwarded his previous email of April 22, 2018, including his disability statement. Favati chose not to forward McMillian's disability statement to anyone.

Favati apparently could not recall if she spoke with Lake but confirmed that her decision was based solely on his denial of leave from February 28, 2018 and that any disability statements provided after that date meant nothing to her. Favati ignored

McMillian's medical documentation, did not consult with Lake from the My Leave team, and proceeded with prematurely terminating McMillian on May 3, 2018.

Dennis testified cases could be reopened but Defendants chose not to follow that policy for McMillian. Favati testified reinstatement and reopening a leave case was possible and she had the power to do so, yet, could not do anything for McMillian's situation.

### H. Patterson Investigates McMillian's Leave Of Absence Denial On June 21, 2018, Concludes McMillian's Case Should Have Been Reopened, But It Was Not.

In response to an inquiry request, on June 21, 2018, Regional Accommodations Manager, Mary Cortez Patterson ("Patterson") discovered McMillian was likely prematurely terminated. Patterson has extensive experience in Human Resources and was able to spot the wrongful termination right away. Patterson admits that McMillian's case was a red flag.

Simultaneously at 10:47 AM on June 21, 2018, Patterson sent two emails. One email to ONT2-HR, ONT3-HR and Favati concerned about a likely premature termination. The other email to Reed, ONT2-HR, ONT3-HR and Favati, instructing Reed correct their leave process and for "the site" (i.e. the site's HR management, ONT2-HR, ONT3-HR and Favati) to reverse McMillian's termination. **She further instructed Reed to approve McMillian's leave through May 13, 2018.**

On June 25, 2018 at 6:24 PM, Patterson followed up on her email to Reed because Reed did not respond regarding her instruction to correct the leave.

On June 26, 2018 at 2:03 PM, Reed replied only to Patterson informing her the documents she included in her June 21, 2018 email could not be processed because McMillian's leave had been denied on December 14, 2017 for short term disability and March 9, 2018 for his leave. Reed informed Patterson they would continue to look into the issue.

On June 27, 2018 at 11:42 AM, Reed replied to Patterson's June 21, 2018 email,

inexplicably timestamped at 11:16 PM, and informed her Reed was unable to reopen the case or update the leave. Reed stated Defendants must first reinstate McMillian. Patterson never forwarded Reed's response to Defendants or followed up with Defendants regarding status of this issue. Despite Reed's offer to reverse the denial, Patterson did nothing.

Dennis provides if McMillian's case was reopened, his negative UPT would have been recoded to remove the negative hours.

Favati testified she had the ability to reinstate employees but chose not to. The leave case was not reopened at Defendants' discretion. Dennis testified it was apparent that the case manager ***chose*** not to process the paperwork. Favati testified that Defendants' rules and regulations could be applied at her discretion.

McMillian was released to full duty on June 19, 2018 and could have returned to work but Defendants refused to accommodate him.

## I. Defendants Contingent Offer Of Reinstatement Was Nothing More Than A Strategic Litigation Tactic Devised By Lawyers.

McMillian filed his lawsuit on January 11, 2019.  He was suddenly offered an alleged reinstatement opportunity on February 7, 2019. Defendants sent the contingent offer via email directly to McMillian's personal email. McMillian replied, giving Defendants the benefit of the doubt, and spelled out the precise terms of his re-instatement, while also requesting basic protections to help avoid reliving hurtful and damaging experiences he was subjected to before he was illegally terminated. Defendants never responded to his letter. Defendants had a 1-year limit for ex-employees to be rehired, yet they relinquished their 1-year time limit in an attempt to sweep McMillian's claims under the rug. This is another example of Defendants picking and choosing which policies to follow, to their own benefit.

## 3.  LEGAL ISSUES

### A.  Defendants Failed to Accommodate Mr. McMillian's Injury

"A single failure to reasonably accommodate an employee may give rise to liability, despite other efforts at accommodation. *A.M. v. Albertsons, LLC* (2009) 178 Cal.App.4th

455, 464-465." *Swanson v. Morongo Unified School District*, G050290, 16 Cal. Ct. App. Nov. 26, 2014. McMillian makes his claim under the California Government Codes sections 12940 et seq, hereinafter referred to as the FEHA. California Government Code section 12940(m) states that it is unlawful "[f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee." Cal. Gov't. Code §12940(m). In short, employers in California must provide reasonable accommodations to employees. Sufficient evidence, both contested and uncontested, exists to substantiate McMillian's Failure to Accommodate claim against Defendants under the FEHA.

### (1)   McMillian Did Not Request an Indefinite Leave

Under FEHA, an employee with a disability is entitled to a reasonable accommodation, including a leave of no statutorily fixed duration, *provided that such accommodation does not impose an undue hardship on the employer. Fuentes-Sanchez v. Swissport, Inc.*, 213 Cal.App.4th 1331, 1338 (2013); *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 263 (2000); 2 Cal. Code Regs. 11068(c). The mere fact that a leave has been repeatedly extended does not necessarily establish that a leave is indefinite. *Nadaf-Rahrov v. Neiman Marcus Group, Inc*, 166 Cal.App.4th 952, 989 (2008).

McMillian and Dr. Ramirez stated when they expected McMillian return to work. Neither characterized his leave as "indefinite," Dr. Ramirez cleared McMillian's return to work on June 19, 2017 without any restrictions.

Because an employer's duty to accommodate an employee is *continuous,* Defendants failed to accommodate McMillian here, where no undue hardship existed. *See Spitzer v. Good Guys, Inc.,* 80 Cal.App.4th 1376 (2000).

McMillian never requested an indefinite leave, nor is there any indication he needed an "indefinite" leave. The last request for leave gave an estimated return to work date of May 13, 2018. Defendants admitted receiving documentation yet refused to grant the requested accommodation. The nature of McMillian's disability required repeated extensions, and those extensions were necessary as made apparent by his doctor's

recommendations.

**B.   Defendant's Failed to Engage in the Interactive Process with McMillian to Determine an Effective Reasonable Accommodation**

California Government Code section 12940(n) states that it is unlawful "[f]or an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov't. Code §12940(n).

Two elements make up the claim for Failure to Engage in the Interactive Process. First, the employee must request an accommodation. Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith. *Gelfo v. Lockheed Martin Corp.* 140 Cal.App.4th 34, 54 (2006). "Once initiated, the employer has a continuous obligation to engage in the interactive process in good faith." *Swanson* 232 Cal.App.4th 954 (2014).

Defendants conclude McMillian's submissions were "unreasonably delayed," providing no evidence supporting their claim. McMillian provides extensive evidence he participated in the interactive process. Defendants obstructed the process. Favati had the ability to reinstate employees but chose not to. Dennis testified the case manager ***chose*** not to process paperwork. Defendants' rules and regulations could be applied at Favati's discretion.

**C.   McMillian was Discriminated Against on the Basis of His Disability**

**(1)   McMillian Can Establish a Prima Facie Case**

A plaintiff establishes a prima facie case of discrimination under the FEHA by proving that he "(1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the

disability or perceived disability." *Sandell v. Taylor-Listug, Inc.* 188 Cal.App.4th 297, 310 (2010).

The prima facie burden is light; the evidence necessary to sustain the burden is minimal. *Heard v. Lockheed Missiles & Space Co.* 44 Cal.App.4th 1735 (1996). Generally an employee need only offer sufficient circumstantial evidence to give rise to a reasonable *inference* of discrimination. *Hersant v. Calif. Dept. of Social Services* 57 Cal.App.4th 997, 1002 (1997).

Here, the evidence shows (1) McMillian suffered a disability. Dr. Ramirez diagnosed him with a lumbar sprain/strain, (2) He could perform his job duties with a reasonable accommodation of a definite leave. (3) He suffered adverse employment action because of his disability when Defendants terminated him while on leave for his disability.

### (2)   Defendants Did Not Have a Legitimate Reason for Termination

If the employee meets his prima facie burden, it is then incumbent on the employer to show that it had a legitimate, nondiscriminatory reason for its decision to terminate. *Furtado v. State Personnel Bd.* 212 Cal.App.4th 729, 744 (2013).

Defendants claim they terminated McMillian because he abandoned his job; McMillian continued to communicate with his employer and submitted disability paperwork, which shows he had an interest in keeping his job. Defendants fail to prove that they had a legitimate reason for terminating McMillian.

### (3)   McMillian Can Establish Pretext

After Defendants make a showing of a legitimate business reason to terminate, the burden shifts back to the employee to produce substantial evidence the employer's given reason was either "untrue or pretextual." *Furtado* 212 Cal.App.4th at 744. Pretext may be demonstrated by showing "'the proffered reason had no basis in fact, the proffered reason did not actually motivate the discharge, or, the proffered reason was insufficient to motivate discharge.'" *Soria v. Univision Radio Los Angeles, Inc.*, 5 Cal.App.5th 570, 594 (2016), citing *Hanson v. Lucky Stores, Inc.* 74 Cal.App.4th 215, 224 (1999); see also *Hersant* 57 Cal.App.4th at 1005.

When adverse employment decisions are taken within a reasonable time after an employee exercises a right, causation may be inferred. *Flait v. North American Watch Corp.* 3 Cal.App.4th 467, 479 (1992); *Passantino v. Johnson & Johnson* 212 F.3d 493, 507 (9th Cir. 2000). Inconsistences in evidence can support a finding of pretext, especially when the "proffered reason for termination intertwines with the employee's disability." *Soria* 5 Cal.App.5th at 595.

Here, Defendant's proffered evidence supporting their alleged non-discriminatory reason for terminating McMillian is inconsistent. Defendants claim they terminated McMillian due to alleged job abandonment. Further, Defendants argue McMillian submitted untimely statements, and they were forced to terminate him. However, Defendants extended McMillian's leave at least seven times prior to termination. Defendants approved McMillian's leave at least twice even after Plaintiff's leave had lapsed.

Additionally, the proffered reason for termination intertwines with McMillian's disability. McMillian was absent from work precisely because of his disability; his doctor placed him off work for a set period of time each time.

### (a) Defendants Have a Negative Unpaid Time ("UPT") Policy That Provides For Termination Upon Accrual Of Even One Unexcused Hour Of Work

Defendants have an unpaid time ("UPT") policy that states an employee will accrue negative UPT for missing any time from work due to an unexcused reason. If UPT goes negative without sufficient time to cover, that will result in termination. If an employee misses one workday, they accrue ten hours of negative UPT, and unless the employee has paid time off, is on an approved leave of absence, or has some other excused method to cover the negative hours of UPT, the employee is subject to termination. Even a negative one UPT, which is one hour, could result in termination if there is no excused reason to move [the negative UPT] back to zero. Thus, because those who are injured and disabled (like McMillian), are more likely to require a medical leave, they are *far more* susceptible

to being terminated under this policy than non-disabled employees.

**(b) In February of 2018, McMillian Is Informed That He Is Negative in UPT For Allegedly Missing Two Consecutive Days Of Work.**

Despite regularly submitting such documentation, on February 1, 2018, McMillian received a notice that he had accrued negative UPT hours and if he did not respond in two days he was going to be terminated. Defendants alleged that McMillian did not submit the necessary paperwork, which was false. McMillian responded the next day and indicated he already submitted his paperwork.

**(c) Despite Being On Leave, By April of 2018, McMillian Had Accrued A Whopping 267 Hours Of Negative UPT**

Despite being in active and regular communication with defendants about his return to work status, by April of 2018, McMillian had accrued 267 negative hours of UPT, making it nearly impossible for him to recover from such a deficit should defendants raise any issues with his leave time.

**(d) On May 3, 2020, Defendants Inform McMillian He Is Being Terminated For Accruing Negative UPT**

On May 3, 2018, Defendants informed McMillian that he was being terminated for "job abandonment[1]" because of an alleged "lack of timely communication" regarding his extension requests. McMillian was also informed that his approved time off had apparently ended three months prior, in February of 2018; yet McMillian was not terminated until May of 2018. McMillian was fully cleared to return without any restrictions on June 19, 2018, but he had no job to return to.

///

///

///

---

[1] The "job abandonment" aspect of McMillian's termination refers to being negative in UPT.

**D. Defendants Retaliated Against McMillian for his Request for Reasonable Accommodations, For Taking and Requesting Medical Leave, And For his Complaints of and/or Opposition To Discrimination and Retaliation.**

"[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042 (2005).

Once an employee establishes a prima facie case, the employer is required to offer a legitimate reason for the adverse employment action, then the presumption of retaliation no longer applies and the burden shifts back to the employee to prove intentional retaliation. *Id.* "Retaliation claims are inherently fact-specific, and the impact of an employer's action in a particular case must be evaluated in context…" *Id.* at 1052. *See also McCoy v. Pacific Maritime Assn.* 216 Cal.App.4th 283, 299 (2013).

In actuality, in a discrimination or retaliation case, "a plaintiff's *prima facie* burden is minimal." *Caldwell v. Paramount Unified School Dist.,* 49 Cal.App.4th 189, 197 (1996).

McMillian established his prima facie case. He engaged in a protected activity: requested accommodations, requested and took a medical leave, and complained of and expressed opposition to discrimination and retaliation. His employer terminated him shortly after engaging in this activity, including taking and requesting leave, and expressing complaints and opposition to Defendants' discriminatory and retaliatory practices. Evidence indicates a causal link exists. The termination came close in time to his request for an extension to his leave and these other protected activities. He needed to recover from his injury, and required reasonable accommodations. Defendants ostensibly terminated McMillian for alleged job abandonment, but he was absent from work precisely because of his disability, which he communicated to Defendants through his requests for medical leave and disability statements, and they were well aware of this when they terminated his employment.

Defendants claim that McMillian's termination was non-discriminatory. However as explained above, Defendant's proffered reason for termination was pretextual.[2]

## E.   McMillian's Claims for Damages Prevail

### (1)   McMillian Can Recover Economic Damages After Rejecting Reinstatement

Backpay no longer accrues only when an employer establishes that a former employee failed to accept an unconditional offer for a substantially equivalent job and the former employee fails to establish "special circumstances." *Boehm v. American Brodcasting Co., Inc.* 929 F.2d 482 (9th Cir. 1991), citing *Ford Motor Co. v. Equal Employment Opportunity Commission* 458 U.S. 219, 231-32 (1982). The federal case of *Ford Motor Co.* does not affect the California rule that "reasonableness of mitigation is a question of fact." *Ortiz v. Bk. Of Am. Nat. Trust Sav. Ass'n* 852 F.2d 383 (9th Cir. 1987).

Here, Defendants made a contingent offer to McMillian after he filed his lawsuit. McMillian had legitimate concerns after filing a lawsuit and he expressed his concerns in writing. Instead of discussing McMillian's concerns, Defendants outright ignored his requests.

### (2)   McMillian Can Recover Punitive Damages

A claim for punitive damages requires "clear and convincing" evidence that defendant has been guilty of "oppression, fraud, or malice" in the commission of a tort. Cal. Civ. C. §3294(a).

McMillian can establish, "that the defendant was aware of the probable dangerous consequences of his conduct, and that he willfully and deliberately failed to avoid those consequences." *Hoch v. Allied-Signal, Inc*. 24 Cal.App.4th 48, 61 (1994) (emphasis added).   As stated in Defendants' email, they have had a problem of terminating

---

[2] For the sake of brevity, while plaintiff also maintains claims of wrongful termination and negligent supervision, retention and hiring, as they are derivative of his other claims they have not been expressly briefed herein

employees prematurely.

Dated:  June 1, 2022                    G-Rod Law, A.P.C.

                                        By: _____
                                             Griselda S. Rodriguez, Esq.

                                        Attorneys for Plaintiff,
                                        MARCELLUS MCMILLIAN

MCMILLIAN v. GOLDEN STATE FC LLC, et al.      USDC Case No.: 2:19-cv-02121-MWF-JCx

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

I am an employee in the County of Riverside, State of California.  I am over the age of 18 and not a party to the within action; my business address is 3764 Elizabeth Street, Riverside, California 92506.

On June 1, 2022, I served the foregoing document, described as **"PLAINTIFF MARCELLUS MCMILLIAN'S TRIAL BRIEF,"** on all interested parties in this action by placing a true copy thereof in a sealed envelope, addressed as follows:

**Barbara A. Fitzgerald, Esq.**
**barbara.fitzgerald@morganlewis.com**
**MORGAN, LEWIS & BOCKIUS LLP**
**300 South Grand Avenue, 22nd Floor**
**Los Angeles, CA 90071**

**Ethel J. Johnson, Esq.,** *pro hac vice*
**ethel.johnson@morganlewis.com**
**MORGAN, LEWIS & BOCKIUS LLP**
**1000 Louisiana St., Suite 4000**
**Houston, TX 77002**

**Alexander L. Grodan, Esq.**
**alexander.grodan@morganlewis.com**
**MORGAN, LEWIS & BOCKIUS LLP**
**600 Anton Boulevard, Suite 1800**
**Costa Mesa, CA  92626**

☒    **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒    **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 1, 2022, at Riverside, California.

_____
Delmy Garcia